**IN RE:**

**Heart 2 Heart, Inc. Case No 25-00087**

Creditor Chapter 11

Pro se/ Creditor

6/30/2026

MOTION TO REMOVE ROBERT BOLES FOR CONFLICT OF INTERSEST WITH A CREDITOR, THE TRUSTEE NOT GETTING APPROVAL FROM THE COURTS AS A PROFESSIONAL, THE TRUSTEE USES ROBERT BOLES TO HELP WITH ESTATE MATTERS CONCERNING CREDITORS, ALSO BECAUSE OF HIS PREVIOUS ACTIONS WHILE EMPLOYED THAT HARMED THE FACILITY AND RESIDENTS. HE IS NOT ETHICALLY APPROPRIATE FOR THIS POSITION.

A MOTION TO OBJECT AS A CREDITOR TO THE HIRING OF ROBERT BOLES BECAUSE HE HAS A COFLICT OF INTEREST WITH THIS CREDITOR, HAS HARRASSED HER AND WROTE DEFAMING LETTERS AGAINST HER. THIS CAUSES A LIABILITY FOR THE COMPANY.

A MOTION TO ASK FOR EXPEDIATED HEARING BECAUSE THIS CREDITOR BELIEVES THE TRUSTEE IS PURPOSLEY USING ROBERT BOLES TO HELP WITH THE RECEIPTS AND THE COURT ORDER BECAUSE HE KNOWS SHARON TRAVIS WILL NOT WORK WITH HIM AND HE IS TRYING TO DELAY THE COURT ORDER DOC. 311 ON JUNE 18th.

---

The Trustee was fully aware of the severe conflict of interest between the Creditor and Robert Boles. He has made Robert Boles his assigned representative for the order concerning Sharon Travis's receipts. By intentionally selecting an individual he knew the Creditor had a conflict of interest with or felt safe to interact with, the Trustee deliberately engineered a deadlock to obstruct the court-ordered inspection." The court granted a strict, time-sensitive two-week window for inspection. By forcing a known conflicted party

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

JUN 30 2026

Time: 2:50 am/pm

into the process, the Trustee is willfully manufacturing a delay to exhaust the Creditor's limited time frame, causing irreparable prejudice to the Creditor's ability to protect its claims in this Chapter 11 estate.

A Chapter 11 Trustee owes a strict fiduciary duty of impartiality to all stakeholders. By actively leveraging a known conflict of interest to deny access, the Trustee has abandoned his role as an officer of the court and is engaging in bad-faith tactics designed to prejudice a single creditor Conditioning court-ordered access upon interaction with a heavily conflicted individual constitutes a constructive refusal to comply with this Court's order. It is an illusory compliance designed to evade the Court's mandate while pretending to fulfill it. "Trustee purpose and actions are taken to resolve debts, not to inflict emotional distress.

The Trustee does not respond to any of Sharon Travis emails. Robert Boles says I should reply all so it goes to everyone on his list of employees. My communications are monitored by all the employees there. I am not an employee I am a creditor and my communication should not be monitored by all the staff. This should be handled by the Trustee in private communications. This violates my privacy and something that a compliance officer and a Trustee should know.

1.  Trustee Refusing to talk to a creditor or ignoring issues raised under that order constitutes a breach of their duties and a direct violation of the court.

2.  Court Approval is Mandatory: Under <u>Federal Rule of Bankruptcy Procedure 2014</u>, a trustee must file a formal application outlining the person's compensation, services, and connections to creditors before they can be hired or paid from estate funds.

3.  **Estate Administration, Not Business Operations:** Communicating with non-day-to-day creditors regarding money owed from the estate directly involving a court order of the bankruptcy case. This shifts the role from standard corporate compliance to estate administration.

4.  **Chapter 11 appointed trustee must obtain court permission to employ a professional person. 11 U.S. Code § 327 - Employment of professional persons.**

5.  **11 U.S. Code § 327 (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.**

6.  **The trustee must file an application to employ the professional under Bankruptcy Rule 2014. [1, 2] and Submit a Verified Statement. The Professional must submit a signed, sworn statement detailing all of his connections to the debtor, creditors, and any other parties in interest. She must explicitly disclose his creditor claim, his relationship with the opposing creditor.**

7.  **Serve Notice: The application must be served to the U.S. Trustee, any appointed creditors' committees, and major stakeholders.**

8.  **The U.S. Trustee or the conflicting creditor will have immediate standing to file a**

formal objection based on a lack of disinterestedness.

9.  The professional cannot legally act on behalf of the estate or receive compensation from bankruptcy funds until the judge signs an order approving the retention.

10. Robert Johns, the Trustee for Heart 2 Heart Volunteers Inc. dba Serenity Hills Life Center did not provide an application or statement for a professional employment for Robert Boles.

11. Robert Johns, the Trustee knew Sharon Travis was a creditor and knew that there was a conflict of interest between Sharon Travis and Robert Boles.

12. Evidence was presented to the courts showing Robert Bowles lied concerning Sharon Travis voting on a complaint against her. Sharon Travis presented the board minutes and vote that showed he was not honest. Whether the court denied the motion that was the fact. *See Exhibit A Motion*

## Recent Events After the Separation from Employment

13. March 18th 2025 Robert Boles goes to court to testify against against Sharon Travis. He states that Sharon Travis voted on a grievance against herself as a board member. This was a contested hearing concerning bringing in an ombudsman.

14. Robert Boles wife Tiffany Boles goes on Facebook and slanders Sharon Travis.

15. While Sharon Travis is put on leave Robert Boles and Sarah Dean are brought to

the facility to meet with Robert johns coordinated by Sheila Weese.

16.  April 8th or 9th, 2026 Robert Boles shows up at a hearing Sharon Travis is at. He does not know this person. Sarah shows up also. He says to Sharon Travis, get behind me Satan as we are walking in. He comes there Sharon believes to spy for Sheila Weese and to harass Sharon Travis.

17. April 16th, 2026 -While Sharon was on leave, Robert Boles is given access to the Sam.gov account started by Sharon Travis. You have to have this account to get government grants. It says Robert Boles requested a data entry role for Heart 2 Heart Volunteers Inc. As far as I know he is not hired yet and this is a secure government site that you do not just let anyone have access to unless you expect they will be a permanent person. That is very secure information. *See exhibit B photo of the site with his name on it.*

18. May 1st  2026 -Sharon Travis is fired.

19.  As of May 22, 2026, Docket 278 The updated Ombudsman report does not mention Robert Boles and Sarah Dean as being hired.

20. May 29th, 2026 on the docket, the denial by the judge to the Motion to strike the testimony of Robert Boles and Sarah Dean.

21. June 5, 2026 an email comes from Robert Boles old Compliant email about computers. *Exhibit E Email*

22. June 17th,2026 Sharon Travis gets in the mail a rebuttal from Sarah Dean sent to the WV Board of Examiners for Counselors. It was then sent to Sharon Travis by Board of Examiners to Sharon Travis. There is a letter written by Robert Boles defaming Sharon Travis. With totally untrue statements. He states it is in his professional opinion as former compliance officer. *See exhibit C letter from Robert Boles*

23. June 19, 2026 An Email comes from the Compliance officer's email stating that he is writing on behalf of Robert Johns concerning June 18th order that was put in on behalf of the Trustee. He states that he is going to be overseeing the process.  He states that the items in the detox will be moved to the farmhouse. Robert Bole signs it.
*See Exhibit D email*

24. June 21, 2026 Another email comes from Robert Boles from the compliance officers' email. Stating again that the deadline is sensitive. *Exhibit D email*

25. June 21, 2026, I respond and state I do not want anyone to move my stuff and that is a liability. *Exhibit F*

26. June 22, 2026, He responds that they will not move it. *Exhibit F*

27. June 23, 2026, I ask for what position and authority does he have to send me a emails. *Exhibit G*

28. June 24, 2026, He states that he has been designated by the Trustee to carry out the court order. (Administering the estate on behalf of the trustee) *Exhibit G*

29. June 24th 2026 Sharon Travis says, that it is a conflict of interest for you to be

involved with me as a creditor. Sharon Travis says he wrote letters against her and testified against her in court. *Exhibit H*

30. June 24, 2026, He sends a message that Charlie Endley will be assist him. He also says for me to reply to all. He has almost all the staff's emails listening to all of Sharon Travis conversations about her personal business. *Exhibit I*

31. June 24th, 2026, Sharon says she does not want to be in the same room with him. This is a conflict of interest. Please do not contact her any further. *Exhibit I*

32.  June 29th, 2026 2:34 pm Sharon Travis sends an email to Tara Singer with the dates of July 21, 2026. Telling her the times to see the documents on July 1, 2026. Also, the property on July 2, 2026 and ask if that date was okay. *Exhibit J*

33. June 29, 2026 Tara Singer answers that Sharon Travis needs to provide the licensed moving company and then Sharon Travis provides that information. She needs to talk to Bob and I do not know if she is talking about Bob Boles or the trustee. *Exhibit J*

.

### Robert Boles Employment at Serenity Hills Life Center

34. Robert Boles came to work for Serenity Hills Life Center as a Compliance Officer prior to are opening in 2023. He had no experience.  He previously worked as a manager for Retail store and was terminated. He acted more like an IT man, but he caused a lot of problems with the computers as much as he tried to help. He did not have experience, She

thought he would learn, but he did not.

35. Sharon Travis planned on retiring so she made the mistake of telling him that he Could Possibly be her replacement one day. That was a big mistake because that is what he focused on and not his job.

36. He knew from the beginning that in his job, that he needed to maintain clear, professional boundaries with staff. Maintaining boundaries ensures that all compliance decisions are made free of favoritism.

37. Sharon" Marie' Travis observed quickly that he did not have boundaries and that he was trying to be everyone's friend. He would actually try to cover for staff members to the point that he jeopardized the clients.

38. An example was two occasions that a nurse missed giving out the meds purposely. The one time she did not want to wait for the clients to come back from a NA meeting and she left. The Nurse Practitioner Sheila Weese knew about it and did not report it.

39. This was a serious offence. It was medical negligence, abandonment, dereliction of duty and medication omission. Robert tried to play it down like it was not a big deal. This was to protect the staff and this happened all the time and it was one of many instances.

40. Sharon Travis called a Human Rights Committee. By law you have to have a few currents clients on the committee. They can address issues on behalf of the residents. They agreed with me that this was a big deal. The women were mad and stated that they did not believe that is was being taken seriously because they were addicts.

He stated that he reported it to the state. I doubt that he did because she would have lost her license. It was mandatory that he did and OHFLAC would have come.

41. She was fired, but it took the clients to make him do what he needed to do.

42. Sharon was also told later if a staff was found guilty after an investigation, he would tell them that they were found innocent, but Sharon wanted them fired.

43. He was purposely trying to create that he was the nice guy and Sharon Travis was the bad guy. I did the compliance mostly and he did not.

44. We had a running joke that Robert was running for president and kissing babies or whatever he needed to do to convince people he would be the better CEO. He did not do his job and keep the facility compliant. It was Sharon Travis that tried to do that and it took her from her job.

45. When Sharon Travis had an audit done and we found out that some notes were not done by the clinical team. This is big deal and can get you not paid or your money to be returned. Sharon Travis called a meeting knowing it was his responsibility to audit and keep everyone compliant. I did not blame him, but Keith King the head of the Sub waiver addiction programs for DHHR told Sharon Travis she needed to fire her compliance officer. We had a meeting that included the CEO, Medical biller, Robert Boles, and the Utilization Nurse. We are discussing how we need to have the staff do there notes and when we address him, he is not there. He leaves the meeting and goes home during work hours without telling us he was leaving the teleconference meeting.

46. On April 9, 2025 a few months after he left, Wellpoint conducts and audit. The Audit period was July 2023 to December 2024 *See exhibit K, The Well Point original audit request.* This was the time period when Sarah Dean and Robert Boles worked there. That were both of their jobs to give oversight and protect the company.

47. On January 8th 2026 the audit we submitted came back a complete fail and We owed back to Wellpoint $ 519,750.00.00 for July 23 to December 24.
*Exhibit L Failed wellpoint audit*

48. Sharon Travis is not accusing Robert Boles of anything, but the way staff perceive things effect the facility. He would have lunch out back with another women every day on a bench. They both were married. It was the gossip through the whole facility. Sharon did not find out for a while and Sharon Travis had to defend him and tell them the gossip must stop. He continued to meet with her and even took our side-by-side without our permission and drove her in the woods. He also would be with her sometimes in the mornings. This was not proper as a compliance officer. It was showing favoritism and fueled Inappropriate perceived gossip. They quit at the same time.

49. He quit because he knew the board of directors wanted him fired and that had For a long and Sharon Travis was going to fire him.

50. When Robert Boles left, we found tore up files in the garbage can and other files with complaints and investigations missing his friends were missing.

51. It took a long time to recover from the damage that Robert Boles caused and there was a peace after he left. He is not appropriate for this job.

*Sharon "Marie" Travis 6-30-2026*

Exhibit A



**Serenity Hills**
LIFE CENTER
A Part of Long Hill Healthy

Date 1/13/2025

Meeting held by teleconference.

Those Present: Rose Halverson, Gregory Ford, Debbie Langmyer, Tara Singer, Absent was Cynthia Fiorilli, Sharon "Marie" Travis was there to testify.   Marie Travis and Rose Halverson left the meeting after Sharon testified due to a conflict of interest.

Grievance against: Sharon "Marie" Travis
Grievance filed by: K W resident and SP resident.
Evidence presented:
1) Exhibit 1 grievance letter written by K W
2) Exhibit 2 Grievance letter written by S P
3) Letter sent by Marie Travis to the clinical team prior to knowing a grievance was filed.
4) Statement from resident witness, C H
5) Statement from resident witness, R M
6) Statement from resident witness, H W
7) Resident write ups
8) Sharon Travis Testimony

### Finding of facts

1. The resident K W and S P 's testimony and complaints came after their write ups for their behavior.
2. There is documented behavior of bullying and inappropriate comments by K W as stated by witness R M, with no consequences or repercussions as testified by R M, K W told a resident to kill herself.
3. Write ups for S P and K W showing bullying the CEO and arguing with her with no consequences of breaking policies of the facility during residential meetings.
4. S P disrupting the CEO's class with no consequences.
5. S P states that Marie would not let her have her Quran when she came in.
6. Serenity Hills does not allow books to be brought in because you can liquify drugs and put them on book pages.
7. It was Marie's idea to break her own rule and get her the book since she was continually asking for it.
8. Marie encouraged her in her faith practices.
9. Marie Travis provided the residents that were African American with shampoo and conditioner called Cando for women of color.
10. An MHT that got fired was allowing K W and her close friends do cross boundaries.
11. K W states that Marie stated that they needed a spiritual smack in the face to save them.
12. Marie admits to saying a spiritual smack in the face to the group, and explaining that those who were participating in this behavior was being given a wakeup call and she was not speaking to everyone.

13. Marie testifies that she did not name anyone in this group, but stated that some were participating in the activity negatively.

14. There were 3 write ups for K W at the time of her weekly treatment team. Marie instructed them to make her aware that she was on probation.

15. They did not make K W aware that she was on probation according to her testimony that she had in the letter.

16. Marie testifies that she spoke to the clinical team about the behavior of these residents particularly K W and S P and felt more interrogated about her observation than acting on her information.

17. K W and S P disrupted a residential meeting to the point that they were removed from the residential meeting. Marie testified the residents complained about their behavior after they left.

18. Between R M, H W and C H their testimony shows that K W was slandering the CEO and a volunteer that came to the facility to help the women learn how to use the gym equipment properly. Their testimony shows that C W was complaining about the rules as being stupid, that she would continue to use the eyelashes. She was trying to convince others of her opinion by stating that the facility was shut down because of Ms. Marie and she changed her name because of what she did. There was testimony that she was trying to get the place shut down. They stated she was filing a grievance because Ms. Marie wrote her up.

In conclusion the board of directors does not find the testimony of the S P and K W credible. We believe these complaints were made out of retaliation of the write ups and fear of the consequences. We believe that the behavior of K W and S P has had a negative effect on the program and that more consequences should have been shown and applied to these women earlier, and then this might have been avoided.

Allowing anyone to be disrespected whether it be the CEO, staff, or residents with no consequence is unacceptable.

We believe that K W should be removed from the program and if no improvement, so should S P. We believe that there should be consistency with the consequences across the board and staff should apply and follow policies consistently.

*Tara Singer*

Tara Singer,
Secretary 2, treasurer of Board of Directors

Exhibit B

# SAM.GOV®

Home    Search    Data Bank    Data Services    Help

< Requests

Requests

Inbox

Sent

Filter By

Showing 1 - 1 of 1 results

**Robert Boles** requested a Data Entry role for HEART 2 HEART VOLUNTEERS INC. (UE SAM: SKSXYE4Q4GM5) for Entity Registration

Apr 16, 2026 12:33 PM

page
< 1 of 1 >

results per page
25

Exhibit C

To Whom It May Concern:

I am submitting this letter regarding complaints reportedly filed by former Serenity Hills Life Center CEO Sharon Travis against Dr. Sarah Dean.

I served as the Compliance Officer at Serenity Hills Life Center in Wheeling, West Virginia. During my time in that role, I personally observed repeated patterns of retaliatory behavior by Sharon Travis toward staff members following termination, resignation, disagreement, or separation from the facility. These actions frequently extended beyond employment matters and often involved ongoing harassment, intimidation, attempts to damage professional reputations, and efforts directed toward individuals' licenses and careers.

Based upon my firsthand observations, this behavior was not isolated. It became a recurring pattern within the organization.

During my employment, I personally witnessed staff members become fearful of retaliation after reporting concerns, disagreeing with leadership decisions, or attempting to enforce policy and compliance standards. Multiple employees expressed concern that Sharon Travis would continue pursuing them professionally even after they were no longer employed at the facility.

I believe this context is important when evaluating any complaint initiated by Sharon Travis against Dr. Sarah Dean.

Additionally, the concerns surrounding Sharon Travis and Serenity Hills Life Center are not merely interpersonal disputes or isolated employment disagreements. The West Virginia Office of Health Facility Licensure and Certification (OHFLAC) conducted investigations into Serenity Hills Life Center which resulted in multiple substantiated deficiencies involving the facility and Sharon Travis specifically.

The publicly available findings include determinations related to:

- Conduct jeopardizing the health, safety, welfare, and clinical treatment of consumers

- Improper clinical involvement outside scope of qualifications

- Disciplinary and discharge decisions contrary to treatment team recommendations

- Inconsistent enforcement of policies

- Consumer rights concerns

- Emotional and psychological harm within the treatment environment

These findings are publicly accessible through the West Virginia OHFLAC facility lookup for Serenity Hills Life Center:

https://ohflac.wvdhhr.org/Apps/Lookup/FacilityDetails/159065

It is also my understanding that Sharon Travis was recently terminated from Serenity Hills Life Center.

Further, Sharon Travis currently has multiple pending battery and assault-related matters involving former and/or current staff members. During my time at the facility, I personally observed behavior that I believed to be emotionally volatile, intimidating, retaliatory, and at times psychologically harmful toward both residents and staff.

I also witnessed ongoing instability within the treatment environment that negatively impacted staff morale, employee retention, and the emotional wellbeing of residents. In my professional opinion as the former Compliance Officer, many of these issues reflected systemic leadership concerns rather than isolated misunderstandings.

In contrast, Dr. Sarah Dean is one of the most talented, ethical, and professional individuals I have worked with throughout my career. I have known Dr. Dean personally and professionally for approximately ten years. Throughout that time, I have consistently observed her conduct herself with integrity, professionalism, compassion, and strong clinical ethics.

Her professional judgment, demeanor, and commitment to patient care have always been above excellent. During my time working alongside her, I observed her repeatedly advocate for appropriate clinical standards, patient wellbeing, ethical treatment practices, and policy compliance, even in difficult environments.

I have never personally witnessed Dr. Dean engage in unethical, abusive, retaliatory, or unprofessional conduct.

I am providing this information so that any complaint made against Dr. Sarah Dean may be evaluated with full context regarding the source of the allegations and the documented history of conduct associated with Sharon Travis.

My intent is not to interfere with any independent review process, but rather to provide factual context based upon my firsthand experience and observations while serving in a compliance role at Serenity Hills Life Center.

Sincerely,

Robert Boles

Former Compliance Officer

Serenity Hills Life Center

Wheeling, West Virginia

No. 5:25-bk-00087    Doc 315    Filed 06/30/26    Entered 07/01/26 12:58:48    Page 17 of 35

*Exhibit D*

 **Gmail**                                    **Sharon Travis <serenityhillscenterceo@gmail.com>**

---

## Case No. 5:25-bk-00087 – Scheduling Per Court Order (Doc. No. 311)

12 messages

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>                              Fri, Jun 19, 2026 at 4:12 PM
To: "livingfreeovwv@gmail.com" <livingfreeovwv@gmail.com>, Sharon Travis <serenityhillscenterceo@gmail.com>
Cc: Shelia Weese <NP@serenityhillslifecenter.org>, Tara Singer <accountant@serenityhillslifecenter.org>, rjohns <rjohns@johnswvlaw.com>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>, "Dr. Sarah Dean" <DrD@serenityhillslifecenter.org>

Ms. Travis,

I am writing on behalf of the Chapter 11 Trustee, Robert L. Johns, and Serenity Hills Life Center regarding the Court's Order entered June 18, 2026 (Doc. No. 311).

Pursuant to the Order, we need to schedule two items:

1. Records Review – According to the Order, you are to be provided access to review certain receipts and records. We have an area prepared at the farmhouse for this purpose, and the review will be confined to that location only. Please let me know your availability to come out and conduct the review.

2. Personal Property Retrieval – The Order authorizes you to retrieve your personal property from the facility. Per the Order, the parties are to confer and agree on a date and time for retrieval within the next two weeks. You are also required to arrange for a licensed and insured moving company at your own expense. Please note that any items located in the detox area will be relocated to the farmhouse upon your arrival.

<u>Please respond with your availability for both, along with the name and insurance information for the moving company you plan to use so we can get this scheduled promptly.</u>

Respectfully,
Robert E. Boles III
On behalf of the Chapter 11 Trustee and Serenity Hills Life Center

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>                              Sun, Jun 21, 2026 at 5:25 PM
To: Sharon Travis <serenityhillscenterceo@gmail.com>
Cc: Tara Singer <accountant@serenityhillslifecenter.org>, rjohns <rjohns@johnswvlaw.com>, Shelia Weese <NP@serenityhillslifecenter.org>, "Dr. Sarah Dean" <DrD@serenityhillslifecenter.org>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>

Ms. Travis,

I wanted to follow up on my previous email regarding the Court's Order (Doc. No. 311) to make sure you received it. According to the Court's Certificate of Notice, you were served on June 18, 2026.

As noted in my prior correspondence, there are time-sensitive deadlines in the Order that require coordination between the parties. I would appreciate a response at your earliest convenience so we can get both the records review and the property retrieval scheduled.

Please don't hesitate to reach out with any questions.

No. 5:25-bk-00087    Doc 315    Filed 06/30/26    Entered 07/01/26 12:58:48    Page 18 of 35

Exhibit E

 **Gmail**

Sharon Travis <serenityhillscenterceo@gmail.com>

---

# ACTION REQUIRED: Computer Name, Password & Location – Please Respond Today

1 message

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>      Fri, Jun 5, 2026 at 10:47 AM
To: Dayna Hehr <RNSuper@serenityhillslifecenter.org>, Tara Singer <accountant@serenityhillslifecenter.org>, Ravon Williams <kitchen@serenityhillslifecenter.org>, Andrea Winters <awinters@serenityhillslifecenter.org>, Mental Health Techs <mht@serenityhillslifecenter.org>, Kristen McKinley <kmckinley@serenityhillslifecenter.org>, Shelia Weese <NP@serenityhillslifecenter.org>, NursingDepartment <nursing@serenityhillslifecenter.org>, secretary <secretary@serenityhillslifecenter.org>, SamanthaGroh <utilizationnurse@serenityhillslifecenter.org>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>, SFuller <Therapist4@serenityhillslifecenter.org>, Trena Mckitrick <intake2@serenityhillslifecenter.org>, Breanna McElwain <SupportCounselor2@serenityhillslifecenter.org>, Stacey Magruder <CM2@serenityhillslifecenter.org>, Michelle Forshey <MB@serenityhillslifecenter.org>, "serenityhillscenterceo@gmail.com" <serenityhillscenterceo@gmail.com>, Marie Travis <livingfreeovwv@gmail.com>
Cc: Anthony Tarr <tony@groupstar.com>, Dan Tarr <dan@groupstar.com>

Team,

We are updating our master list of all computers in the building. This list is maintained by leadership and Groupstar, who monitor our Synaptic security system as required by OHFLAC for the facility. Several machines have been moved, and we have some new ones that need to be logged, so we need current information from everyone.

Please reply to this email with the following three items:

1. Computer Name – This is the name displayed on your login screen. Examples: "Librarian," "Front Desk," or it may be your name.

2. Password – The password you use to log into that computer. Please double-check your capitalization and spelling before sending.

3. Your Location in the Building -- Where the computer is physically sitting right now. Examples: "Office 3B," "Office by the Chapel," "Nurse's Station," etc.

If you use more than one computer, please send the information for each one.

MHTs – Please also check the computers in the libraries and send the same three items (computer name, password, and location) for each one.

Please respond by the end of day tomorrow. If you have any questions, reach out to me directly.

Thank you,

Exhibit F

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>        Sun, Jun 21, 2026 at 6:49 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

I do not want anything moved to the farmhouse. I do not want any of my property moved or touched.
[Quoted text hidden]

--

# Marie Travis "CEO"
# Serenity Hills Life Center
# 304-277-4657 Ext 104/ 304-971-4171 Fax
# 667 Stone Shannon Rd. Wheeling Wv 26003

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>        Sun, Jun 21, 2026 at 6:51 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

Let me repeat myself: no one is to touch my property in the future detox area!!
[Quoted text hidden]

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>        Sun, Jun 21, 2026 at 6:53 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

That is a liability, and I do not want anyone near my property.
[Quoted text hidden]

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>        Mon, Jun 22, 2026 at 10:19 AM
To: Sharon Travis <serenityhillscenterceo@gmail.com>, rjohns <rjohns@johnswvlaw.com>, Shelia Weese
<NP@serenityhillslifecenter.org>, "Dr. Sarah Dean" <DrD@serenityhillslifecenter.org>, Charlie Endly
<SupportCounselor@serenityhillslifecenter.org>, Tara Singer <accountant@serenityhillslifecenter.org>

Ms. Travis,

I want to clarify that I was under the impression that the items in the detox area were primarily bags of clothing. However, after reaching out to maintenance, I now understand that these items consist of building supplies and tools.

Based on that clarification, we will leave everything in place in that area for the licensed moving company to handle in accordance with the Court's Order.

As a reminder, we still need to coordinate scheduling in accordance with the Court's Order (Doc. No. 311). Please advise what day would work best for you so we can place it on the calendar and ensure all parties are properly coordinated.

Respectfully,
Robert E. Boles III

---

**From:** Sharon Travis <serenityhillscenterceo@gmail.com>
**Sent:** Sunday, June 21, 2026 6:53 PM

**To:** Compliance Officer <compliance@serenityhillslifecenter.org>

No. 5:25-bk-00087   Doc 315   Filed 06/30/26   Entered 07/01/26 12:58:48   Page 20 of 35

**Subject:** Re: Case No. 5:25-bk-00087 – Scheduling Per Court Order (Doc. No. 311)

[Quoted text hidden]

Exhibit G

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>                    Tue, Jun 23, 2026 at 12:51 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

I want to respectfully verify your role or position, as you are sending me emails concerning the Trustee.
[Quoted text hidden]

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>                    Tue, Jun 23, 2026 at 1:27 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

Again, before discussing any situation with you, I need to verify that you work there and that you position and authority to send me emails.
[Quoted text hidden]

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>                    Wed, Jun 24, 2026 at 3:18 PM
To: Sharon Travis <serenityhillscenterceo@gmail.com>, rjohns <rjohns@johnswvlaw.com>, Shelia Weese
<NP@serenityhillslifecenter.org>, "Dr. Sarah Dean" <DrD@serenityhillslifecenter.org>, Tara Singer
<accountant@serenityhillslifecenter.org>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>


Ms. Travis,

I have been designated by the Chapter 11 Trustee to work with you regarding the coordination and transfer of your personal property in accordance with the Court's Order (Doc. No. 311).

As reflected in this email thread, the Trustee is copied for verification of my role and authority in this matter.

Please let me know your availability so we may proceed with scheduling in compliance with the Order.

Respectfully,

Robert Boles

---

**From:** Sharon Travis <serenityhillscenterceo@gmail.com>
**Sent:** Tuesday, June 23, 2026 1:27 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>                    Wed, Jun 24, 2026 at 3:46 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

No. 5:25-bk-00087   Doc 315   Filed 06/30/26   Entered 07/01/26 12:58:48   Page 21 of 35

Mr. Boles, it is a conflict of interest for you to be involved with me as a creditor. You testified against me in court, and you also wrote a letter against me for Ms Dean. I am drafting a motion to the courts on this matter today. The trustee should know this. Your email says Compliance Officer. Whatever role you play there, this is a conflict of interest. Some rules govern a Chapter 11, and as an employee, you must be a disinterested party. You are not. You can look up that I am within my legal rights.

Neither would you want me to be in control of matters of the same.

Please tell Mr. Johns that I am filing a motion to the courts on this tomorrow. Please tell him to use Tara Singer; she is the accountant, and it is more appropriate. If we can not get this resolved quickly, then I will request a third neutral party for an examination of the records.

[Quoted text hidden]

---

**Compliance Officer** <compliance@serenityhillslifecenter.org>                    Wed, Jun 24, 2026 at 4:28 PM
To: Sharon Travis <serenityhillscenterceo@gmail.com>
Cc: rjohns <rjohns@johnswvlaw.com>, Shelia Weese <NP@serenityhillslifecenter.org>, "Dr. Sarah Dean"
<DrD@serenityhillslifecenter.org>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>, Tara Singer
<accountant@serenityhillslifecenter.org>


Ms. Travis,

To assist with coordination and ensure the process remains orderly, Supportive Counselor Charlie Endly will be co-facilitating the exchange with me for the duration.

Please provide your availability and name of the licensed moving company so we may proceed with scheduling in accordance with the Court's Order.

Also, if you could use the "reply all" with any future correspondence.

Respectfully,
Robert E. Boles III

---

**From:** Sharon Travis <serenityhillscenterceo@gmail.com>
**Sent:** Wednesday, June 24, 2026 3:46 PM
[Quoted text hidden]

[Quoted text hidden]

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>                    Wed, Jun 24, 2026 at 6:15 PM
To: Compliance Officer <compliance@serenityhillslifecenter.org>

Robert, you can not be in the same room with me. I am requesting the accountant who has experience and knowledge of all aspects of the finances and what was paid back. Tara has a lot of the receipts, and Jenna was putting them together. When I say a neutral party, that means an accountant who is neutral and comes in. You are not to be near anything that has to do with my finances or my property. Please, I already stated that there is a conflict of interest and you are not even, I believe, by law supposed to be involved. I believe the Trustee needs to brush up on his regulations as a Trustee.

Please do not contact me any further. This needs to be addressed by the Trustee.

[Quoted text hidden]

 **Gmail**

Sharon Travis <serenityhillscenterceo@gmail.com>

Exhibit J

# Re:
2 messages

---

**Tara Singer** <accountant@serenityhillslifecenter.org>    Mon, Jun 29, 2026 at 7:10 PM
To: Sharon <mcblessed4god@gmail.com>, rjohns <rjohns@johnswvlaw.com>, Compliance Officer
<compliance@serenityhillslifecenter.org>, Shelia Weese <NP@serenityhillslifecenter.org>, "Dr. Sarah Dean"
<DrD@serenityhillslifecenter.org>, Charlie Endly <SupportCounselor@serenityhillslifecenter.org>, Sharon Travis
<serenityhillscenterceo@gmail.com>, Marie Travis <livingfreeovwv@gmail.com>

Just being transparent. I see there is a new email address and that it was only sent to this address. So we are all on the same page Sharon has a new email address and is being advised that she is to contact Bob and schedule an appointment and provide the name of the licensed moving company before doing anything further. Sharon has been advised this in many emails and has yet to answer with the correct information.

---

**From:** Sharon <mcblessed4god@gmail.com>
**Sent:** Monday, June 29, 2026 2:34 PM
**To:** Tara Singer <accountant@serenityhillslifecenter.org>; rjohns@johnslaw.com <rjohns@johnslaw.com>
**Subject:**

I will be looking at the documents this Wednesday July 1st, 2026. Please let me know if that is okay? I will be picking up my property on July 2nd because it is going to be too hot on the 3rd.

---

**Sharon Travis** <serenityhillscenterceo@gmail.com>    Mon, Jun 29, 2026 at 10:33 PM
To: Tara Singer <accountant@serenityhillslifecenter.org>

Home movers is a licensed company. I will include this in my letter to the court tomorrow that I am to only communicate with a man I have a conflict of interest with. I feel this is an attempt to delay the process and I don't believe everyone should have access to our conversations except Robert John's.
[Quoted text hidden]

--
## Marie Travis "CEO"
## Serenity Hills Life Center
## 304-277-4657 Ext 104/ 304-971-4171 Fax
## 667 Stone Shannon Rd. Wheeling Wv 26003

Exhibit K



# Wellpoint.

# Fax

| | |
|---|---|
| **To:** Serenity Hills Life Center | **From:** Amber Kent |
| **Fax:** 13049714171 | **Pages:** 6 |
| **Phone:** (304) 964-1979 | **Date:** 04-09-2025 2:49 PM |
| **Re:** | **cc:** |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

**\*Comments:**
Attention Nursing Department: Please find attached a medical records request. Please let me know if you have any questions. Thank you

**Providers:** You are required to return, destroy or further protect any PHI received on this document pertaining to members that you are not currently treating. Providers are required to immediately destroy any such PHI or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.

The information contained in this facsimile message, and in any accompanying documents, is intended only for use by the individual or entity named above. This transmission may contain information that is privileged, confidential and/or otherwise protected by applicable law. If you are not the intended recipient or an employee, associate or agent responsible for delivering the message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution or copying of this communication or its substance is strictly prohibited. If you receive this communication in error, please immediately notify the sender by telephone to arrange for its destruction or return. Receipt of this facsimile message by anyone other than the intended recipient is not a waiver of confidentiality or privilege for any information contained herein.



 **West Virginia | Mountain Health Trust**

April 9, 2025

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

RE: Medical Records Request

Case number: C-2025-2832
Provider TIN: 472418972
Investigator: Amber Kent

Dear Serenity Hills Life Center

The Special Investigations Unit (SIU) is conducting an assessment of services rendered to our member(s) and/or their dependents. Our review aims to verify whether services billed, pursuant to Wellpoint policies and guidelines, the American Medical Association (AMA) Current Procedural Terminology (CPT®) and/or Healthcare Common Procedural Coding System (HCPCS) and other applicable industry standards are billed accurately and supported through documentation.

## What to supply

Please supply all medical records or documentation to support the codes billed (H2036). You may include any additional information or correspondence you believe is pertinent to a patient's diagnosis and treatment.

## Forms

Please complete the included *Patient File Veracity Attestation* and *Provider Signature* forms and return both with the records.

## Due date

Please submit copies of these records within 30 days of receipt of this letter. If the requested documentation is not received within 30 days, we will consider the service(s) non-verifiable. You should also note that only documentation you send will be considered during the review process, and payment recovery will be made for undocumented services.

**provider.wellpoint.com/wv**

Coverage provided by Wellpoint West Virginia, Inc.

WVWP-CD-053558-24 | March 2024

Medical records request
Page 2 of 4

# Medical records request

The member(s)' benefits program contract authorizes the release of such information; therefore, we are requesting the submission all medical records for the patients listed in the following table:

| MemberName | Member | Sex | BirthDate | DOS |
|---|---|---|---|---|
| ▓▓▓▓▓C | ▓▓▓▓ | F | ▓▓▓▓ | 02/26/2024 |
| ▓▓▓▓▓S | ▓▓▓▓ | F | ▓▓▓▓ | 02/13/2024 |
| ▓▓▓▓▓ | ▓▓▓▓0 | F | ▓▓▓▓5 | 09/19/2024 |
| ▓▓▓▓N | ▓▓▓▓4 | F | ▓▓▓▓2 | 09/04/2023 |
| ▓▓▓▓PI, ▓▓▓▓ | ▓▓▓▓7 | F | ▓▓▓▓ | 03/16/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 09/25/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 11/13/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 06/14/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 07/11/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 07/18/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 05/01/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 08/16/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 09/10/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 02/17/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 03/07/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 12/04/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 11/01/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 07/12/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 11/27/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 11/19/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 11/01/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 07/31/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 07/24/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 09/12/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 10/01/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 08/31/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 09/19/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 12/15/2023 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 12/16/2024 |
| ▓▓▓▓ | ▓▓▓▓ | F | ▓▓▓▓ | 09/11/2023 |

Case number: C-2025-2832

Medical records request
Page 3 of 4

Provider TIN: 472418972
Investigator: Amber Kent

Please note that we are not requesting *psychotherapy notes* as defined by the *HIPAA Privacy Rule* (See *45 CFR §164.501*). The *Privacy Rule* defines psychotherapy notes as comments recorded by a healthcare provider who is a mental health professional documenting or analyzing the contents of a conversation during a private counseling session or a group, joint, or family counseling session and that are separate from the rest of the patient's medical record. Psychotherapy notes do not include any information about medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, or results of clinical tests; nor do they include summaries of diagnosis, functional status, treatment plan, symptoms, prognosis, and progress to date. Psychotherapy notes also do not include any information that is maintained in a patient's medical record.

## Instructions

Hard copy submission:
1. Collect all your documentation.
2. Place a copy of this letter on top of all the records.
3. Package documents in appropriate envelope/box based on size and amount of your submission.
4. Depending on your choice of mail carrier, send your information to:

| United States Postal Service (USPS) Special Investigations Unit P.O. Box 4211 Woodland Hills, CA 91365 | All other mail carrier services, for example, UPS, FedEx, etc. Special Investigations Unit Att: Mabel Lohuiz CA9301-0125 21215 Burbank Blvd Woodland Hills, CA 91367 |

It is recommended information be sent in a trackable method.

## Electronic submission

An opportunity to submit claims and medical records electronically is an option if you register for an Availity* account. Sign up for an account with Availity at www.availity.com/provider-portal-registration:
1. Confirm your organization is set up with medical attachment tools.
2. Collect all your documentation in digital format.
3. Include a digital copy of this letter with your submission.

Refer to the *Availity Getting Started Guide: Availity Attachments Tools*. For assistance, contact Availity Client Services at 800-AVAILITY (282-4548).

Medical records request
Page 4 of 4

## Closing

Please complete the attached *Medical Record Veracity Attestation* form that includes a provider signatory section and return with the records.

If you have any questions regarding this request not related to the use of Availity, please contact me.

Respectfully,

Amber Kent, Investigator Sr.
304-964-1979
Amber.kent@wellpoint.com
Wellpoint

## General information

You are not permitted to use or disclose Protected Health Information about individuals who you are not treating or are not enrolled to your practice. This applies to Protected Health Information accessible in any online tool, sent in any medium including mail, email, fax or other electronic transmission.

### Patient File Veracity Attestation
### Serenity Hills Life Center

I, _____ , attest that the medical records supplied to Wellpoint of West Virginia, Inc., pursuant to Amber Kent's' letter dated, April 9, 2025 are true, accurate and complete. I further acknowledge that the records are an accurate representation of the services provided and reflect the original records maintained in the patient's chart.

Print Name:

Practice/Group Address: _____

Practice/Group City, State ZIP code:

### Provider Signature Form – Serenity Hills Life Center

Wellpoint of West Virginia, Inc. is in the process of reviewing medical records. Please provide a list of all providers rendering services within your group or organization. Please include each individual's credentialing information) and a signature for each individual.

| Physician/Provider | Credentials | Signature |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Date submitted: _____

Thank you for your assistance.

# FAX

**To:** Serenity Hills Life Center
**Company:**
   **Fax:** 13049714171
**Phone:** (304) 281-0474

**From:** Amber Kent
   **Fax:**
**Phone:** (304) 964-1979

---

NOTES:
Attention: Sharon Travis. Please find attached letter with response due no later than 1/8/26. Please let me know if you have any questions.

**Providers:** You are required to return, destroy or further protect any PHI received on this document pertaining to members that you are not currently treating. Providers are required to immediately destroy any such PHI or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.

**IMPORTANT WARNING:**
This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is **STRICTLY PROHIBITED**. If you have received this message by error, please notify us immediately and destroy the related message. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without appropriate patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

---

**Date and time of transmission: 12-09-2025 11:09 AM**
**Number of pages including this cover sheet: 10**



 West Virginia | Mountain Health Trust

December 9, 2025

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

Dear Serenity Hills Life Center,

In an effort to combat fraud, waste, and abuse (FWA) the Special Investigations Unit (SIU) conducted an assessment of your recently supplied medical records for some of our enrollee(s) and/or their dependents. Our review aimed to verify whether services are billed accurately and can be supported through documentation, such as Wellpoint policies and guidelines, the American Medical Association (AMA) Current Procedural Terminology (CPT) and/or Healthcare Common Procedural Coding System (HCPCS) and any other applicable industry standards.

## Results

We reviewed dates of service from July 2023, through December 2024, of the medical records you supplied, we determined of the 30 DOS/claims reviewed, 100% were not supported by the documentation provided for reasons to be included:

- Thirty claim lines medical records lack initial assessment and admission records. (Reference: WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services. Effective January 1, 2023. Pages 27-28 of 47)
- Thirty claim lines medical record lacks treatment/service plan. (Reference: WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services. Effective January 1, 2023. Page 28 of 47)
- Thirty claim lines conflicting documentation for place of service. (Reference: West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia

**provider.wellpoint.com/wv**
Coverage provided by Wellpoint West Virginia, Inc.

WVWP-CD-054149-24 | March 2024

C-2025-2832                 TIN: 472418972              Investigator: Amber Kent

Reimbursement Policy – Documentation Standards for Episodes of Care; CMS.gov Internet Only Manuals: Place of service Code Set)

- Four claim lines members had overlapping times of services documented. (Reference West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care)
- Three claim lines documentation did not include the stop and start times of the services provided and documentation was copied and pasted. (Reference West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care)

## Claims Detail Report

Review the attached *Claims Detail Report* showing the results of our evaluation and decisions justifying the request for the return of the overpayment.

## Return of Overpayment

Based on the Results, we identified an overpayment of $519,750.00.00 and are required to recover the overpayment from you.

Your Next Steps
Remit a check within the next 30 days, no later than January 9, 2026, or contact me immediately to discuss payment arrangements. Please make your check payable to Wellpoint and send it to:

Special Investigations Unit
740 W. Peachtree St., N.W.
Atlanta, GA 30308
Attn: Investigator Amber Kent, C-2024-9871

Instructions
- Checks may not be made out in amounts based on enrollee identity and/or Health Plan enrollee name and/or enrollee individual claim number(s)
- Checks must include the Investigator's name and the case number in the check memo
- In addition to collecting the overpayment, we require you to agree to the enclosed corrective action plan that outlines required billing and documentation modifications.

C-2025-2832                    TIN: 472418972            Investigator: Amber Kent

Review, sign and return the corrective action plan, along with your check to the above address by January 8, 2026.

## State/Contractual Requirements

A statistical software tool was utilized to determine your overpayment based on the review results and other claims reimbursed for the codes reviewed. Statistical software, RAT/STATS, was developed by the Department of Health and Human Services, Office of Inspector General, Office of Audit Services, and is used by insurance companies to randomly select review samples and evaluate the results.

## Rebuttal Options

If you disagree with our findings, we must receive a written notification of rebuttal within 30 days, no later than January 9, 2026. The documentation should, at a minimum, include the specific claims in question, the reasons you dispute the findings and documentation to support your position.

Instructions
Please follow these instructions closely to avoid delays in processing.

Hard Copy Submission
1. Collect all your documentation
2. Place a copy of this letter on top of all the records and ensure the footer with the Case Number, Provider TIN/NPI, and Investigator Name is visible
3. Package documents in appropriate envelope/box based on size and amount of your submission
4. Depending on your choice of mail carrier, send your information to:

| United States Postal Service (USPS) | All other mail carrier services, for example, |
|---|---|
| Special Investigations Unit | UPS, FedEx, etc. |
| P.O. Box 4211 | Anthem |
| Woodland Hills, CA  91365 | Special Investigations Unit |
| | Attn: Mailroom supervisor |
| | CA9301-0125 |
| | 21215 Burbank Blvd |
| | Woodland Hills, CA. 91367 |

It is recommended information be sent in a trackable method.

C-2025-2832                 TIN: 472418972              Investigator: Amber Kent

Electronic Submission

An opportunity to submit claims and medical records electronically is an option if you register for an Availity account. If you require assistance with medical attachments, contact Availity Client Services at 800-AVAILITY (282-4548).

1. Confirm your organization is set up with medical attachment tools

2. Collect all your documentation in digital format

3. Include a digital copy of this letter with your submission and ensure the footer with the Case Number, Provider TIN/NPI, and Investigator Name is visible

For additional help, how to setup and use the Availity Essentials attachments applications, you may refer to the Availity Getting Started Guide: Availity Attachments Tools.

Failure to submit all necessary documentation within the specified time will constitute a waiver of any further rebuttal rights, and the findings will be considered final.

We appreciate your time and attention to this matter. If you have questions, call or email me.

Sincerely,

Amber Kent

Amber Kent
Investigator, Sr.
Amber.kent@wellpoint.com
304-964-1979
Special Investigations Unit
Wellpoint

Cc: Bradley Reid, Special Investigations Unit

Enclosure(s): Medical records review detail
Corrective action plan

Proviso: You are not permitted to use or disclose Protected Health Information about individuals who you are not treating or are not enrolled to your practice. This applies to Protected Health Information accessible in any online tool, sent in any medium including mail, email, fax or other electronic transmission.

Return of Overpayment

---

## Corrective Action Plan

---

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

**Effective Date: December 9, 2025**

Thank you for participating in Wellpoint's plan. We appreciate the quality care you provide our members.  The Special Investigations Unit (SIU) requires providers to agree to an Education Action Plan when the results of a claims review is noncompliant with industry standards and our company policies and procedures.

## Specific Provider Issues Identified

The review determined that Serenity Hills Life Center inappropriately billed Healthcare Common Procedure Coding System (HCPCS) Code H2036, U1 Modifier. Specifically:

- Thirty claim lines medical records lack initial assessment and admission records.
- Thirty claim lines medical record lacks treatment/service plan.
- Thirty claim lines conflicting documentation for place of service.
- Four claim lines members had overlapping times of services documented.
- Three claim lines documentation did not include the stop and start times of the services provided and documentation was copied and pasted.

- *Source Material Referred*

*C-2025-2832*                    *TIN: 472418972*                    *Investigator: Amber Kent*

- West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services. Effective January 1, 2023
  https://dhhr.wv.gov/bms/Provider/Documents/Manuals/Chapter%20504%20Substance%20Use%20Disorder%20Services.pdf

- Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care
  https://www.provider.unicare.com/docs/gpp/WV-CAID-RP-documentation-standards-for-episodes-of-care.pdf?v=202102232251

## Provider Action Plan

- Provider will review and comply with the medical records documentation standards listed in the provider manual.
- Provider will maintain medical records that are complete, legible and support services provided.
- Provider will appropriately bill for services rendered and document in the medical records in accordance with established guidance and contract terms with Wellpoint.
- Provider will ensure that Treatment Plans are created and maintained in accordance with the WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services.

## Monitoring

Periodically, we will analyze claims data and potentially review a sample of medical records and claims payments addressing any discrepancies identified.

I have read the Education Action Plan and agree to abide by the requirements and actions identified.

X _____

First Name, Last Name (printed)
Provider

X _____

Signing Date

C-2025-2832          TIN: 472418972          Investigator: Amber Kent