## IN THE UNITED STATES BANKRUPTSY COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

JUN 30 2026

Time: 2:50    am/pm

**IN RE:**

**Heart 2 Heart, Inc Case No 25-00087**

**Chapter 11**

**Pro se/ Creditor**

---

**MOTION TO REMOVE SARA DEAN FOR CONFLICT OF INTERSEST WITH THIS CREDITOR, THE TRUSTEE NOT GETTING APPROVAL FROM THE COURTS AS A PROFESSIONAL, FOR HER ACTIONS OF BEING PREVIOUSLY FIRED AND HAS AN ACTIVE ETHICS VIOLATION FILED AGAINST HER.**

**A MOTION TO OBJECT AS A CREDITOR TO HER HIRING BECAUSE SHE IS ALSO A CREDITOR, BECAUSE THERE IS A CONFLICT OF INTERESTAND BECAUSE SHE HAS AN ACTIVE ETHICS COMPLAINT BEFORE THE WV BOARD OF EXAMINERS IN COUNSELING AGAINST HER BY THE THIS CREDITOR.**

**A MOTION TO REQUEST FOR HER JOB DESCRIPTION, TITLE AND PAY.**

---

I come to the courts because the proper measures that were put in place by the Rules that govern chapter 11 policies and Trustee regulations were not followed. The Trustee new Sarah Dean was a creditor and also knew there was an ethics complaint filed against her. She according to her words is advising staff and back at her former position, which was clinical director. I as a Creditor with a conflict of interest was not given a chance to object. She has access to information and my personal email from Sheila Weese who she is good friends with. In the middle of an active ethics complaint. This is highly inappropriate and not professional. The Trustee is hiring all of Sheila Weese friends and nursing's family members. Sheila Weese had a complaint filed against her that he did not even address. I Object to her hiring and ask the court to remove her. The Trustee was meeting with both Robet Boles and Sara Dean when I was on leave. She was fired with good cause and shows

her motive for testifying was to get her job back.

## Facts

1. Chapter 11 appointed trustee must obtain court permission to employ a professional person. 11 U.S. Code § 327 - Employment of professional persons.

2. 11 U.S. Code § 327 (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

3. 11 U.S. Code § 327 (c) a case under chapter 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

4. The trustee must file an application to employ the professional under Bankruptcy Rule 2014. [1, 2] and Submit a Verified Statement. The Professional must submit a signed, sworn statement detailing all of her connections to the debtor, creditors, and any other parties in interest. She must explicitly disclose her creditor claim, her relationship with the opposing creditor, and the pending ethics complaint. [1, 2, 3]

5. Serve Notice: The application must be served to the U.S. Trustee, any appointed Creditors' Committees, and major stakeholders.

6.  The U.S. Trustee or the conflicting creditor will have immediate standing to file a formal objection based on a lack of disinterestedness.

7.  The professional cannot legally act on behalf of the estate or receive compensation from bankruptcy funds until the judge signs an order approving the retention.

8.  Both Sarah Dean and Robert Boles are close friends with Sheila Weese the Nurse Practitioner that Sharon Travis filed a complaint against. Sharon Travis heard when she was put on leave both Sarah Dean and Robert Boles came up to meet with the Trustee. This was an example of Sheila Weese making all the decisions. This has been a coordinated effort between the 3 of them to get their jobs back.

Sarah Dean was the clinical Director when her team caused $519,750.00 errors for not doing their notes. The See wellpoints documents of the time frame of the audit. It was her job to keep track of her staff as first line of defense then Robert Boles the Compliance officer was the second line of defense. They both failed. *See exhibit K and L*

9.  Sara Dean was hired by me as my personal counselor in December of 2021 and talk to her in November 2021. She ceased being my counselor around I believe May of 2023.

10. She then came to work for Serenity Hills Life Center in September of 2023. She started out as an interim Clinical Director. She liked it and decided to stay on. She was terminated in January of 2025

11. I did not know that my counselor was not suppose to work for a former patient for

years and it was only about April or May when she stopped seeing me as my therapist.

12. There is an active ethics complaint before West Virginia Board of Examiners.

13. Sarah Dean She states in her rebuttal to the Board of Examiners in Counseling complaint that "As a result of an extensive investigation by a federally appointed ombudsman and Trustee, Ms. Sharon Travis has officially been fired from her position as the CEO see (exhibit A) I have been asked to come back and advise the team on how to get back to operating with strong ethical foundation. I have accepted the task and am back at the same I started when Ms. Sharon walked in my office on December 8th 2021".

14. I can show other documents to show that she is unethical and does not speak the truth, but I would have to get permission from the Board of Examiners in Counseling. Sarah Dean can also give a written waiver to allow me to share.

15. She was terminated in January of 2025 for insubordination of not following rules, unequal treatment of residents. We are an at will facility so we did not give her a reason, a contracted position, but here was why I decided to terminate her.

16. Telling other staff members not to follow facility Rules and causing Chaos infacility.

17. She was purposely trying to cause me trouble because as the CEO because advocated for a resident who wanted to leave.

18. The patient (1) was having serious issues mentally. She was being bullied by a Patient (2) in her group and if patient (1) shared anything in the group, Patient (2) would bully the Patient (1) and make fun of her about what she shared outside the group. The

Patient (1) wanted to be in another group and Patient (1) was refused by Sarah Dean. Patient (1) started to shut down and it was affecting her mental Health. The CEO only found out about it because patient (1) wanted to leave.

19. I the CEO at the time, stated "that a patient (1) has the right to choose to go to another group. so she could get the treatment she needed and to be able to share".

20. Sharon Travis called Keith King who was the head person over treatment programs in the state for DHHR. The CEO always called him about compliant issue to make sure we were protecting patients' rights. He stated Sharon Travis was right and sent out an email to confirm it. The CEO forwarded to the treatment team to make sure they knew now and in the future what they were allowed to do. She acted like it was okay and would follow those rules, but she changed afterwards towards me.

21. Facility discharge was 3 writeups and then you go on probation. If they violate there probation they get kicked out

22. She then advocated for the Patient (2) and Patient (3) who were ring leaders In bullying residents and causing other patient's harm. See the letter I sent addressing the unfair treatment of the two residents compared to the others and because the clinical team was not addressing the girl's behaviors. The letter states that The CEO was going to do an Administrative discharge for her exceeding the limit of writeups and causing harm to the other residents. This was after a screaming in a residential meeting because she wanted to order eyelashes and it was not allowed on are allowed list because it glue had to be used.

23. Sarah started to behave insubordinate after that. When I complained about her

disrespectful behavior.  We had talked about this she offered to submit her resignation and I stated things had to change.

24. Sarah called OHFLAC in at that time but, I was not aware of it until She testified at the court hearing for the bankruptcy case.

25. They had just been in the facility for their two-year review and Sarah Dean nor Robert Boles stated Sharon did anything wrong and we passed.

There is a conflict of Interest, she is a creditor and she is not ethical so how can she instruct ethics.

Sharon Travis                    6-30-2026

goes by
middle name
Marie

⊙ 04-09-2025 2:49PM. 5:25-bk-0008FrvicDoc 316    Filed 06/30/26 ⁺ˢᵉʳᵉⁿⁱᵗʸ ᴴⁱˡˡˢ ᴸⁱᶠᵉ ᶜᵉⁿᵗᵉʳ07/01/26 13:02:07    Page 7 of ᵖᵍ ¹ ᵒᶠ ⁶

19

Exhibit K



# Fax

| | |
|---|---|
| **To:** Serenity Hills Life Center | **From:** Amber Kent |
| **Fax:** 13049714171 | **Pages:** 6 |
| **Phone:** (304) 964-1979 | **Date:** 04-09-2025 2:49 PM |
| **Re:** | **cc:** |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

**\*Comments:**
Attention Nursing Department: Please find attached a medical records request. Please let me know if you have any questions. Thank you

**Providers:** You are required to return, destroy or further protect any PHI received on this document pertaining to members that you are not currently treating. Providers are required to immediately destroy any such PHI or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.

The information contained in this facsimile message, and in any accompanying documents, is intended only for use by the individual or entity named above. This transmission may contain information that is privileged, confidential and/or otherwise protected by applicable law. If you are not the intended recipient or an employee, associate or agent responsible for delivering the message to the intended recipient, you are hereby notified that any disclosure, dissemination, distribution or copying of this communication or its substance is strictly prohibited. If you receive this communication in error, please immediately notify the sender by telephone to arrange for its destruction or return. Receipt of this facsimile message by anyone other than the intended recipient is not a waiver of confidentiality or privilege for any information contained herein.



 West Virginia | Mountain Health Trust

April 9, 2025

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

RE: Medical Records Request

Case number: C-2025-2832
Provider TIN: 472418972
Investigator: Amber Kent

Dear Serenity Hills Life Center

The Special Investigations Unit (SIU) is conducting an assessment of services rendered to our member(s) and/or their dependents. Our review aims to verify whether services billed, pursuant to Wellpoint policies and guidelines, the American Medical Association (AMA) Current Procedural Terminology (CPT®) and/or Healthcare Common Procedural Coding System (HCPCS) and other applicable industry standards are billed accurately and supported through documentation.

## What to supply

Please supply all medical records or documentation to support the codes billed (H2036). You may include any additional information or correspondence you believe is pertinent to a patient's diagnosis and treatment.

## Forms

Please complete the included *Patient File Veracity Attestation* and *Provider Signature* forms and return both with the records.

## Due date

Please submit copies of these records within 30 days of receipt of this letter. If the requested documentation is not received within 30 days, we will consider the service(s) non-verifiable. You should also note that only documentation you send will be considered during the review process, and payment recovery will be made for undocumented services.

**provider.wellpoint.com/wv**
Coverage provided by Wellpoint West Virginia, Inc.

WVWP-CD-053558-24 | March 2024

Medical records request
Page 2 of 4

## Medical records request

The member(s)' benefits program contract authorizes the release of such information; therefore, we are requesting the submission all medical records for the patients listed in the following table:

| MemberName | Member | Sex | BirthDate | DOS |
|---|---|---|---|---|
| ███ | ███ | F | ███ | 02/26/2024 |
| ███ | ███ | F | ███ | 02/13/2024 |
| ███ | ███ | F | ███ | 09/19/2024 |
| ███ | ███ | F | ███ | 09/04/2023 |
| ███ | ███ | F | ███ | 03/16/2024 |
| ███ | ███ | F | ███ | 09/25/2023 |
| ███ | ███ | F | ███ | 11/13/2023 |
| ███ | ███ | F | ███ | 06/14/2024 |
| ███ | ███ | F | ███ | 07/11/2023 |
| ███ | ███ | F | ███ | 07/18/2023 |
| ███ | ███ | F | ███ | 05/01/2024 |
| ███ | ███ | F | ███ | 08/16/2024 |
| ███ | ███ | F | ███ | 09/10/2024 |
| ███ | ███ | F | ███ | 02/17/2024 |
| ███ | ███ | F | ███ | 03/07/2024 |
| ███ | ███ | F | ███ | 12/04/2024 |
| ███ | ███ | F | ███ | 11/01/2024 |
| ███ | ███ | F | ███ | 07/12/2024 |
| ███ | ███ | F | ███ | 11/27/2024 |
| ███ | ███ | F | ███ | 11/19/2024 |
| ███ | ███ | F | ███ | 11/01/2024 |
| ███ | ███ | F | ███ | 07/31/2024 |
| ███ | ███ | F | ███ | 07/24/2023 |
| ███ | ███ | F | ███ | 09/12/2023 |
| ███ | ███ | F | ███ | 10/01/2023 |
| ███ | ███ | F | ███ | 08/31/2023 |
| ███ | ███ | F | ███ | 09/19/2024 |
| ███ | ███ | F | ███ | 12/15/2023 |
| ███ | ███ | F | ███ | 12/16/2024 |
| ███ | ███ | F | ███ | 09/11/2023 |

Case number: C-2025-2832

Medical records request
Page 3 of 4

Provider TIN: 472418972
Investigator: Amber Kent

Please note that we are not requesting *psychotherapy notes* as defined by the *HIPAA Privacy Rule* (See *45 CFR §164.501*). The *Privacy Rule* defines psychotherapy notes as comments recorded by a healthcare provider who is a mental health professional documenting or analyzing the contents of a conversation during a private counseling session or a group, joint, or family counseling session and that are separate from the rest of the patient's medical record. Psychotherapy notes do not include any information about medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, or results of clinical tests; nor do they include summaries of diagnosis, functional status, treatment plan, symptoms, prognosis, and progress to date. Psychotherapy notes also do not include any information that is maintained in a patient's medical record.

## Instructions

Hard copy submission:
1. Collect all your documentation.
2. Place a copy of this letter on top of all the records.
3. Package documents in appropriate envelope/box based on size and amount of your submission.
4. Depending on your choice of mail carrier, send your information to:

| United States Postal Service (USPS) | All other mail carrier services, for example, UPS, FedEx, etc. |
|---|---|
| Special Investigations Unit | Special Investigations Unit |
| P.O. Box 4211 | Att: Mabel Lohuiz |
| Woodland Hills, CA 91365 | CA9301-0125 |
| | 21215 Burbank Blvd |
| | Woodland Hills, CA 91367 |

It is recommended information be sent in a trackable method.

## Electronic submission

An opportunity to submit claims and medical records electronically is an option if you register for an Availity* account. Sign up for an account with Availity at www.availity.com/provider-portal-registration:
1. Confirm your organization is set up with medical attachment tools.
2. Collect all your documentation in digital format.
3. Include a digital copy of this letter with your submission.

Refer to the *Availity Getting Started Guide: Availity Attachments Tools*. For assistance, contact Availity Client Services at 800-AVAILITY (282-4548).

Medical records request
Page 4 of 4

## Closing

Please complete the attached *Medical Record Veracity Attestation* form that includes a provider signatory section and return with the records.

If you have any questions regarding this request not related to the use of Availity, please contact me.

Respectfully,

Amber Kent, Investigator Sr.
304-964-1979
Amber.kent@wellpoint.com
Wellpoint

## General information

You are not permitted to use or disclose Protected Health Information about individuals who you are not treating or are not enrolled to your practice. This applies to Protected Health Information accessible in any online tool, sent in any medium including mail, email, fax or other electronic transmission.

**Patient File Veracity Attestation**
**Serenity Hills Life Center**

I, _____ , attest that the medical records supplied to Wellpoint of West Virginia, Inc., pursuant to Amber Kent's' letter dated, April 9, 2025 are true, accurate and complete. I further acknowledge that the records are an accurate representation of the services provided and reflect the original records maintained in the patient's chart.

Print Name: _____

Practice/Group Address: _____

Practice/Group City, State ZIP code: _____

**Provider Signature Form – Serenity Hills Life Center**

Wellpoint of West Virginia, Inc. is in the process of reviewing medical records. Please provide a list of all providers rendering services within your group or organization. Please include each individual's credentialing information) and a signature for each individual.

| Physician/Provider | Credentials | Signature |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Date submitted: _____

Thank you for your assistance.

Exhibit L

# FAX



**To:** Serenity Hills Life Center

Company:
**Fax:** 13049714171
**Phone:** (304) 281-0474

**From:** Amber Kent
**Fax:**
**Phone:** (304) 964-1979

NOTES:
Attention: Sharon Travis. Please find attached letter with response due no later than 1/8/26. Please let me know if you have any questions.

**Providers:** You are required to return, destroy or further protect any PHI received on this document pertaining to members that you are not currently treating. Providers are required to immediately destroy any such PHI or safeguard the PHI for as long as it is retained. In no event are you permitted to use or re-disclose such PHI.

**IMPORTANT WARNING:**
This message is intended for the use of the person or entity to which it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this information is **STRICTLY PROHIBITED**. If you have received this message by error, please notify us immediately and destroy the related message. You, the recipient, are obligated to maintain it in a safe, secure and confidential manner. Re-disclosure without appropriate patient consent or as permitted by law is prohibited. Unauthorized re-disclosure or failure to maintain confidentiality could subject you to penalties described in federal and state law.

**Date and time of transmission: 12-09-2025 11:09 AM**
**Number of pages including this cover sheet: 10**



West Virginia | Mountain Health Trust

December 9, 2025

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

Dear Serenity Hills Life Center,

In an effort to combat fraud, waste, and abuse (FWA) the Special Investigations Unit (SIU) conducted an assessment of your recently supplied medical records for some of our enrollee(s) and/or their dependents. Our review aimed to verify whether services are billed accurately and can be supported through documentation, such as Wellpoint policies and guidelines, the American Medical Association (AMA) Current Procedural Terminology (CPT) and/or Healthcare Common Procedural Coding System (HCPCS) and any other applicable industry standards.

## Results

We reviewed dates of service from July 2023, through December 2024, of the medical records you supplied, we determined of the 30 DOS/claims reviewed, 100% were not supported by the documentation provided for reasons to be included:

- Thirty claim lines medical records lack initial assessment and admission records. (Reference: WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services. Effective January 1, 2023. Pages 27-28 of 47)
- Thirty claim lines medical record lacks treatment/service plan. (Reference: WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services. Effective January 1, 2023. Page 28 of 47)
- Thirty claim lines conflicting documentation for place of service. (Reference: West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia

**provider.wellpoint.com/wv**
Coverage provided by Wellpoint West Virginia, Inc.

WVWP-CD-054149-24 | March 2024

C-2025-2832                    TIN: 472418972                    Investigator: Amber Kent

Reimbursement Policy – Documentation Standards for Episodes of Care; CMS.gov Internet Only Manuals: Place of service Code Set)

- Four claim lines members had overlapping times of services documented. (Reference West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care)
- Three claim lines documentation did not include the stop and start times of the services provided and documentation was copied and pasted. (Reference West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services; Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care)

## Claims Detail Report

Review the attached *Claims Detail Report* showing the results of our evaluation and decisions justifying the request for the return of the overpayment.

## Return of Overpayment

Based on the Results, we identified an overpayment of $519,750.00.00 and are required to recover the overpayment from you.

Your Next Steps

Remit a check within the next 30 days, no later than January 9, 2026, or contact me immediately to discuss payment arrangements. Please make your check payable to Wellpoint and send it to:

Special Investigations Unit
740 W. Peachtree St., N.W.
Atlanta, GA 30308
Attn: Investigator Amber Kent, C-2024-9871

Instructions
- Checks may not be made out in amounts based on enrollee identity and/or Health Plan enrollee name and/or enrollee individual claim number(s)
- Checks must include the Investigator's name and the case number in the check memo
- In addition to collecting the overpayment, we require you to agree to the enclosed corrective action plan that outlines required billing and documentation modifications.

*C-2025-2832*          *TIN: 472418972*          *Investigator: Amber Kent*

Review, sign and return the corrective action plan, along with your check to the above address by January 8, 2026.

## State/Contractual Requirements

A statistical software tool was utilized to determine your overpayment based on the review results and other claims reimbursed for the codes reviewed. Statistical software, RAT/STATS, was developed by the Department of Health and Human Services, Office of Inspector General, Office of Audit Services, and is used by insurance companies to randomly select review samples and evaluate the results.

## Rebuttal Options

If you disagree with our findings, we must receive a written notification of rebuttal within 30 days, no later than January 9, 2026. The documentation should, at a minimum, include the specific claims in question, the reasons you dispute the findings and documentation to support your position.

Instructions
Please follow these instructions closely to avoid delays in processing.

Hard Copy Submission
1. Collect all your documentation
2. Place a copy of this letter on top of all the records and ensure the footer with the Case Number, Provider TIN/NPI, and Investigator Name is visible
3. Package documents in appropriate envelope/box based on size and amount of your submission
4. Depending on your choice of mail carrier, send your information to:

| United States Postal Service (USPS) | All other mail carrier services, for example, |
|---|---|
| Special Investigations Unit | UPS, FedEx, etc. |
| P.O. Box 4211 | Anthem |
| Woodland Hills, CA  91365 | Special Investigations Unit |
| | Attn: Mailroom supervisor |
| | CA9301-0125 |
| | 21215 Burbank Blvd |
| | Woodland Hills, CA. 91367 |

It is recommended information be sent in a trackable method.

Electronic Submission

An opportunity to submit claims and medical records electronically is an option if you register for an Availity account. If you require assistance with medical attachments, contact Availity Client Services at 800-AVAILITY (282-4548).

1. Confirm your organization is set up with medical attachment tools

2. Collect all your documentation in digital format

3. Include a digital copy of this letter with your submission and ensure the footer with the Case Number, Provider TIN/NPI, and Investigator Name is visible

For additional help, how to setup and use the Availity Essentials attachments applications, you may refer to the Availity Getting Started Guide: Availity Attachments Tools.

Failure to submit all necessary documentation within the specified time will constitute a waiver of any further rebuttal rights, and the findings will be considered final.

We appreciate your time and attention to this matter. If you have questions, call or email me.

Sincerely,

*Amber Kent*

Amber Kent
Investigator, Sr.
Amber.kent@wellpoint.com
304-964-1979
Special Investigations Unit
Wellpoint

Cc: Bradley Reid, Special Investigations Unit

Enclosure(s): Medical records review detail
Corrective action plan

Proviso: You are not permitted to use or disclose Protected Health Information about individuals who you are not treating or are not enrolled to your practice. This applies to Protected Health Information accessible in any online tool, sent in any medium including mail, email, fax or other electronic transmission.

## Corrective Action Plan

Serenity Hills Life Center
667 Stone Shannon Road
Wheeling, WV 26003

**Effective Date: December 9, 2025**

Thank you for participating in Wellpoint's plan. We appreciate the quality care you provide our members. The Special Investigations Unit (SIU) requires providers to agree to an Education Action Plan when the results of a claims review is noncompliant with industry standards and our company policies and procedures.

## Specific Provider Issues Identified

The review determined that Serenity Hills Life Center inappropriately billed Healthcare Common Procedure Coding System (HCPCS) Code H2036, U1 Modifier. Specifically:

- Thirty claim lines medical records lack initial assessment and admission records.
- Thirty claim lines medical record lacks treatment/service plan.
- Thirty claim lines conflicting documentation for place of service.
- Four claim lines members had overlapping times of services documented.
- Three claim lines documentation did not include the stop and start times of the services provided and documentation was copied and pasted.

- *Source Material Referred*

C-2025-2832                    TIN: 472418972                    Investigator: Amber Kent

- West Virginia Department of Health & Human Resources Bureau for Medical Services, Chapter 504 Substance use Disorder Services. Effective January 1, 2023
https://dhhr.wv.gov/bms/Provider/Documents/Manuals/Chapter%20504%20Substance%20Use%20Disorder%20Services.pdf

- Unicare Health Plan of West Virginia Reimbursement Policy – Documentation Standards for Episodes of Care
https://www.provider.unicare.com/docs/gpp/WV-CAID-RP-documentation-standards-for-episodes-of-care.pdf?v=202102232251

## Provider Action Plan

- Provider will review and comply with the medical records documentation standards listed in the provider manual.
- Provider will maintain medical records that are complete, legible and support services provided.
- Provider will appropriately bill for services rendered and document in the medical records in accordance with established guidance and contract terms with Wellpoint.
- Provider will ensure that Treatment Plans are created and maintained in accordance with the WV Department of DHHR BMS Manual, Chapter 504 Substance use Disorder Services.

## Monitoring

Periodically, we will analyze claims data and potentially review a sample of medical records and claims payments addressing any discrepancies identified.

I have read the Education Action Plan and agree to abide by the requirements and actions identified.

X_____

First Name, Last Name (printed)
Provider

X_____

Signing Date