No. 5:26-cv-00114-JPB

---

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

### WHEELING DIVISION

---

In re HEART 2 HEART VOLUNTEERS INC., Debtor

---

SHARON TRAVIS, Appellant,

V

DEBORAH FISH, Appellee.

---

ON APPEAL FROM THE UNITED STATES BANRUPTCY COURT

FOR NORTHERN DISTRICT OF WEST VIRGINIA

Bankruptcy Case No. 5:25-bk-00087

---

**APPELLANT'S OBJECTION AND MOTION TO DENY THE UNITED STATES TRUSTEE'S MOTION TO INTERVENE AS APPELLEE**

---

PRELIMINARY STATEMENT

The U.S. Trustee seeks the extraordinary relief of intervening in this appeal to defend an order that he failed to take any timely position on in the court below. While the U.S. Trustee claims he "intended" to oppose the Appellant's motion to remove the Patient Care Ombudsman, mere intentions do not satisfy procedural rules. The U.S. Trustee sat on his hands, failed to file a timely objection or request an extension of time in the Bankruptcy Court, and now seeks to bypass standard

1

Appellant procedure by forcing his way into this appeal at the eleventh hour. Furthermore, as demonstrated by his premature designation of the record before even being granted leave to intervene.

## ARGUMEMT

I.    The U.S. Trustee Waived the Right to Oppose the Removal of the Ombudsman by Failing to File a Timely Objection Below.

A.  No "Good Intentions" Exception to Procedural Deadlines:

1. The U.S. Trustee admits that he "did not file an objection to Travis's motion to remove Miss Fish." He attempts to excuse this fatal omission by claiming the Bankruptcy Court denied the motion before he could act. This argument lacks legal merit. Parties in bankruptcy proceedings are governed by strict procedural deadlines to file responses. If the U.S. Trustee required additional time to formulate a position, his remedy was to file a motion for an extension of time or an expedited response. He did neither.

B.  Appellate Review is Limited to the Record Below:

1. It is a foundational principle of appellate law that an issue or objection not raised before the trial court is waived and cannot be raised for the first time on appeal. By remaining silent in the Bankruptcy Court, the U.S. Trustee failed to preserve any opposition to the Appellant's motion. He cannot now use intervention as a vehicle to circumvent waiver and present arguments on appeal that were never properly before the lower court.

II.    The U.S. Trustee's General Factual Background is Irrelevant to the Strict Legal Standards Required for Appellate Intervention.

A. Irrelevance of Chapter 11 Generalities:

1. The U.S. Trustee spends significant time outlining the general, statutory purpose of Chapter 11 reorganization and liquidation. While these statements are elementary bankruptcy principles, they have absolutely no bearing on the immediate legal question before this District Court: whether the U.S. Trustee has met his heavy burden under Federal Rule of Civil Procedure 24 to intervene as an appellee.

B. Clarification of Appellant's Status and Interests:

1. The U.S. Trustee notes that Appellant Sharon Travis served as the founder, president, and CEO of the Debtor. To ensure the record is clear, Appellant is participating in these appellate proceedings not merely as a former officer, but as a principal creditor and major stakeholder with a direct, pecuniary interest in ensuring the integrity of the bankruptcy estate. The actions of the Patient Care Ombudsman directly impact the administration and value of the estate, giving the Appellant absolute standing to seek her removal and appeal the lower court's erroneous denial.

III.    The U.S. Trustee Grossly Mischaracterizes the Appellant's Motion as an Attempt to Eliminate the Ombudsman Rather Than Replace Her for Cause.

A. Misrepresentation of the Record Below:

1. The U.S. Trustee cites 11 U.S.C. Section 333 to argue that an ombudsman is a statutory requirement for a healthcare business. In doing so, the U.S. Trustee deliberately mischaracterizes the Appellant's underlying motion, framing it as an attempt to leave the patients without oversight. This is completely false. The Appellant's motion explicitly sought to remove and/or replace Deborah Fish due to documented bias, conflict of interest, and severe wrongdoings.

3

B.  Failure to Address Cause for Replacement:

1.  The Bankruptcy Court and the U.S. Trustee have both entirely ignored the "replace" aspect of the Appellant's motion. The Appellant does not dispute the statutory role of a patient care ombudsman; rather, the Appellant argues that an ombudsman must be a strictly "disinterested person" who operates without bias. When an appointed ombudsman commits wrongdoings that harm the integrity of the case, she must be replaced. The U.S. Trustee cannot use the statutory requirement of Section 333 as a shield to protect an unfit, biased individual from removal.

IV.   The U.S. Trustee Improperly Relies on Irrelevant, Past Proceedings Regarding Cost-Saving Measures to Distract from the Ombudsman's Misconduct.

A. The Prior Waiver Motion is Legal History, Not Current Substantive Argument:

1.  The U.S. Trustee notes that the Debtor originally moved to waive the appointment of an ombudsman. This historical fact is completely irrelevant to the current appeal. That motion was a standard, fiduciary effort by counsel to preserve the estate's limited financial resources from the heavy costs associated with an ombudsman. It was denied, an ombudsman was appointed, and that issue was resolved.

B.  The Current Appeal Focuses Solely on Misconduct and Bias:

1.  By dragging up a completely separate, year-old motion regarding financial waivers, the U.S. Trustee is attempting to poison the well and create a false narrative. The current appeal is not a renewed request to waive the statutory

4

requirement of an ombudsman. It is a demand for accountability regarding the specific, documented wrongdoings and bias of Ms. Fish. The U.S. Trustee's reliance on irrelevant history proves he lacks a substantive defense for Ms. Fish's conduct.

V.    The U.S. Trustee Relies on a Completely False Narrative Regarding the Forced Retention of an Unvetted Chief Restructuring Officer.

A. The U.S. Trustee's Characterization is Factually Counter to the Record:

1. The U.S. Trustee claims that the Appellant "attempted to fire the CRO" because she simply "disagreed about changes." This is a flat-out distortion designed to prejudice this Court. The CRO possessed absolutely zero experience operating a healthcare facility. Because he lacked this vital expertise, he attempted to unilaterally force Heart to Heart into an unauthorized, 80-page contract to hand over operations to an outside management company whose principals had documented histories of illegal business dealings and criminal incarceration.

B. The CRO Exceeded His Contractual Authority and Allowed Severe Compliance Issues:

1. Under his employment agreement, the CRO had no legal authority to execute contracts or bind Heart to Heart without the express, written permission of the Board of Directors. Furthermore, while the CRO held operational control, severe healthcare compliance issues began occurring because the Appellant no longer had operational oversight. When the Appellant raised these critical compliance alarms, they were ignored.

C. The Bankruptcy Court Ignored Criminality and Erroneously Kept the

Resigned CRO in Place:

1. When the Appellant and the Board requested a standard, prudent two-week period to review the massive, unauthorized management contract, the CRO issued an ultimatum: accept it by the end of the day or accept his resignation. The Board voted to accept his voluntary resignation. Shockingly, despite the Appellant presenting clear, documented evidence of the CRO's overreach and alignment with a criminal element, the Bankruptcy Court ignored this evidence entirely and forced the resigned CRO to remain in place. The U.S. Trustee's attempt to reframe the forced retention of a resigned, conflicted actor as an improper "firing" by the Appellant is a bad-faith distortion of the truth. Protecting a healthcare estate from corrupt contracts, compliance failures, and forced illegal exposure is a strict fiduciary duty, not "interference."

VI.    The U.S. Trustee Attempts to Capitalize on a Corporate Crisis Engineered by the Ombudsman's Subversive and Extralegal Interference.

A. The Ombudsman Wholly Exceeded Her Statutory Mandate:

1. Under 11 U.S.C. Section 333, a Patient Care Ombudsman is strictly appointed to monitor and report on the quality of patient care. An ombudsman is required by law to be a neutral, "disinterested person." Here, the Ombudsman completely abandoned her statutory lane in November when she actively campaigned against the Appellant's motion for a routine exclusivity extension. By attempting to influence the Bankruptcy Court on corporate governance and financial extensions, the Ombudsman engaged in unauthorized adversarial overreach well outside her legal authority.

B. The Chapter 11 Trustee Appointment was the Product of a Tainted

Process:

1. The U.S. Trustee points to the subsequent appointment of a Chapter 11 Trustee as a justification for past actions. However, that transition was the direct result of the chaos caused by the CRO's compliance failures and the Ombudsman's biased interference. The Appellant consistently advocated for a legitimate, structured sale of the facility to a reputable healthcare provider to protect the estate and the patients. Instead, the U.S. Trustee and the Ombudsman actively coordinated to strip control from the founder and hand it to a trustee, entirely ignoring the Appellant's documented, legitimate warnings.

VII.   The U.S. Trustee's Broad Statutory "Watchdog" Authority Does Not Override Mandatory Procedural Rules for Appellate Intervention.

A. The Distinction Between Section 307 Authority and Appellate Intervention:

1. The U.S. Trustee correctly notes that under 11 U.S.C. Section 307, he may "raise and appear to be heard on any issue" in a case under Title 11. However, Section 307 is not a blank check that automatically grants the U.S. Trustee party-status on appeal. While Section 307 gave him the right to raise an objection before the Bankruptcy Court ruled, he chose not to exercise that right. An appearance right at the trial level does not excuse a total failure to act, nor does it automatically satisfy the stringent, mandatory requirements of Federal Rule of Civil Procedure 24 (applied via Bankruptcy Rule 7024) to intervene as an appellee in a federal district court appeal.

B. Perverting the "Watchdog" Mandate:

1. The U.S. Trustee cites the Supreme Court's ruling in Harrington v. Purdue Pharma LP, 603 U.S. 204 (2024), to frame himself as a "watchdog"

7

charged with preventing "fraud, dishonesty, and overreaching." The Appellant does not dispute this vital mandate; rather, the Appellant emphasizes that the U.S. Trustee is fundamentally failing it here. The "watchdog" is supposed to police overreaching. Here, the Patient Care Ombudsman engaged in severe overreaching by interfering in corporate governance outside her statutory bounds. By attempting to force his way into this appeal to defend a biased ombudsman's wrongdoings, the U.S. Trustee is using his institutional weight to shield misconduct, perverting the very integrity he is sworn to protect.

C.  Appointment Power Does Not Equal Sovereign Immunity from Accountability:

1.  While the U.S. Trustee holds the statutory authority to select and appoint the Patient Care Ombudsman under 11 U.S.C. Section 333, that appointment power does not insulate the appointee from removal for cause. When an appointee displays documented bias and violates her neutrality, she must be removed or replaced. The U.S. Trustee's possessive desire to defend his own appointee at all costs does not create a legitimate legal ground to bypass the rules of waiver and appellate procedure.

VIII.  The U.S. Trustee's Own Case Law and Post-Order Inaction Confirm That He Waived the Right to Intervene.

A.  The U.S. Trustee's Own Authority Defeats His Argument:

1.  The U.S. Trustee cites Yamaha Motor Corp. v. Perry Hollow Management Co., 297 F.3d 34 (1st Cir. 2002) to establish that a party may participate in an appeal if they "actively participated in the proceedings below." Yet, in the very next sentence, the U.S. Trustee explicitly admits that he "was unable to actively participate in the proceedings below." By his own legal standard,

8

because he failed to participate below, he cannot force his way into this appeal. The U.S. Trustee cannot rewrite the law to create a special exception for his own lack of prior participation.

B.   The "One-Day Notice" Excuse Explodes Under Scrutiny:

1. The U.S. Trustee claims he was prejudiced because the Bankruptcy Court denied the Appellant's motion just one day after it was docketed, leaving him no time to object. This argument ignores the extensive procedural remedies that were available to him. If the U.S. Trustee was genuinely aggrieved by the Bankruptcy Court's rapid denial, he had an absolute right under the Federal Rules of Bankruptcy Procedure to file a Motion for Reconsideration, a Motion to Alter or Amend the Order, or a Motion to Vacate within 14 days of the May 22nd order.

C.   Total Failure to Act Post-Order Proves a Lack of Diligence:

1. The U.S. Trustee did not file a single piece of paper in the Bankruptcy Court to challenge or expand upon the May 22nd order. He sat silently for weeks, completely ignoring the lower court's docket, and only woke up once the Appellant took the initiative to file a formal appeal in this District Court.

D.   A party cannot claim they "lacked a chance" to participate when they voluntarily skipped using standard procedural rules to protect their supposed interest below. Section 307 Does Not Confer Automatic Party Status on Appeal:

1. While 11 U.S.C. Section 307 permits the U.S. Trustee to appear and be heard in the underlying bankruptcy case, it does not bypass the strict, mandatory intervention requirements of Federal Rule of Civil Procedure 24 in an appellate court. Because the U.S. Trustee failed to raise any objection below,

9

failed to file a motion to reconsider below, and has no personal or financial stake in the outcome of this case, he lacks the requisite legal interest to intervene as an appellee now.

IX.    A Party's Agreement with a Lower Court's Ruling Does Not Satisfy the Strict Requirements for Appellate Intervention.

A. The U.S. Trustee's Logic is Frivolous and Circular:

1. The U.S. Trustee argues that he should be granted leave to intervene simply because he "believes the decision was correct" and "seeks to defend it on appeal." If mere agreement with a lower court's ruling were sufficient grounds to intervene in a federal appeal, any bystander could force themselves onto an appellate docket. The U.S. Trustee must prove a concrete, legally protected interest that is directly jeopardized by the appeal—not a generic ideological agreement with the lower court's brief denial.

B. The U.S. Trustee's Supposed Interests Are Already Adequately Represented:

1. Under the controlling standards for intervention (Fed. R. Civ. P. 24), an applicant must demonstrate that their purported interests are not adequately represented by the existing parties. In this appeal, the Patient Care Ombudsman, Deborah Fish, is already an active appellee. Ms. Fish, she is an Attorney herself and is fully capable of defending her own conduct, her reports, and the lower court's order. The U.S. Trustee's presence is entirely redundant and serves no purpose other than to exert undue bureaucratic pressure on these appellate proceedings.

10

C. The District Court is a Court of Review, Not a Do-Over for the U.S. Trustee:

1. By his own admission, the U.S. Trustee wants to intervene to present arguments he would have made below. This is an explicit admission that he is seeking to introduce new arguments and positions that were never subjected to the crucible of an evidentiary hearing or adversarial briefing in the Bankruptcy Court. This Court sits as an appellate court of review, not a forum for the U.S. Trustee to retroactively build a record he neglected to create below.

X. The U.S. Trustee's Express Desires to Manipulate the Record and Weaponize a Motion to Dismiss Highlight His Improper Motives.

A. The U.S. Trustee Improperly Seeks to Expand the Appellate Record:

1. The U.S. Trustee argues that he must be granted full party Status so that he can designate documents for the record on appeal under Fed. R. Bankr. P. 8009(a)(2). This argument is procedurally offensive. An appellate record is strictly confined to the evidence and documents that were actually presented to, and considered by, the lower court when it rendered its decision. Because the U.S. Trustee failed to file a single document or objection in the Bankruptcy Court regarding the Appellant's motion, he has no relevant lower-court record to designate. Granting intervention so a non-participating entity can inject extra-record documents on appeal violates fundamental tenets of federal appellate review.

B. The Order Appealed is a Final Order, Rendering the Jurisdictional Threat a Mirage:

1. The U.S. Trustee cites In re Bankruptcy Estate of Morgantown Excavators, Inc., 507 B.R. 126 (N.D. W. Va. 2014) to imply that this Court may

11

lack jurisdiction over what he suggests might be an interlocutory order. This is legally incorrect. In the unique context of bankruptcy, finality is determined under a more flexible standard; an order is "final" and appealable as of right under 28 U.S.C. Section 158(a)(1) if it conclusively resolves a discrete dispute within the larger case. An order completely denying the removal or replacement of a Patient Care Ombudsman for cause is a final, separate determination that cannot be remedied later.

C. Hostile Intent to Terminate the Appeal Confirms Amicus Status is More Than Adequate:

1. The U.S. Trustee openly admits he wants party status so he can immediately file a Motion to Dismiss for lack of jurisdiction and stay merits briefing. This reveals that his true objective is not to protect the integrity of the system as an objective "watchdog," but to aggressively shut down judicial review of the Ombudsman's misconduct. If the U.S. Trustee has a legitimate legal brief to submit regarding the public interest or statutory interpretation, participating as amicus curiae under Fed. R. Bankr. P. 8017(a)(2) is the precise, lawful vehicle for him to do so. His dissatisfaction with the standard limitations of an amicus brief does not entitle him to the rights of a primary litigant when he waived those rights below.

XI. The U.S. Trustee's Premature Desire to Secure Future Appeal Rights Confirms He Has Prejudged the Merits and Abandoned Neutrality.

A. Admission of Prejudiced, One-Sided Advocacy:

1. The U.S. Trustee explicitly argues that he must be allowed to intervene so that he can "appeal an adverse ruling" should this District Court rightfully reverse the Bankruptcy Court's summary denial. This admission is

telling. Before even reviewing the full appellate briefs or looking at the extensive timelines of misconduct submitted by the Appellant, the U.S. Trustee has already decided that he will oppose the Appellant at every level of the federal judiciary.

B. Protecting an Appointee is Not a Legitimate Sovereign Interest:

1.The U.S. Trustee's aggressive posture confirms that he is not acting as an objective guardian of the bankruptcy system. Instead, he is acting as a defensive shield for his own office's appointee. The fact that the Appellant's brief outlines clear, uncontradicted evidence of wrongdoings by Ms. Fish has caused the U.S. Trustee to panic and attempt to insulate her from judicial review. His desire to lock in future appellate rights to defend a biased actor does not satisfy the strict legal criteria for intervention.

## CONCLUSION

The Acting United States Trustee had every opportunity to participate in this matter when it was properly before the Bankruptcy Court. Instead, he chose silence, effectively waiving his right to shape the record or weigh in on the merits. He cannot now use this appeal as a retroactive "do-over" to introduce extra-record materials, weaponize hostile motions to dismiss, or shield a biased Ombudsman from accountability. Because the U.S. Trustee fails to meet the mandatory requirements of Federal Rule of Civil Procedure 24 and because his interests are already fully represented by Appellee Deborah Fish, and I pray this court will deny his Motion to Intervene must.

be denied.

13

Dated: July 8, 2026

Respectfully submitted,

Sharon Travis

304-281 -0474

## CERTIFICATE OF COMPLIANCE

This document complies with the type- volume limitations of Federal Rule of Bankruptcy 8013(1)(3) because it contains 3375 words

This document complies with the typeface and type-style requirements of Federal Rule of Bankruptcy Procedure 8015(a)(5)-(6) because it has been prepared in Microsoft Word using 14-point Times Mew Romans font, a proportionally spaced typeface.

Sharon" Marie" Travis

7-8-2026

15

## CERTIFICATE OF SERVICE

I certify that on July 8, 2026, a copy of the foregoing document was mailed First class, postage prepared, to:

Deborah Fish
211 West Fort Street Suite 705
Detroit, MI 48226

Matthew w. Cheney
Acting United States Trustee
United States Courthouse, Room 2025 300 Virginia Street, East Charleston, WV 25301 (304) 347-3400

Gary Kinder
Assistant United States Courthouse, Room 2025 300 Virginia Street, East Charleston, WV 25301 (304) 347-3400

*Sharon M Travis*

7-8-2026

16