## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**IN RE:**

**Heart 2 Heart, Inc Case No 25-00087**

**Creditor Chapter 11**

**Pro se/ Creditor**

**06/13/2026**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

JUL 13 2026

Time: 1:45 ____ am/pm

**NOW COMES SHARON TRAVIS" S CONSOLIDATED REPLY TO THE COMBINED REPONSE CONCERNINGTHE MOTIONS TO REMOVE ROBERT BOLES AND SARAH DEAN, OBJECT TO HIRING, AND REQUEST JOB DESCRIPTIONS.**

---

Now Comes Sharon, a creditor and interested party in the above-captioned Matter, appearing Pro S, and hereby submits this consolidated, roles, and conflicts of interest of Robert Boles and Sarah Dean. In support of her original motions, Sharon Travis respectively represents as follows:

I.      Rebuttal To The Debtor's "Business Judgement" Argument

The Respondent argues that the Court must give absolute deference to the Debtors "business judgement "regarding its staffing and operations. However, the Business Judgement Rule does not give a debtor license to bypass the strict statutory mandates of Bankruptcy Code, nor does it shield a debtor who employes individuals harboring deep personal animus against a creditor. Under 11U.S.C$ 327(a), personnel managing, operating, or advising estate must be

entirely "disinterested persons" and cannot hold interest adverse to the estate. As the Fourth Circuit held in *In re Harold & Williams Dev. Co., (77 F.2 906,910(4ᵗʰ Cir. 1992)*, a debtor's discretion is strictly "circumscribed by the explicit requirements of #327(a). Deference to business judgement ends where an objective conflict of interest begins or a misrepresentation begins. Bankruptcy courts lack the equitable power to ignore such statutory violations under the guise of business necessity. *See in re Middleton Arms, Ltd. Partnership, 934 F.2d, 725(6ᵗʰ Cir.1991)*

The Courts should also be aware that the Former Clinical Director Hit his hand through the wall and kicked the copy Machine. They were going to remove him from the building, but changed their mind and he still is working there. It this good judgement. This is also the person that led Sharon Travis's investigation and was told he would not be appropriate and the Trustee had him lead the charge.

An "adverse interest" is explicitly defined as possessing or asserting an economic or personal interest that would tend to lesson the value of the bankruptcy estate, or create personal disputes. *In re Roberts,46 B.R. 815,826(Bankr. D Utah 1985)*.

The Respondent's defense of the Trustee's "sound Judgment's completely contradicted by the operational reality of the estate. The trustee has been hiring persons who were terminated for cause or caused a hostile environment. Another recent hire was Erica Biggers who was terminated for not showing up for work

and also, because she and was mistreating residents. See testimony concerning her at a *Workforce hearing Transcripts Exhibit A.*

Furthermore, the Trustee's "judgement" has resulted in continued employment of Sarah Dean who holds a doctorate degree in psychology and State she is Psychologist not a licensed psychologist without and explicit license from the state psychology board is an unlawful misrepresentation. As Ms. Travis recalls she also said she applied for a for a job at Ohio Valley hospital and was turned down she did not work there as according to her resume. Conveniently they have been closed down for years. Before Serenity Hills she had never worked in a treatment center. She does not show addiction as one of her specialties on her own. Own advertisement. *see exhibit B.*

She also worked at Serenity Hills Life Center for only 2 days a week and made a high pay. She did not want to give up her private practice and that was a problem because she really did not have a handle on the day-to-day problems with the resident and was not able to have the oversight needed for her staff. She did not have the understanding of treatment centers rules. Please have her show you evidence of this experience. I believe she is only there a couple of times a week now. As when she testified to the court, she uses her therapeutic license to put weight on her testimony.

Rehiring individuals who were fired for good cause that is under an ethical investigation does not does not constitute "sound business judgement" under the

Fourth Circuit standard. It represents an existential threat to the Chapter 11 estate. If Ms. Dean's pending ethics complaint results in loss or suspension of her counseling license, the facility faces Immediate, catastrophic liability.

II.     Sara Dean

The conflict of Interest regarding Sarah Dean is absolute, egregious, and disqualifying. Ms. Dean is the former counselor of Creditor Sharon Travis. Within months after the treatment relationship ended Ms. Dean entered into an impermissible "dual Relationship" by coming to work for Ms. Travis business-a violation of professional mental health ethics. Sharon Travis fired Sarah Dean for causing chaos at the facility, not following rules and harming residents and the facility. Retaliating against Ms. Travis at a hearing before this courts with an agenda.  Ms. Deans now claims she was not Sharon Travis's counselor to the licensing board to shield herself from the oversight of the board, when Sharon Travis has irrefutable evidence of the clinical relationship including that she testified in her divorce hearing and billing statements that state it was for individual counseling. (Sharon Just sent that to the Board) An individual who will commit fraud before a licensing board cannot be trusted to act honestly regarding administration of a Chapter 11 Estate. See exhibit C, D, and

III.    Robert Boles

The Trustee attempts to downplay Robert Bole's role by avoiding executive titles. However, Mr. Boles actual conduct far exceeds the scope of the ordinary, non-professional employee. Mr. Boles contacted Creditor Sharon

Travis directly for explicit purpose of executing and overseeing direct pursuant to a court order. Managing compliance with federal court orders and acting as the primary, authoritative liaison to creditors is core fiduciary obligations legally assigned to the debtor in possession- not to an unapproved conflicted employee. A Chapter 11 debtor is strictly prohibited from delegating its specific duties as a representative of the court without prior notice and express court approval. *See In re Lowry Graphics, Inc., 86 B.R. 74,76(Bankr. S.D Tex 1988)*

In mid-April 2026 while the CEO was put on leave the debtor states that as a volunteer he gave Robert Boles access to an unapproved unvetted, and held not title -unilateral access into a companies' highly secure SAM.gov site. Which is a Severe Breach of his Fiduciary Duty. Handing the secure credentials to an unbonded, outside "Volunteer" is an egregious breach of the Debtors duty to protect estate assets. Handing over executive level control to a federal database proves that Mr. Boles involvement with the company has been deeply compromised from day one.

Furthermore, the Respondent attempts to blame Ms. Travis for a $500,000 financial liability/clawback is a blatant attempt to rewrite history. It is a complete distortion of corporate governance and the historical record. The administrative and documentation failures led to this penalty that that occurred entirely because the clinical and compliance failed to do their jobs.

The Separation of the Executive Oversight and Clinical/Compliance Roles. As Chief Executive Officer, Ms. Travis acted in strict accordance with healthcare Regulations by hiring qualified professionals to manage specialized operational divisions. In a licensed clinical facility, a CEO can not rewrite clinical documentation. To ensure billing integrity, the facility maintained a strict, multi-tiered compliance structure.

1. First Tier of protection: The Clinical Director, responsible for ensuring the clinical team completed correctly and signed all patient notes on time.

2. Second Tier of Protection: The Compliance Officer, Robert Boles, whose explicit, contractually assigned job was to audit documentation, catch errors and protect the company from regulatory exposure.

On one occasion after a concern raised by the utilization Nurse an audit was ordered by the CEO and there were problems in the notes not being done. The CEO gave the staff a few days to get it done and gave a directive to the compliance officer to consistently check the systems, perform sweeping audits, and ensure that this lazy behavior was not happening elsewhere in the company. This was the exact concerns that was a part of Ms. Travis raised to the Trustee that she believes was the real reason she was put on leave. Because neither the CRO or the Trustee were enforcing compliance and just wanted to keep the staff happy so no complaints would be made.

Mr. Boles's presence in the facility is part of a coordinated campaign of personal hostility against Ms. Travis. The hiring is driven directly by a Nurse Practitioner against whom Ms. Travis filed a harassment complaint the Trustee ignored. This Nurse Practitioner has been permitted to systematically rehire her personal friends, including Mr. Boles, effectively running the operations to surround herself with personnel who actively sought Ms. Travis's termination.

Mr. Boles is completely incapable of acting as a "disinterested person" under bankruptcy standards. He testified falsely under oath concerning Ms. Travis voting on her own grievance. He filed a false damning letter with the ethical board for Sarah Dean.  He has actively engaged in personal harassment, including showing up at an unrelated courtroom hearing involving individuals he did not know solely to harass Ms. Travis as did Sarah Dean, making hostile remarks like (get behind me Satan) as she walked in. Mr. Boles's wife actively publishes negative, harassing statements about Ms. Travis on social media. See exhibit F.

IV.                  CONCLUSION

The Trustee's Complete Abandonment of an Independent Judgement and Reliance on One-sided, Biased Information.

The Respondent's defense for these hires is "Familiarity – the empty claim that Mr. Boles and Sarah Dean should be in the roles simply because they know the facility. In a highly regulated clinical environment if the individuals were

previously terminated or was about ready to be terminated for cause from the exact organization.

Re-employing individuals who preciously mismanaged operations under the guise of "they know the layout of the building" turns the concept of Fidituary duty on its head. If a pilot crashes a commercial aircraft, a prudent airline does not put them back in the cockpit simply because they are familiar with the dashboard.

The trustee completely abandoned this required process of hiring. he did not post a single job description, did not seek out alternative qualified candidates, froze out alternative candidates, instead relied on the Nurse Practitioner who is actually, running the facility with hiring authority.

By allowing his Nurse Practitioner to dictate hiring her friends. The trustee has subverted the administration of the estate to an individual who he told Ms. Travis wanted her fired. This individual who harbors an unaddressed complaint filed by Ms. Travis. This Nurse Practitioner weaponized her role to assemble a personal click of friends – who carry deep, disqualifying animus against a creditor of this estate's founder. An individual cannot be deemed "disinterested "Under 11 U.S.C 327(a) when their re-employment is a direct retaliatory campaign designed to protect an insider clique and harm a creditor.
The estate cannot afford to fund personal vendetta while facing active risk of state regulatory shutdown or massive insurance claw backs.

WHEREFORE, Sharon Travis respectfully requests that this Court grant motions to remove Robert Boles and Sara Dean and order the immediate production of their job descriptions and pay structure, grant an expediated hearing and award such other relief as this Court deem just and proper.


**Sharon Travis**

*Sharon M. Travis*
7-13-2026

Exhibit D

Hi Sarah,

The Health Plan of Ohio has denied dos 12/1/21 and 12/13/21 for Sharon Travis due to you are not par with Medicare, the patients plan is a Medicare Advantage plan. Please advise if you want to set a flat rate for this patient, she has a $120 credit unapplied.

Thanks Tonya

121

Q    Okay. So, that's just, you just transcribed or read that letter that you had transcribed for her.

A    That's all I was. I was just writing it down for her because she writes so small.

JUDGE:    Do you have any additional questions, Ms. Travis?

MS. TRAVIS:    Yes. Did you ever – You were working with Erica. Did you get a lot of complaints about Erica being toxic with the patients?

JUDGE:    So, the question is, did you ever hear complaints about – and who was it being toxic with the patients?

MS. TRAVIS:    Erica.

Q    Erica being toxic with the patients.

A    Yes, on multiple occasions. Just to name a couple, it was her overstepping boundaries with patients, getting cigarettes off of patients, calling certain patients names in different instances. A couple had actually came to me crying about it and I had actually called Ms. Marie. The list goes on a couple times. Like she said, yes, there is a target on your back being a supervisor. But even while I'm a supervisor, there are certain things you still have to set boundaries for that are avoidable at the time. But, yes, in my experience since she was here, it was definitely a problem.

JUDGE:    Okay. Additional questions?

MS. TRAVIS:    Yes. Did Erica Biggers not show up to work and leave early when she was supposed to be a supervisor?

JUDGE:    Okay. I'm not going to allow that question. I think that goes too deep into why. I know Ms. Biggers is a former employee. I think we can leave it at that.

MS. TRAVIS:    Okay. You were a patient here before you graduated. What was your experience? Was I ever cruel to the patients? Was I ever toxic? Did I ever do anything harmful to the patients?

122

Q    Are you there, ma'am?

A    Yes.

Q    So, the question is when you were a patient there yourself, did you ever witness Ms. Travis being adverse or harsh to patients?

A    No. And I spent a whole three months here and in my time being here, when she was actually over here at the building and she wasn't in her office at the farmhouse, she was doing activities and things with us in her spare time. But anytime she was around the residents, we were just being formal. We'd have meetings. We would – you know what I'm saying? Like set up to do different activities and stuff. But I never actually witnessed her being verbal or abusive or anything with anybody else, and she has never been like that with me.

JUDGE:    Okay. Any additional questions, ma'am, and for rebuttal testimony?

MS. TRAVIS:    Yes. This is rebuttal to Mr. Fuller. They have meetings, treatment team meetings. Do you see me very often ever go into their meetings and influence them?

Q    Okay. So, the question is, do you ever witness people going into meetings very often?

MS. TRAVIS:    Myself. Marie.

MS. MAIN:    Judge Sims, this is already question and answered by him.

JUDGE:    No. This is a question for the rebuttal witness.

MS. COX:    Can I go ahead and answer?

JUDGE:    Yes.

MS. COX:    Okay. So, I am always on the floor where there's meetings. Treatment team goes on. I sit on the outside and I'm the one that calls the residents to the treatment team. One time in the entire six months I have been here did she

No. 5:25-bk-00087    Doc 340    Filed 07/13/26    Entered 07/13/26 14:35:30    Page 11 of 13

*Exhibit C*

# Dean's Natural Wellness

1025 main st, suite 704.
Wheeling WV, 43950
Phone: (509) 509-0079
**Dean-o07@hotmail.com**

| INVOICE # | DATE |
|---|---|
| 723 | 3-23-22 |

**BILL TO**

Sharon Travis

220 Bethany Pike

Wheeling WV. 26003

Phone: 304-281-0474

| DESCRIPTION | | DATE-PAID | AMOUNT |
|---|---|---|---|
| Individual Therapy | | | |
| Dates of Service: | | | |
| 12-8-21 | | | $120.00 |
| 1-3-22 | | 12-20 -$120.00 | $120.00 |
| 1-11-22 | | | $120.00 |
| 1-18-22 | | | $120.00 |
| 1-26-22 | | 1-27 - $600.00 | $120.00 |
| 2-8-22 | | | $120.00 |
| 2-15-22 | | | $120.00 |
| 2-16-22 | | | $120.00 |
| 2-22-22 | | | $120.00 |
| 2-23-22 | | | $120.00 |
| 2-28-22 | | 2-28 - $240.00 | $120.00 |
| 3-1-22 | | | $120.00 |
| 3-8-22 | | | $120.00 |
| 3-14-22 | | | $120.00 |
| 3-21-22 | | | $120.00 |
| 3-23-22 | | | |
| | **Total.** | $960.00 | $1,800.00 |
| | **Balance.** | $840.00 | |

Exhibit F

11:29

## Messenger

<

### Replies

Q



**Dan Womeldorff**

~~all the negative talk about Sharon~~ ~~Travis she has been very good to me~~ ~~the last time I was in town~~

Like    Reply



**Tiffany Boles**
do good people have 2 pending assault charges? Do good people berate a room full of girls fighting addiction telling them awful things? (It's on the page in court documents)

She is a tyrannical narcissist.

Like    Reply

**Dan Womeldorff**

~~That may be probable~~ ~~she was so quiet back when I~~ ~~visited by research~~

Like    Reply

**Taylor Elizabeth**
you're literally

<    O    ⬆    ...

— She states there are two pending assaults
there is one and our investigation team found me innocent