CLERK. U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

AUG 14, 2026

Time: 3:30 am/pm

**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re: Heart 2 Heart Volunteers, Inc.,
*Debtor.*
Case No. 5:25-bk-00087
Chapter 11

Creditor/ Pro se

**CREDITOR'S MOTION FOR RECONSIDERATION OF ORDER DENYING MOTION TO REMOVE SARAH DEAN AND EMERGENCY MOTION TO REMOVE SARAH DEAN, AND REQUEST FOR EVIDENTIARY HEARING**

Creditor, Ms. Travis (hereinafter "Movant"), appearing *pro se*, respectfully moves this Court pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e) to reconsider its order (Doc. No. 369) denying Movant's Emergency Motion and Motions to Remove Sarah Dean from her role within this Chapter 11 estate. In support thereof, Movant respectfully states as follows:

## I. PROCEDURAL TIMELINESS AND PRO SE STATUS

1. **Timeliness of Filing:** This Motion is timely filed within fourteen (14) days of the entry of the Court's formal written order (Doc. No. 369) on the docket.

2. **Tolling of Appeal Deadline:** Filing a timely motion under Rule 9023 tolls stays the deadline to file a formal Notice of Appeal pursuant to Federal Rule of

Bankruptcy Procedure 8002(b)(1). The time to appeal runs from the entry of the order disposing of this Motion.

3. **Liberal Construction of Pro Se Pleadings:** Movant is a *pro se* litigant. Pleadings and oral arguments by non-lawyers must be held to less stringent standards than formal documents drafted by attorneys and must be liberally construed to protect fundamental due process.

4. **Sufficiency of Verbal Record Objections:** At the hearings on this matter, Movant vigorously disputed the assertions of the Trustee's counsel and presented conflicting documentary and statutory evidence. Although Movant did not utilize the specific, formal legal boilerplate word "object," Movant's active verbal dispute of the facts and presentation of contrary law functioned as a clear, timely, and substantive objection on the record.

## II. ARGUMENT

### A. THRESHOLD ISSUE: MOVANT POSSESSES DIRECT STANDING AS A CREDITOR

**1. As preliminary threshold matters, Movant possesses Direct standing as a creditor under 11 U.S.C 1109(b) and the *U.S Supreme Court's ruling in Truck Insurance Exchange v. Kaiser Gypsum Co. ,602 U.S 685 (2024).* Creditors are explicitly recognized as "parties in interest" with broad statutory right to be heard on any issue affecting the case.**

**2. As the Supreme Court affirmed, this extends to protect any stakeholder whose financial are threatened by operational mismanagement, potential liabilities, and regulatory risk that diminish the pool of assets available for creditor recovery. Sarah Deab the employed practices, conflict of interest and misconduct challenged -such as introducing fraudulent credentials and risking massive claw backs-directly imperil the estates financial integrity. As set forth more fully below, Court committed manifest errors of fact and law:**

## B. MANIFEST ERROR OF FACT: THE COURT OVERLOOKED WRITTEN COMPLIANCE EVIDENCE AND STATE LAW PLACED ON THE RECORD

**1. Contradiction of the Written Record:** The Court's order erroneously states that Movant failed to provide evidence, and She provided written evidence, statutory law, in her motions. Respectfully, this finding is completely contradicted by the official court record and the electronic docket. It was actually the Trustee (representing the debtor), His attorney, the ombudsman and Mr. Dean that provided no evidence. ***Doc 344 Exhibit A. pg.7 & 8 -Exhibit B pg. 9- Exhibit C pg. 10 Exhibit D Pg. 11-14 Exhibit G page 19 and Exhibit H***

***page 21. Doc. 316 Pages 8-24 and Exhibit K pages 7-12 and Exhibit L pages 13-19.***

**2. Concrete Record Evidence of Unauthorized Title Use:**

Prior to the hearing, Movant formally submitted into the record documentary evidence (**Doc. No. 316**), which contains direct, official email correspondence from the West Virginia Board of Examiners of Psychologists explicitly confirming that Sarah Dean is not a psychologist in the State of West Virginia.

**3. Presentation of Binding Statutory Provisions:**

Furthermore, in the motion the Movant explicitly placed onto the record and presented to the Court the binding provisions of West Virginia Code § 30-21-1 et seq., which legally governs the practice of psychology.

**4. Disregard of State Law Criminal Violations:**

Movant explicitly stated in Open court on the record that there is no such thing as an "unlicensed psychologist" in professional practice under West Virginia law . Movant argued directly to the Court that using the title "psychologist" or performing clinical testing without an active state license is a misdemeanor criminal offense. The definitive written proof, the binding state statutes, and Movant's explicit, timely verbal warnings were all actively ignored and overlooked by the Court.

## C. THE COURT COMMITTED A MANIFEST ERROR OF LAW IN CITING SAFETY-KLEEN AND MOM N' POPS

### 1. Severe Misapplication of Controlling Case Law:

In its order, the Court relied on *Safety-Kleen, Inc. v. Wyche*, 274 F.3d 846 (4th Cir. 2001) and *Mom N' Pops, Inc. v. City of Charlotte*, 979 F. Supp. 372 (W.D.N.C. 1997) to hold that the financial or operational benefit of retaining this individual outweighs any alleged harms. This is a severe, manifest misapplication of controlling Fourth Circuit law.

### 2. Regulatory and Police Power Supersedes Financial Convenience:

In *Safety-Kleen*, 274 F.3d at 859-64, the Fourth Circuit explicitly ruled that a state's "police and regulatory power"—specifically laws enacted to protect public safety, health, and welfare—supersedes mere commercial convenience or corporate financial interests. The court held that enforcing regulatory safety protocols heavily outweigh any financial hardship to a business estate. West Virginia's psychologist licensing laws are strict public safety measures designed to protect vulnerable patients from unverified, unlicensed practitioners.

### 3. Federal Equity Cannot Shield State Licensing Breaches:

Similarly, *Mom N' Pops*, 979 F. Supp. 372, establishes that federal courts will not utilize equity to shield a commercial entity from complying with valid state

regulatory and licensing laws.

**4. Inversion of Precedent Subsidizing Ongoing Violations:**

By using these cases to justify keeping a person falsely holding themselves as a Psychologist who is in a clinical leadership role, the Court flipped the law upside down. Under both *Safety-Kleen* and *Mom N' Pops*, the public interest and strict compliance with state regulatory law always outweighs a debtor's or Trustee's desire for operational convenience. A federal bankruptcy court cannot utilize judicial equity to permit or subsidize an ongoing violation of state law.

## D. TRUSTEE'S FAILURE TO PROPERLY CREDENTIAL AND THE ABSOLUTE LOGICAL CONTRADICTION OF HER RESUME

**1. Active Filing of a Fraudulent Resume:**

The Trustee's legal counsel formally and publicly filed this individual's resume onto the electronic docket of this Chapter 11 case (**Doc. No. 338**). That resume explicitly asserts that she is a "Psychologist" who performs "psychological testing and interpretation".

**2. Complete Abandonment of Fiduciary Vetting Duties:**

Under Chapter 11 administrative standards, a Trustee operates under a strict

fiduciary duty to ensure all employed professional personnel are properly vetted and credentialed through primary source verification. The Trustee completely abandoned this duty, failing to run a simple licensure check with the State of West Virginia or asking for her documentation showing her license as a psychologist before publicly endorsing and submitting an unverified, illegal resume to this Court.

**3. Clinical and Financial Logic Defies the Fraudulent Title:**

Furthermore, the claim that she holds these psychology credentials defies all clinical and financial logic. She worked at this exact facility from September 2023 to January 2025. If she possessed a valid psychology credential, why did she never use it within the facility during those sixteen months? In a clinical setting, psychological testing and psychological billing command substantially higher commercial and federal reimbursement rates than basic counseling services. She never once practiced, tested, or billed as a psychologist during her actual tenure because she did not possess the credential. The sudden appearance of "Psychologist" credentials on her resume only after she was recently rehired is a calculated misrepresentation. If she put it on her resume an such services would be needed in this type of setting, is this court to believe if it were needed

that she would have said no?

**4. Manifest Error of Law Validating a Legal Impossibility:**

The Court's order states that there is "no basis to believe that Dr. Dean is holding herself out as a licensed psychologist". (Doc No. 369 page 6 paragraph 2) Respectfully, this finding represents a severe, manifest error of law that completely ignores Movant's explicit arguments and physical evidence on the record.

**5. The Statutory Definition of Unauthorized Public Holding Out:**

As Movant argued at the hearing, the West Virginia legislature did not write a law that only bans individuals from using the word "licensed". The statute explicitly bans the unauthorized public use of the single word "psychologist" or "psychological" by anyone who does not hold a state-issued license. West Virginia Code § 30-21-3(a) states: *"It shall be unlawful for any person to hold himself or herself out to the public as being engaged in the practice of psychology... or to use in connection with his or her name... the title 'psychologist' or 'psychological'... unless he or she shall first obtain a license."*

**6. Public Holding Out Formally Executed on the**

**Federal Docket:**

The resume submitted to this Court by the Trustee's own counsel explicitly holds this individual out under the restricted professional title of "Psychologist" and claims she performs "psychological testing and interpretation. "By placing this document on a public, federal electronic docket, a public "holding out" was legally completed. The law does not require her to explicitly type the word "licensed"; the mere use of the word "Psychologist" on an employment document submitted to a federal court satisfies the exact statutory definition of an illegal public holding out under West Virginia law.

**7. Erroneous Fabrication of Judicial Loopholes:**

By overriding a strict state safety statute with a verbal defense that she is an "Unlicensed psychologist," the Court committed a reversible error under *Safety-Kleen* and *Mom N' Pops*. A federal bankruptcy court cannot utilize judicial equity to carve out a non-existent loophole in a state's criminal and public health regulations.

**E. THE COURT'S MANIFEST ERROR IN RELYING ON THE TRUSTEE'S UNVERIFIED VERBAL ASSURANCES AND SARAH DEAN'S SILENCE**

**1. The Core Factual Contradiction:**

The Trustee defended the retention of this individual by verbally assuring the

Court that she was "not working as a psychologist" and "was not performing psychological testing" at the facility. The Court's final order explicitly adopts this excuse as fact. Respectfully, this finding is a complete fiction that is entirely refuted by the Trustee's own electronic docket submissions. The resume filed by the Trustee's own counsel explicitly states under her professional title that she is a "Psychologist" who conducts "psychological testing and interpretation.".

**2. . Sarah Dean's Silence Concludes an Absolute Admission of the Written Record:**

At no point during these proceedings did Sarah Dean submit a sworn affidavit, present alternative credential verifications, or state under oath that the resume submitted by the Trustee was incorrect. Her total silence on the record functions as an admission of the document's contents. If she is truly operating strictly as a Licensed Professional Counselor (LPC), the Trustee's public presentation of a resume claiming restricted psychological titles constitutes an active misrepresentation to the public, commercial insurers, and federal healthcare programs.

**3. Unsworn Approvals Do Not Equal Clinical Verification:**

The Court possesses no physical evidence—such as an independent clinical audit,

daily billing logs, or credential checks—to substantiate the verbal claims of the Trustee and the Ombudsman. Neither an administrative ombudsman nor a bankruptcy attorney has the legal authority or medical training to verify clinical compliance. Even though the Movant's Motion requested an independent audit. By choosing the unsworn word of counsel and the complete silence of the employee over the physical, contradictory documents on the electronic docket, the Court committed a structural abuse of administrative discretion.

## F. ERRORS OF FACT IN PATIENT CARE

**OMBUDSMAN'S FILED RESPONSE, (DOC 358-JULY 24, 2024) RELIED UPON BY THE COURT**

**1. Under Federal Rules of Civil Procedures 59. (e)., Made applicable bey Federal Rule of Bankruptcy Procedure (023, reconsideration is mandatory to correct clear errors of fact, and prevent manifest of injustice. Pacific Insurance Co. v. American National Fire Ins. Co.,148 F.3d 396,40394TH Cir. 1988)**

**2. The lower courts ruling reflects such a manifest error because it relied upon unsworn written assertions submitted by the Patient Care Ombudsman (PCO) in her response filed on July 24, 2026(Doc no. 358).**

**3. While the PCO narrowly restricted her verbal courtroom testimony solely to the unsworn assertion that Sarah Dean was not performing psychological work at the facility, her written response advanced a sweeping, demonstrably false narrative that the court improperly adopted without an evidentiary hearing.**

**4. Paragraph 9- The false "No Investigation" Claim:**

The PCO asserts in her filed response that no report or active Investigation regarding Sarah Dean could be found with the state licensing board. This is a clear error of fact. State regulatory bodies do not file anything during an active investigation. Crucially, this claim is entirely dismantled by direct written correspondence from the ethics committee confirming it. *Doc 364 Exhibit M.*

**5. Paragraph 11- Fabricated Characterization of Movant's Position:**

The PCO falsely claims that the movant is merely asking the individual to strike the word "psychologist" from her resume and does not contest her qualifications. This is a complete distortion of Movant's position. Movant has consistently challenged the unvetted credentials, unlawful holding -out, and structural unfitness of the individual-not mere typological error. *See Docket 316, 344, and 340*

**6. Paragraph 12 -Improper and speculative Representation of Residents:**

The PCO presumes to speak on behalf of the facility residents, asserting that they have not seen the resume and blindly trust that the facility hires qualified professionals. An ombudsman's role is to report verified facts, not to act as an unsworn witness manufacturing emotional or psychological sentiments for patients who the PCO has neither surveyed nor clinically evaluated.

*See Doc 338-page 8 paragraph 1 line 1 and Page 9 line 1, 3 &4.*

**7. Paragraph 13- Ignorance of Documented Psychological Testing:**

The PCO asserts there is no evidence that Sarah Dean is conducting psychological testing- an act she says is restricted to license Psychologist. Yet, Psychological testing is and interpretation explicitly listed as a core function on Sara Dean's own resume. *Doc 338-page 8 paragraph 1 line 1 and Page 9 line 1, 3 &4.* This error proves that the PCO either failed to review basic evidentiary documentation sitting on the docket or chose to ignore clear proof of unauthorized clinical practices.

**8. Paragraph 14- The False Denial of Co-Occurring / Dual – Diagnosis Operations:**

The PCO claims that the facility is not a mental health facility and solely treats

addictions. This demonstrates a fatal lack of understanding of the facility's licensing and operations. The facility's official license covers substance abuse with or without co-occurring disorders, meaning mental health treatment is legally and operationally integrated into its care model. Furthermore, this error is instantly dismantled by the undeniable practice of the Medical Director routinely prescribing mental health and psychotropic medications on-site. Furthermore, this pattern exposes the systematic failure: the PCO relies entirely on unverified hearsay from 3rd parties. It confirms that leadership is operating the facility in direct contravention of its official licensing statutory requirements.

## G. THIS COURT COMMITTED CLEAR ERROR BY CHARACTERIZING DOCUMENTED STATE ETHICS COMPLAINTS AND REGULATORY VIOLATIONS AS A "PERSONAL MATTER"

### 1. This Court Committed Clear Error by Characterizing Movant's formal state ethics complaint and regulatory objections against the individual as a mere "personal matter".

Dismissing documented professional misconduct and licensing violations as a personal dispute allows management to bypass statutory safeguards and exposes the estate to severe, unmitigated risks.

**2. Preexisting Regulatory Red Flags Refute Any "Personal Dispute":**

The timeline of record completely refutes the characterization of the ethics complaint as a personal matter when it comes to the facts. This complaint was made months before Sara Dean was hired by the estate. The timeline proves the concerns are objective, pre-existing regulatory risk, not a manufactured personal feud.

**3. Ethics Violations Involving Professional Standing Directly Impact Business Operations:**

A court cannot legally sanitize a professional or regulatory violation by labeling it a personal dispute between two parties. An enterprise providing clinical services rely entirely on lawful credentials and ethics violation concerning unauthorized practice or professional misconduct pose an immediate, objective commercial threat to the business's legitimacy, revenue, and survival.

**4. Ignored Regulatory Risk Violate Fiduciary Oversight:**

Management owes an absolute fiduciary duty to protect estate assets from foreseeable liabilities under 11 U.S.C 1107(a) and foundational Supreme Court Jurisprudence. See Wolf v. Weinstein,372 U.S. 633, 649-50(1963) (debtors -in-possession act as fiduciaries obligated to safeguard the estate)

Comm. Futures Trading Comm'n v Weintraub 471 U.S, 343 355(1985) (Management cannot execute reckless operational; decisions that harm creditors). Retaining and individual under active ethics scrutiny introduces catastrophic malpractice claims, regulatory fines, and administrative shutdown.

## H. THIS COURT COMMITTED REVERSABLE ERROR BY FAILING TO APPLY BINDING SUPREME COURT PRECEDENT (MOSSER v. DARROW) REGARDING CONFLICTS OF INTEREST

1. **Disregard of Conflict of Interest:**

This court committed a clear error of law by ignoring binding United States Supreme Court precedent and permitting the retention of personnel with unmitigated, adverse conflicts of interest.

2. **Disregard of Binding Supreme Court Precedent**: Under the landmark Mosser v. Darrow, 341 U.S. 267-72(1951), a bankruptcy trustee owes an unyielding, strict fiduciary duty of loyalty to the estate and its creditors, and is strictly prohibited from permitting personnel to maintain conflicting, adverse interest that threaten the estate integrity. Equity tolerates no interest adverse to the trust. This Court committed reversable error by failing to enforce this absolute standard of loyalty.

**3. Direct, Pre-Existing Adversarial Conflict with the Movant:**

As already established in the prior record, Movant filed a formal state ethics Complaint against Sarah Dean who is actively embroiled in pre -existing regulatory and professional misconduct proceedings brought by a primary party creates an impermissible, direct conflict of interest. Management cannot bring in someone whose loyalties are fundamentally divided against stakeholders of the estate.

**4. The Court Erred in Permitting a Conflicted Hire:**

By sanctioning a hire carries active, adverse conflicts and documented regulatory red flags already placed before the court, management and the court by passed the strict conflict prohibitions established by the Supreme Court. Informal representations or conditional promises cannot cure an active, adverse conflict of interest that compromises the integrity of these proceedings.

## I. THE INSURANCE AUDIT PROVES HER TENURE INFLATED PRE-PETITION LIABILITIES AND THREATENS REGULATORY SHUTDOWN

**1. Direct Inflation of Claims Against the Estate:**

During Sara Dean' previous Tenure, a commercial insurance company conducted a formal audit of the clinical records covering her precise timeframe as clinical director. This insurance audit conclusively revealed that staff under her direct supervision systematically failed to complete mandatory clinical notes and compliance documentation. As a direct consequence of her failure to enforce clinical standards, the insurance carrier issued a formal demand for repayment, forcing a claw back of approximately $500,000.00.

**2. Fired for Cause, Not Corporate Operational Strategy:**

For the record, Movant terminated this individual in January 2025 strictly for cause due to gross insubordination, unfair treatment of patients, systemic failure to follow established policies, and creating a severely hostile work environment . The Trustee cannot reward a director whose specific job failures manufactured a pre-petition $500,000 debt—and who was subsequently fired for misconduct—by putting her back in control of the estate's operations.

**3. Total Legal Fiction of Unverified Regulatory Compliance:**

Furthermore, the Trustee's counsel verbally asserted that she is "not currently practicing" as a psychologist at the facility. This assertion is a total legal fiction unsupported by an actual audit or inspection. Neither a corporate bankruptcy attorney nor an ombudsman possesses the medical training, licensing credentials, or authority to audit a clinical facility and declare an

individual's daily practices compliant with state health laws. Movant's emergency motion specifically requested a formal compliance audit to verify her activities, which the Court completely denied without any documentation or evidence from the Trustee.

**4. Unreviewed Billing Fraud Exposes the Estate to Total Destruction:**

The Court's reliance on the unsworn verbal proffer of counsel that she is "not practicing as a psychologist" creates an extreme, unvetted financial liability for the estate (*United States v. Loayza*, 107 F.3d 257). Movant's emergency motion specifically requested a formal compliance audit to see if this individual has actively engaged in psychological testing. If the facility has billed commercial insurance carriers or federal healthcare programs for "psychological testing" rendered by an individual who is proved to be unlicensed under West Virginia law, the facility is actively engaged in systemic billing fraud.

**5. Certain Corporate Death vs. Business Continuity:**

The moment an insurance provider discovers this credential fraud through a routine audit, the carrier possesses the absolute legal right to instantly terminate the facility's provider agreement, place a permanent freeze on all incoming reimbursements, and demand immediate restitution of all previously paid funds . By blocking an audit and an evidentiary hearing, the Court has not

protected "business continuity" under *Safety-Kleen*; instead, it has shielded an active compliance crisis that could force the immediate regulatory and financial shutdown of the entire facility, destroying any chance of a successful Chapter 11 reorganization.

## J. VIOLATION OF U.S. SUPREME COURT AND FOURTH CIRCUIT PRECEDENTS ON DUE PROCESS AND FIDUCIARY DUTY

### 1. Denial of the Constitutional Right to be Heard:

The Court committed a manifest error of law by blocking Movant from Cross examining the witness and ignoring the insurance audit, court records, and state board emails already on the docket. The U.S. Supreme Court held in *Goldberg v. Kelly*, 397 U.S. 254 (1970) that due process requires an opportunity to confront and cross-examine adverse witnesses. A court cannot decide a heavily disputed matter of fact based on the unsworn assertions of a Trustee's lawyer while silencing a party.

### 2. Structural Denial of the Right to Examine Witness and Present Evidence:

The Court's finding that Movant "failed to present evidence" is a manifest injustice when the Court itself actively blocked Movant from doing so. Movant had formally listed the Trustee and the Clinical Director as witnesses for

the hearing, and both individuals were physically present in the courtroom . Movant was fully prepared to cross-examine these witnesses regarding the falsified resume dates, the timeline fraud, and the unresolved creditor status, which some were not addressed at the hearing or in the order.

. Under controlling precedent, a bankruptcy court commits a clear abuse of discretion when it refuses to conduct an evidentiary hearing despite a genuine dispute over critical, material historical facts. By abruptly concluding the hearing without permitting Movant to examine the adverse witnesses present, the Court structurally stripped a *pro se* litigant of her constitutional right to be heard.

**3. Impact of Medical Hospitalization on Subpoena Deadlines:**

To the extent the Court noted a lack of third-party personnel, Movant notes for the record that she had just been discharged from the hospital immediately prior to the hearing. Due to this severe, documented medical emergency, Movant lacked the physical time and capacity to issue a formal subpoena to the facility's HR department. Federal courts have established that a party cannot be penalized or held to rigid procedural defaults when a severe, documented medical illness or recent hospitalization actively impacts their capacity to finalize witness logistics . Furthermore, as the Supreme Court established in Ungar v. Sarafite,376 U.S 575,589(1964). Because primary adverse witnesses were already present in open court, the Court's refusal to permit their examination constitutes an independent,

reversible violation of due process.

**4. The Court's Explicit Acknowledgment of Contested Factual Claims:**

During the hearing, the Court briefly questioned the lawyers and Movant. Movant vigorously argued her position. From the bench, the judge explicitly stated that Movant had said "awful things" or highly negative allegations within her written motions. Movant stands ready to prove those statements is completely true using the filed documentation on the record. By verbally acknowledging the severity of Movant's factual allegations, and then immediately terminating the hearing without allowing Movant to examine the witnesses or introduce her supporting proofs, the Court committed a manifest error of law. The Court effectively pre-judged Movant's character while structurally denying her the procedural mechanism to substantiate her claims on the record.

**5. Arguments of Counsel Are Not Evidence:**

By accepting the unsworn representation of Trustee's counsel and the Ombudsman over the physical evidence on the docket, the Court violated a Fundamental tenet of federal procedure. The United States Court of Appeals for the Fourth Circuit has consistently ruled that statements and arguments of counsel are not evidence. By treating an attorney's verbal explanation as established fact

Respectfully submitted,

Sharon "Marie" Travis. Travis, *Pro Se* Creditor
930 Main Street Apt 303 Wheeling, West Virginia 26003
304- 281-0474

while ignoring the filed docket, the court committed a structural abuse of discretion. The Court committed a structural abuse of discretion by treating a lawyer's unsworn verbal explanation as truth while ignoring filed state records and an insurance audit.

6. **The Court Lacks Discretion to Ignore Active Illegalities:** The Court's reliance on a "balancing of harms" to protect business operations ignores a higher constitutional limit. In 28 U.S.C. § 959(b), Congress explicitly mandates that a Trustee or manager appointed by a federal court must manage and operate property according to the requirements of the valid laws of the State. The Supreme Court in *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494 (1986) confirmed that a bankruptcy court's equitable powers cannot override clear state laws enacted to protect public safety and health.

## II. CONCLUSION AND PRAYER FOR RELIEF

**Prayer for Relief:** WHEREFORE, Movant respectfully requests that this Court vacate its prior Order (Doc. No. 369), grant Reconsideration of the same, schedule an Evidentiary Hearing to permit the cross-examination of witnesses, order an immediate compliance audit of the facility's clinical credentials, and grant such other and further relief as this Court deems just and proper.

Dated: August 13, 2026

# CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**In re: Heart 2 Heart Volunteers, Inc.,**
***Debtor.***
**Case No. 5:25-bk-00087**
**Chapter 11**

**I, Ms. Travis, hereby certify under penalty of perjury that on this 8th day of August, 2026, I served a true and correct copy of the foregoing *Notice of Motion, Motion for Reconsideration,* and *[Proposed] Order* via the Court's Electronic Case Filing (ECF/CM) system and/or by depositing the same in the United States Mail, first-class postage prepaid, addressed to the following parties of record:**
**Chapter 11 Trustee:**
**Robert Johns**
**Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311**

**Counsel for the Chapter 11 Trustee:**
**BRIAN R. BLICKENSTAFF [WVSB No. 9449] Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311**

**Counsel for the Debtor:**
**KIRK B. BURKLEY, ESQ. Bernstein-Burkley, P.C. 707 Grant Street Suite 2200 Gulf Tower Pittsburgh**

**The Patient/Administrative Ombudsman:**
**Deborah Fish-Patient Care Ombudsman**
**211 West Fort Street**
**Suite 705**
**Detroit, MI 48226**

**Office of the United States Trustee:**
**GARY O. KINDER, ESQ. Assistant U.S. Trustee 300 Virginia Street East, Room 2025 Charleston, WV 25307**

**Dated: August 13, 2026 - Respectfully Submitted- Sharon Marie Travis**



Sharon Travis