**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**IN RE:**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

AUG 17 2026

Time: 12:50 am/pm
BW

**Heart 2 Heart, Inc Case No 25-00087**

**Creditor Chapter 11**

**Pro se/ Creditor**

**8/13/2026**

**MOTION FOR RECONSIDERATION OF COURT ORDER PERMITTING FORMER EMPLOYEE ROBERT BOLES TO VOLUNTEER/WORK AND ACCESS RECORDS, MANAGE THE RECORD, COMPUTER SYSTEMS AND ANY WORK ON THE RECORD; REQUEST FOR EVIDENTIARY HEARING; AND REQUEST FOR EMERGENCY PROTECTIVE RESTRICTIONS**

Creditor, Ms. Travis (hereinafter "Movant"), appearing *pro se*, respectfully moves this Court pursuant to Federal Rule of Bankruptcy Procedure 9023 and Federal Rule of Civil Procedure 59(e) to reconsider its order (Doc. No. 370) denying Motions to Remove Robert Boles from his role within this Chapter 11 estate. In support thereof, Movant respectfully states as follows:

## I. PROCEDURAL STATUS, PROCEDURAL TIMELINE AND PRESERVATION OF THE RECORD

1. On **July 29, 2026**, this Court held a hearing regarding the Trustee's/Debtor's Alleged request to utilize a former employee to perform highly specialized IT functions and to audit financial receipts related to the Moving Party.

2. During the hearing, this Court issued its ruling permitting the individual to Proceed without holding an evidentiary hearing, stating on the record that the individual did not need a professional test, was operating as an "unpaid volunteer," and that the Debtor's "need" for his past experience outweighed- via balance test- the Moving Party's documented objections and concerns regarding conflicts of interest.

3. Although the *pro se* Moving Party did not use the formal legal Jardon or separate formal objection at that second, the moving party immediately, clearly, and substantially argued in opposition on the record following the courts statements.

4. Under Federal Rule of Civil Procedure 46 (incorporated by Fed. R. Bankr. P. 9026), formal exceptions to rulings are completely unnecessary. It is sufficient that a party makes known to the court the action it desires or its objection to the action and the grounds therefor.

5. Furthermore, under controlling Supreme Court precedent, the arguments of *pro se* litigants must be held to "less stringent standards than formal pleadings drafted by lawyers" (*Erickson v. Pardus*, 551 U.S. 89 (2007); *Haines v. Kerner*, 404 U.S. 519 (1972)). The substance of the Moving Party's verbal statements fully preserved all arguments for the record and this Court's reconsideration.

## II. ARGUMENT

### A. THRESHOLD ISSUE: MOVANT POSSESSES DIRECT STANDING AS A CREDITOR

**1. As preliminary threshold matters, Movant possesses Direct standing as a creditor under 11 U.S.C 1109(b). Under Bankruptcy**

**Code, creditors are explicitly recognized as "parties of interest" with broad statutory rights on any issue affecting the case.**

**2. As the United Supreme Court recently affirmed, the expansive nature of this right *in Truck Insurance Exchange v. Kaiser Gypsum Co., 602 U.S. 685 (2024)* holding that standing provisions must be interpretated broadly to protect stakeholders whose financial interest are directly or adversely affected by operational mismanagement, potential liabilities, or risk that diminish the pool of assets available for creditor recovery. As a recognized creditor whose recovery is directly threatened, Movant has a clear standing to seek relief.**

## B. INTRODUCTION AND GROUNDS FOR RECONSIDERATION

*1.* Reconsideration is warranted under pursuant to *Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59 9(e) and Fed. R. Bankr. P. 2024(incorporating Fed. R. Civ. P. 60(b))* to correct clear errors of law and fact, prevent manifest injustice, and address material misrepresentation and judicial oversights.

2. The courts prior ruling relied heavily on unsworn attorney proffers and paper declarations regarding the administrative status and oversight of

a third party, while explicitly denying the creditor fundamental procedure due process-specifically, the right to present live evidence, test testimony through examination and cross examination, and challenge unverified assertions. As established under bankruptcy law, when a matter cannot be resolved without addressing disputed materials facts, relying strictly on paper proffers or verbal proffers without a proper evidentiary framework violates procedural safeguards (*in re attached Homes, llc,481B.R.34 (9th Cir. BAP 2012)(Citing Fed. R. Bankr. P. 9014(d)).*

3. Furthermore, the record demonstrates that the court overlooked objective proof of prior false statements made to this tribunal by the same individual, fatally compromising the integrity of the administrative oversight process. and resting upon a job description that was proffered on his prior work at Serenity Hills, qualifications and job performance, in which was demonstratable inaccurate and failed to reflect his actual conduct.

4. Finally, the prior order failed to account for severe, unaddressed conflicts of interest that breaches the duty of loyalty to the estate and directly threatens the integrity of these proceedings.

**C. Denial of Due Process and Rule 9014(d): Mandatory Evidentiary Hearing on disputed Material Facts**

1. Under Federal Rule of Bankruptcy Procedure 9014(d), *"Testimony of witness with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding".* Advisory Committee Notes and establishes case law dictate that when a motion cannot be resolved without deciding contested, material issues of fact, the court must hold an

evidentiary hearing allowing for live testimony under oath and meaningful cross examination.

2. As affirmed in IN re Caviata Attached Homes LLC, 481 B.R. 34,44(9th Cir, BAP 2012), while contested matters may sometimes be disposed of without an evidentiary hearing when controlling facts are undisputed, an evidentiary hearing is mandatory when parties' initial papers demonstrate the existence of genuine and material factual issues, resolving core factual conflicts or passing on witness credibility without affording and evidentiary hearing violates procedural reversable error.

3. The Court committed clear legal error by resolving core material factual disputes -specifically, the official status, and compensation structure, and competence of the purported "volunteer"-relying exclusively on the summary of record and unsworn attorney proffers, while denying the Creditor the fundamental right to examine and cross examine. Summitting written declarations or attorneys verbally proffer what a witness would say does not constitute a true evidentiary hearing.

4. The denial of the movant's right to examine witnesses or cross-examine the former employee is a core procedural due process. A fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. By preventing the examination of witnesses. A fundamental requirement of due process under the Fifth Amendment is the opportunity to be heard at a meaningful time and in a meaningful manner

(*In re Murchison*, 349 U.S. 133 (1955)) and Armstrong v. Manzo (380 U.S. 545). Where material facts are in dispute, a bankruptcy court abuses its discretion and violates due process if it resolves those disputes without a meaningful evidentiary hearing that includes cross-examination of key witnesses (*In re Rosson*, 545 F.3d 764 (9th Cir. 2008)).

5. The Court committed a structural due process error by flatly denying the Moving Party, the right to examine or cross-examine the former employee regarding his personal conflicts of interest, past misconduct, and history of targeted personal harassment against the Moving Party. denied Sharon Travis the ability to test the credibility, bias, and qualifications of the individual tasked with reviewing her financial data. The court's procedure prevented a full evidentiary hearing. The Movant was denied the opportunity to expose the witness's explicit conflict of interest under oath.

**D. The Court Committed Clear Legal Error and Abused its Discretion Under Mosser v. Darrow and Woods v. City National Bank by Accepting the Trustee's Premise of Robert Boles "Institutional Knowledge" and Applying an Impermissible Balancing Test to Excuse Conflicts of Interest.**

1. . While the Bankruptcy trustee enjoys operational discretion under "Business judgement" standard, that rule is not a blank check. It does not insulate administrative actions-such as cloaking former employee Robert Boles in a dubious "volunteer" status- that lack an evidentiary foundation, are undertaken in bad faith taken without evidentiary foundation, in bad faith, or in

violation of fundamental fiduciary duties.

2. 'Institutional knowledge 'or operational; utility does not outweigh active conflicts of interest, history of harassment, making false claims under oath and deficient performance. Under binding court precedent, a court cannot legally balance away ethical breaches or excuse statutory violations for the sake of administrative convenience. As the Supreme court held in Mosser v. Darrow,341.267(1951) equity tolerates no adverse interest because such arrangements are inherently corrupting, regardless of perceived utility. Similarly, in Woods v. City National Bank & Trust Co.,312 U.S.262(1941), the Court established that necessity or specialized knowledge cannot be used in balancing test to excuse disloyalty and ethical failures.

3. The Resulting clear Error of law Requiring Reconsideration. By sanctioning these compromised dynamics, ignoring statutory and fiduciary limits, and resolving disputed material facts without evidentiary protections, the court committed a clear error, and resolving disputed material facts without the required evidentiary protections, the court committed a clear error of law. As the U.S. Court of appeals for the nineth Circuit held on Rosson,545 F.3d 764 (9th Cir. 2008), a bankruptcy court abuses its discretion and violates procedural due process when it resolves disputed material facts without a manifold evidentiary hearing and the opportunity for examination and cross examination. Consequently. The Court 's prior ruling constitutes a manifest injustice that must be reconsidered and corrected.

4. The Premise accepted by the court- that this conflicted

individual possessed necessary familiarity with the debtor's business is a manufactured pretext. In reality, this individual performed poorly and failed to execute his duties during his tenure. Actual operational success, execution, and deep institutional knowledge actual operational success and execution were managed by the Creditor in their capacity as former CEO and founder, who was forced to carry out the vast majority of his responsibilities because he could not fulfill his job requirements.

5. The Court committed clear error by adopting the Trustees 's reliance on an underperforming, hostile third party under the guise " Institutional Knowledge" – while ignoring the actual executor who built and managed the entity's operation.

**E. Violation of Federal Labor Standards, State Health Facility Regulations, and Healthcare Facility Regulations Mandated Cannot be waived. A federal bankruptcy judge has broad equitable powers under 11 U.S.C. § 105(a), but those powers cannot be used to override other explicit federal and state statutes.**

**1. Court Committed Clear Error of Law by Ruling that "Volunteer Status". This Exempts an Operational Worker from Federal and State Mandates**

**2. Total lack of Evidentiary support:** This sudden Characterization completely lacks evidentiary support in the record. Unsupported

claim of "volunteer "status -without a shred of corroborating evidence, such as HR to testify, Volunteer agreement as documentation as policy requires, no formal corporate resolution, verified job description, is legally insufficient to override the record or judicial review. No examination of any witness for the record.

**3. Violation of Federal Labor Standards and Disguised employment:**

Under the Fair Labor Standards ACT(FLSA), Department of Labor Guidelines, and state labor regulations, an individual cannot be classified as a "volunteer" if it violates labor laws. The legal standard requires that an individual serve out genuine volunteer intent for civic, charitable. religious reasons, humanitarian reasons centered on personal fulfillment, rather than commercial utility.

**4. Commercial reality of workforce roles:** The court stated in (Doc. No. 370 order paragraph 2 line 7 & 8)" Mr. Boles does not participate in Bankruptcy estate or Bankruptcy related functions". The evidence on the records shows him performing Court related work on behalf of the Trustee. (Doc. 315 exhibit D & pages 13-51). Then the Court says that Mr. Boles duties as a volunteer is ordinary operational needs and information technology functions. (Doc. No. 370 paragraph 2 line 9 & Paragraph 3 line 1-3) The reality here -a former employee returning to operational needs, court related fulfillments, perform technical and dig through financial receipts under the trustees' explicit directive-constitutes core operational
and administrative work performed to satisfy a legal dispute as. Both
the Department of Labor and bankruptcy courts view this exact arrangement as the disguised employment, which legally requires proper classification and

compensation.

**5. The Court's reliance on the label of "unpaid volunteer" to dismiss the Moving Party's objections is a clear error of law:** The U.S. Supreme Court has explicitly held that an individual cannot waive their status as an employee under the Fair Labor Standards Act (FLSA), even if they explicitly desire to work without compensation (*Tony and Susan Alamo Foundation v. Secretary of Labor*, 471 U.S. 290 (1985)). Even if an individual *wants* to work for free, a non-profit cannot accept operational legal labor under a trustee's mandate to bypass wage laws. The court's order essentially sanctions an ongoing labor law violation. (See exhibit A page 2)

**6. Inability to Override Healthcare Licensing and Bank round Check Laws:**

A bankruptcy court does not possess the police power to exempt an individual from West Virginia healthcare licensing laws and mandatory public safety statutes. If this individual has network or computer access at a licensed behavioral health facility without an active, fingerprint-verified background check, the facility remains in active violation of state law, regardless of the bankruptcy court's attempting to wave these requirements.

**7.** Exceeding Equitable Authority Under 105 (a) (Law v. Siegal):

Because this individual is performing highly specialized IT work, operational Work and handling financial evidence to satisfy a contested court order, the work is purely operational and regulatory. It possesses zero civic, charitable, or humanitarian purpose. By sanctioning uncompensated labor for core business litigation operations, the Court exceeds its equitable authority under 11 U.S.C. § 105(a). As the U.S. Supreme Court squarely held in *Law v. Siegel*, 571 U.S. 415 (2014), a bankruptcy court's equitable powers cannot be invoked to contravene statutory commands or authorize ongoing violations of federal and state laws.

**F. The Court Abused its Discretion by Disregarding the Extensive, Regarding Unfitness, Perjury, Misconduct, and Spoliation Risk**

**1. A bankruptcy court commits an abuse of discretion when it fails to consider highly relevant factors that warrant substantial weight, or when it ignores established record of unfitness, bad faith, and severe institutional risk in favor of administrative convenience.**

**2. Disregard of Record Evidence Regarding Claw Back Liability:**

The Court overlooked or disregarded a comprehensive record establishing Mr. Boles an individual's profound unfitness. (Doc. No. 315 pages 13-51, Exhibit

K pg. 1-6. And Exhibit L pg. 1-6).

The record demonstrates that during this individual's tenure as a compliance officer, the facility over $519,750.00 in regulatory claw back while he was the compliance officer, liability directly resulting from his operational failures.

**3. Documented History of Spoliation, Document Destruction, and Missing Records:** Furthermore, upon his sudden departure from his prior role, critical facility investigations and reports mysteriously went missing, and official corporate documents were discovered shredded in the trash receptacles. Granting unvetted network access, control over estate assets, and administrative review of Movant's receipts to an individual with a documented history of document destruction creates an extreme, unacceptable risk of evidentiary spoliation and tampering. To elevate the Debtor's minor administrative convenience or "need for experience" over a documented, severe risk of spoliation (evidence destruction or tampering) constitutes an arbitrary and capricious application of judicial discretion.

## G. Manifest Injustice, Abuse of Discretion, and Evidentiary Violations Under FRE 901:

**1. The court committed Reversable error and abuse of**

**discretion by permitting a conflicted, unbonded, and uncompensated third party to establish and manage the chain of custody for sensitive records. On appeal, a judicial decision that lacks any support in evidentiary record or rest on clearly erroneous factual findings constitutes and abuse of discretion as a matter of law.**

2. **Violation of Federal Rule of Evidence 901 (Chain of Custody):** Under FRE 901. Evidence and financial records must be properly authenticated and their integrity rigorously preserved. Handling financial receipts and data over to an individual with a known conflict of interest fatally compromises the chain of custody and invites data alteration. Under Federal Rules of Evidence (FRE) 901 and 1002, evidence must be properly authenticated, and its integrity preserved. Handing receipts over to an individual with a known personal or financial conflict of interest compromises the data's chain of custody. Court's order permits potential spoliation (alteration or destruction) of evidence. Because the worker is unpaid and unbonded, there is no professional liability insurance or regulatory bond to protect you if your proprietary business information or receipts are mishandled, leaked, or altered. [

3. **Abdication of Duty to prevent Spoliation:** Courts possess an inherent duty to protect the integrity of judicial proceedings from spoliation and

evidence tampering. By ignoring documented testimony from the supervisor of Robert Boles of past destruction (shredded corporate files and missing reports) and appointing a hostile actor, the court abdicated this duty

**4. Total Lack of Financial Accountability and Insurance Protection:** Under the facility's actual coverage through West Virginia Board of Risk and Insurance Management (BRIM), uncompensated, unbonded and unauthorized individuals possess zero liability protection. The facility's BRIM policy strictly excludes independent, unvetted actors, as well as any acts involving intentional misconduct, unauthorized data leaks, or actions outside official job descriptions. Furthermore, this arrangement creates an intolerable and prejudicial double standard: the Trustee previously required movant to Utilize a fully bonded company and bonded workers when handling moving property, yet the Court's order paradoxically permits an unbonded, unauthorized, and conflicted individual unfettered access to sensitive corporate and financial documents. Because this worker is entirely unpaid, unvetted and unbonded, there is zero professional liability insurance, corporate accountability, regulatory bond, or BRIM coverage to protect the business, the estate. Or its creditor if propriety financial information is mishandled, leaked, or altered. Sanctioning these arrangements creates an intolerable risk of evidentiary destruction, results in manifest injustice, and mandates immediate appellate correction or reconsideration.

financial records. Under Federal Rules of Evidence (FRE) 901 and 1002, evidence must be properly authenticated, and its integrity preserved. Handing receipts over to an individual with a known personal or financial conflict of interest compromises the data's chain of custody.

5. Court's order permits potential spoliation (alteration or destruction) of evidence: The United States Supreme Court case Squarely established that lack of formal compensation does not exempt an individual from strict conflict -of-interest and fidelity standards. *As the Supreme Court held in United States v. Mississippi Valley Generating Co., 364 U.S. 520, 549-550 (1961),* equity and public policy forbid arrangements that place conflicted actors into positions "fraught with temptation,' regardless of whether they serve on a volunteer, uncompensated, or part-time basis. Empowering an unbonded, uncompensated, or part-time basis. Empowering an unbonded, uncompensated, actor with a documented history of retaliatory data leaks to handle estate records directly violates these absolute standards of conduct.

**6. Breach of Fiduciary Dutu and Impermissible Conflicted Roles Despite Section 327:** While the Court and Trustee rely on the technical premise that 11 U.S.C 327 applies strictly to "professionals," that technically does not grant a blank check to bypass fundamental fiduciary obligations, risk management standards, and equity-chief among them being the duty of

undivided loyalty to the estate, which exists entirely for the benefit of the creditors and stakeholders. A trustee cannot fulfill their fiduciary duty of loyalty while simultaneously introducing a hostile, conflicted actor with divided loyalties into positions of control. As a party with a direct legal stake in these proceedings, movant is entitled to an administrative governed by undivided loyalty rather than one exposed to inherent corruption of conflicted agents. As established by the United States Supreme Court in Mosser v. Darrow, 341 U.S.267 (1951), equity strictly forbids a fiduciary from allowing anyone a conflicting interest to control or access estate records, holding that equity bars these arrangements "not because such interest is always corrupting." Equity and Public policy strictly prohibit arrangements that place unbonded, conflicted actors with sensitive estate records where there is unacceptable high risk of file compromise, alteration, or destruction, to the detriment of the estate's creditor and stakeholders.

## III. CONCLUSION AND RELIEF SOUGHT

WHEREFORE, the Moving Party, **Sharon "Marie" Travis**, respectfully requests that this Court:

1. **GRANT** this Motion for Reconsideration;

2. **VACATE** its prior order permitting the unvetted, uncompensated former Employee Robert Boles to access facility, the facility networks, IT systems, or the

Moving Party's financial records;

3. **ENTER** a Protective Order barring this individual from participating in any data collection or evidentiary auditing in this case; and to not permitted to be a volunteer or an employee at Serenity Hills Life Center.

4. **SCHEDULE** a full evidentiary hearing affording the Moving Party the constitutional right to examine witnesses and present its documentary evidence of perjury and conflict of interest on the record.

17

Dated: August [illegible], 2026

Respectfully submitted,

**[Sharon 'Marie" Travis, Creditor, Pro Se**

304-281-0474 Sharon Travis 8/17/2026

"Marie"