**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

| | |
|---|---|
| **HEART 2 HEART VOLUNTEERS INC., d/b/a SERENITY HILLS LIFE CENTER,** | **Bankruptcy Case No. 25-00087** Chapter 11 |

Debtor.

**COMBINED OBJECTION AND MEMORANDUM IN OPPOSITION TO MOTION TO REMEDY MANIFEST INJUSTICE AND MISCARRIAGE OF INJUSTICE BY RESTORING FULL CORPORATE AUTHORITY AND MANAGEMENT TO THE DEBTORS BOARD OF DIRECTORS INCLUDING THE FORMER BOARD PRESIDENT**

Robert L. Johns, Chapter 11 Trustee for the bankruptcy estate of Heart 2 Heart Volunteers, Inc. (the "Trustee"), objects to the Sharon Marie Travis' ("Travis") *Motion to Remedy Manifest Injustice and Miscarriage of Injustice by Restoring Full Corporate Authority and Management to the Debtors Board of Directors Including the Former Board President* (the "Motion") filed by Travis former Chief Executive Officer, on September 1st, 2026. This Court should deny the relief requested by Travis. The Trustee was appointed to this Court after it became apparent that former Board of the Directors and Chief Executive Office ("Prior Management") could not effectively operate Heart 2 Heart Volunteers, Inc. (the "Debtor"). Since the appointment of the Trustee, the Debtor's operations have stabilized and patient care has improved as evidenced by the periodic reports filed by the Patient Care Ombudsman. A return of Prior Management would move the Debtor backwards and in the opposite direction of a successful reorganization. In support thereof, the Trustee respectfully represents the following facts and argument.

## FACTS

1. The debtor, Heart 2 Heart Volunteers, Inc. (the "Debtor"), filed a voluntary petition for Chapter 11 relief on February 27, 2025.

2. The Debtor conducts business as Serenity Hills Life Center and is an addiction recovery center specializing in treatment of at-risk women suffering from substance abuse disorder.

3. On April 2, 2025, the Court entered an order directing the U.S. Trustee to appoint a patient care ombudsman (the "PCO") pursuant to 11 U.S. C. §333.

4. On December 17, 2025, the Debtor filed an application to employ a Corporate Restructuring Officer ("CRO") on an expedited basis.

5. On December 29th, 2025, the PCO reported that Pursuant to Section 333(b)(3), patient care has diminished…" Pg. 3, *Patient Care Ombudsman Fifth Report* (December 29th, 2025). [Docket No. 174].

6. After it was clear that a CRO was not working, the United States Trustee's Office ("USTO") filed a *Motion to Appoint Trustee Chapter 11 Trustee*. [Docket No. 210].

7. On February 19th, 2026, this Court entered the *Order Granting Motion to Appoint Chapter 11 Trustee*. [Docket No. 219].

8. In taking over the day-to-day operations, the Trustee deemed it necessary in his business judgment to make necessary staff changes, including replacing the existing clinical director with a more supervisory background in order to stabilize the treatment of patients.

9. On March 20th, 2026, the Trustee, after being made aware of certain issues with Travis' role as Chief Executive Office ("CEO") placed Travis on administrative leave.

10. On March 27th, 2026, the PCO reported that "…the quality of patient care provided to residents of the debtor has improved since the appointment of the Trustee and is not being materially compromised." Pg. 5, *Patient Care Ombudsman Seventh Report* (March 27th, 2026). [Docket No. 237].

11. On May 1st, 2026, after a special committee reviewed the issues with Travis' role as CEO and made recommendations to the Trustee; the Trustee removed her from her role as CEO.

12. On May 26th, 2026, the PCO reported that "[t]he Trustee's leadership has improved stability, strengthened impartiality, and boosted staff morale. These changes have contributed to better staff communication, resident outcomes, and a more positive facility environment." Pg. 4, *Patient Care Ombudsman Eighth Report* (May 26th, 2026). [Docket No. 237].

13. On July 24th, 2026, the PCO reported that "[t]he Trustee's leadership, staffing decisions, and sound judgment continue to benefit the facility. With each visit, the facility's stability and overall improvement are increasingly evident. The environment for residents and staff has also become significantly more positive." Pg, 5, *Patient Care Ombudsman Ninth Report* (July 24th, 2026). [Docket No. 357].

14. On September 25th, 2026, the PCO reported that "[t]he Trustee's leadership, staffing decisions, and sound judgment continue to strengthen the facility. Each visit shows greater stability and progress, with significant improvement since my previous report." Pg, 5, *Patient Care Ombudsman Tenth Report* (September 25th, 2026). [Docket No. 415].

15. The PCO also noted that the "…new clinical staff, the new members of the team have acclimated well, and the Debtors staff and operations are much more stable

than when I was first appointed. *Id.*

16. To date, the Trustee has not received a resignation from the Debtor's Board of Directors or material communication from them.

**ARGUMENT**

As this Court is aware, the United States Bankruptcy Code provide for an appointment of a Chapter 11 Trustee

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104 (2025). A trustee is appointed "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." 11 USCS § 1104, *In re Drew Transp. Servs*., 2016 Bankr. LEXIS 2514 (E.D.N.C. 2016). A trustee may also be appointed "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate" *Id*. However, once a chapter 11 trustee has been appointed, a former principal seeking reinstatement must obtain a court order. 11 U.S.C. § 1105 (2025). The bankruptcy court retains broad discretion in such matters. *Id*.

In the case before this Court, Travis has requested the reinstatement of prior management, however; the request would move the Debtor backward and in the opposite

direction of a successful reorganization. As this Court is aware, the Trustee was appointed at the request of the USTO. In the USTO's *Motion to Appoint Trustee Chapter 11 Trustee,* the USTO stated various concerns, including: tension between the CRO and Travis, the Debtor's operational losses, and concerns over patient care raised by the PCO. On February 18th, 2026, this Court conducted a hearing, in which testimony was elicited from William Frederick, the CRO that was appointed to help with the restructuring of the Debtor. When asked about the state of the Debtor, the CRO stated

> that there is a fractured work
> environment. Um, so I don't think it's operating as
> efficiently as possible. Um, there is a lot of, I
> would say interpersonal conflicts throughout the
> organization, um, which is producing a work
> environment that just is inefficient.

Hrg. Tr. 15:15-20 (February 18th, 2026). Furthermore, when asked about the Debtor's board of directors, he stated that

> I do not know the personal relationships which the
> CEO has with the board. I do-- um, I do feel that
> there is-- there-- the board does lack independence,
> um, just from my dealings.

*Id.* 21:11-14. In the CRO's opinion, these issues inhibited the Debtors' ability to reorganize. This Court also reviewed the various reports of the POC and her observations that patient care was declining and that "the Debtor has not implemented significant enhancements to the quality of resident care." Pg. 3, *Patient Care Ombudsman Fifth Report*

(December 29th, 2025). [Docket No. 174]. Along with other evidence, included evidence brought by Travis; this Court concluded that it was in the best interest of the Debtor to have a trustee appointed. In her Motion, Travis makes various arguments as to why prior management should not have been removed, but she cannot address the fundamental concerns made by the USTO, the CRO, and the POC. Nor has Travis provided this Court with any evidence that the issues that led this Court to appoint a Chapter 11 Trustee would be addressed.

In contrast, the POC's reports since the appointment of the Trustee have indicated that the Debtor's operations have improved and continue to improve with each report. As the PCO stated in her latest report, "[t]he Trustee's leadership, staffing decisions, and sound judgment continue to strengthen the facility. Each visit shows greater stability and progress, with significant improvement since my previous report." Pg, 5, *Patient Care Ombudsman Tenth Report* (September 25th, 2026). [Docket No. 415]. The best interests of the Debtor and of the Debtor's creditors is for the Trustee to continue to operate the Debtor. For the reasons stated above, this Court should deny Travis' Motion.

## <u>CONCLUSION</u>

This Court should deny the relief requested by Travis. Since the appoint the Trustee, the Debtor's operations have stabilized and patient care has improved as evidenced by the reports of the PCO. A return of Prior Management would move the Debtor backward and in the opposite direction of a successful reorganization. Travis' Motion does not put forth any legitimate reason as to why Prior Management should be permitted to return to the administer the Debtor's business operations, or why the Trustee should not continue to operate the Debtor's facility. In contrast, the reports of the POC clearly indicate

the Trustee's management has manifested in improved patient care, stability of staff, and progress to moving the Debtor forward.

**WHEREFORE**, the Trustee respectfully requests this Court to deny Travis's *Motion to Remedy Manifest Injustice and Miscarriage of Injustice by Restoring Full Corporate Authority and Management to the Debtors Board of Directors Including the Former Board President* and grant the Trustee such other relief as the Court deems reasonable and necessary.

**ROBERT L. JOHNS, TRUSTEE**
by Counsel:

____/s/ Brian R. Blickenstaff________________

BRIAN R. BLICKENSTAFF [WVSB No. 9449]
**Johns & Associates, PLLC**
101 Brook Hill Drive
Charleston, WV 25311
Phone No: (304) 720-2300
Fax No: (304) 720-2311
E-mail bblickentaff@johnswvlaw.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

In re:

**HEART 2 HEART VOLUNTEERS INC.,**
**d/b/a SERENITY HILLS LIFE CENTER,**

**Bankruptcy Case No. 25-00087**
Chapter 11

Debtor.

**CERTIFICATE OF SERVICE**

I, Brian R. Blickenstaff, hereby certify that a copy of the foregoing "***COMBINED OBJECTION AND MEMORANDUM IN OPPOSITION TO MOTION TO REMEDY MANIFEST INJUSTICE AND MISCARRIAGE OF INJUSTICE BY RESTORING FULL CORPORATE AUTHORITY AND MANAGEMENT TO THE DEBTORS BOARD OF DIRECTORS INCLUDING THE FORMER BOARD PRESIDENT***" and **CERTIFICATE OF SERVICE** was served by First Class mail, postage prepaid, by electronic mail, or by utilizing the Court's CM/ECF Pacer System where indicated, on this 25th day of September, 2026, on the following:

**GARY O. KINDER, ESQ.**
Assistant U.S. Trustee
300 Virginia Street East, Room 2025
Charleston, WV 25307
(*Via Electronic Filing*)

**KIRK B. BURKLEY, ESQ.**
Bernstein-Burkley, P.C.
707 Grant Street
Suite 2200 Gulf Tower
Pittsburgh, PA 15219
(*Via Electronic Filing*)

**SHARON MARIE TRAVIS**
930 Main Street, Unit 303
Wheeling, WV 26003
(*Via Electronic Mail*)

Given this day by my hand,

____/s/ Brian R. Blickenstaff__