CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV

OCT 01 2026

Time: 4:07 am/pm

**Heart 2 Heart Volunteers, Inc., Case No. 25-00087**

**Creditor/Chapter 11**

**9/25/2026**

**DEBTOR'S FORMER CEO SHARON MARIE TRAVIS'S REPLY TO THE CHAPTER 11 TRUSTEE'S COMBINED OBJECTION AND MEMORANDUM IN OPPOSITION TO MOTION TO REMOVE CHAPTER 11 TRUSTEE FOR CAUSE** Creditor

Sharon Marie Travis ("Travis"), an interested party and established creditor of the above-captioned bankruptcy estate, respectfully submits this Reply to the Chapter 11 Trustee's Combined Objection and Memorandum in Opposition [Doc. No. 412].

**PRELIMINARY STATEMENT**

The Trustee's Opposition [Doc. No. 412] attempts to minimize serious management failures, active regulatory non-compliance, and severe fiduciary breaches as minor administrative delays or protected exercises of "business judgment." While the Trustee correctly notes that removal requires a showing of "cause" under 11 U.S.C. § 324(a), he incorrectly argues that a moving party must prove liquidated financial damages to establish cause.

Crucially, **Robert L. Johns has served as a bankruptcy trustee for many years.** Given his extensive tenure and professional background, there is absolutely no excuse for these systemic infractions. The Trustee **knew or should have known** the strict statutory mandates governing commercial facility management,

environmental compliance, and estate banking regulations. His defense of "business judgment" cannot shield a veteran fiduciary who chose to ignore fundamental rules of law. Most egregiously, for 76 days, the Trustee completely failed to retitle or assume structural control over the debtor-in-possession accounts; **Travis remained the legal owner on the entire bank account structure while the Trustee himself was completely absent from the account record.**

A trustee's pattern of violating state environmental mandates, failing to maintain transparent financial records, leaving a terminated executive exposed to corporate account liabilities, suppressing serious patient abuse allegations, and presiding over a collapsing facility census collectively constitutes "cause" under a totality of the circumstances. Travis has put forward concrete, documented evidence satisfying her evidentiary burden. The Trustee's defenses are ungrounded in fact and contradicted by the files of this case.

## ARGUMENT

### I. The Trustee Intentionally Delayed Financial Disclosures and Presided Over a Catastrophic $18,000 Loss for August 2026.

The Trustee argues that operational delays in filing Monthly Operating Reports ("MORs") are common business challenges. However, as an experienced practitioner who knows his statutory obligations, the Trustee's 2026 reporting timeline reveals an intentional pattern of hiding financial stagnation:

- **The June 2026 MOR** was held past its **July 21, 2026** statutory deadline and deliberately withheld for **31 days**.

- On **August 21, 2026**, the Trustee bundled this overdue June report ($10,519 in revenue) concurrently with the July 2026 MOR. This concurrent filing presented an artificially inflated July top-line revenue figure of **Warm $37,596**, which was heavily padded by a **$33,750 quarterly legacy grant** that Travis had secured years prior to the bankruptcy (*See Exhibits A & B*). Subtracting this pre-existing grant reveals that the facility's actual core operational income for July plummeted to a mere **$3,846**.
- **The New August 2026 Financial Collapse:** Underscoring that the legacy grant merely masked deep structural failures, the most recent financial disclosures filed after Travis submitted her initial motion show an unmitigated operational collapse. **For the month of August 2026, the business operated at a direct net financial loss of $18,000.**

A Chapter 11 Trustee cannot rely on legacy revenue streams to substitute for self-sustaining operational solvency. By violating 11 U.S.C. § 1106(a)(1) and Federal Rule of Bankruptcy Procedure 2015(a), a veteran Trustee with zero excuses kept this Court, the U.S. Trustee, and creditors in total financial darkness to shield his own underperformance, leading directly to an **$18,000 net loss for August 2026**.

## II. The Factual Record Contains No Evidence Supporting the Trustee's Environmental Defenses, Whereas Travis Has Provided Conclusive Verification of Regulatory Default.

The Trustee asserts that missing wastewater filings were simply a third-party vendor labeling error that has since been corrected. This claim is completely unsupported by the factual record. **The Trustee has presented absolutely no documentation or concrete evidence to prove that a third-party vendor committed a "labeling error." While there is a total absence of evidence supporting the Trustee's environmental defense claims, Travis has submitted definitive proof backing her claims.**

Official records from the West Virginia Department of Environmental Protection (WVDEP) prove that the commercial wastewater treatment plant—critical to public health and environmental safety—went **completely untested for approximately eight months** after Travis lost operational control in December 2025.Direct verification from Christopher Dudek, Water and Waste Environmental Inspector Supervisor for the WVDEP, confirms this complete breakdown in required quarterly sampling (*See Exhibits C, D, and E*). Under the controlling U.S. Supreme Court precedent in ***Midlantic National Bank v. New Jersey Department of Environmental Protection***, a bankruptcy trustee is strictly forbidden from ignoring state environmental statutes designed to protect public safety.

The Trustee knows, or by virtue of his many years of practice should have known, that under 11 U.S.C. § 362(b)(4), state environmental enforcement actions are completely exempt from the automatic stay. His unsubstantiated failure to submit mandatory testing exposes the estate to daily civil and criminal penalties ranging from **$2,500 to $25,000 per day** under the West Virginia Water Pollution Control Act (W. Va. Code § 22-11-24), creating an unexcused and catastrophic administrative liability for the estate.

**III. The Trustee Completely Abdicated Account Management Under 11 U.S.C. § 345, Leaving Travis on the Account Infrastructure While the Trustee**

**Remained Off the Account.**

The Trustee contends that leaving Travis on corporate banking instruments was an acceptable administrative transition phase. Verified bank records, statements, and correspondence completely refute this minor characterization. The Trustee didn't merely delay changing a debit card; **the Trustee left the corporate bank accounts entirely in Travis's legal name, while the Trustee himself failed to put his own name on the account infrastructure:**

- On **March 5, 2026**, the Trustee took office but failed to retitle or legally secure the bank accounts as required by U.S. Trustee guidelines.

- On **April 13, 2026**, Travis explicitly warned the accountant via text that her name was still attached to the account itself. The accountant responded that the card was "still good for the peers to use."

- Travis was terminated on **May 1, 2026**. Yet, on **May 8, 2026**, United Bank returned an application from the accountant, revealing to Travis that the accounts remained entirely in her name, and the Trustee had failed to legally insert himself onto the accounts (*See Exhibit F*).

- Travis contacted United Bank directly on **May 17, 2026**, to force the account card to be shut down. Bank documentation delivered on **May 18, 2026**, confirmed that the actual accounts were still legally tied to Travis's personal credit and that unauthorized corporate transactions had been executed using her name as late as **May 11, 2026** (*See Exhibits G through S*).

- **Ongoing Financial Misappropriation and Computer Hijacking:** Compounding this severe breach of financial control, the facility administration under the Trustee's watch has actively attempted to **misappropriate Travis's personal account to order operational supplies**. When Travis was abruptly forced off the facility grounds, she was locked out of the facility's computer network before she could log out of her personal digital profiles. Serenity Hills personnel have since actively

attempted to execute commercial procurement orders utilizing **Travis's personal Amazon account**. These unauthorized transaction attempts were blocked solely because Travis independently canceled her attached personal bank cards.

As a long-serving trustee who understands standard operating procedures for debtor-in-possession accounts, leaving a debtor's funds completely outside his own legal signature authority while exposing a terminated employee to total corporate account liability is an absolute forfeiture of fiduciary duty. How would she know what she is liable for because she has no access to those accounts at this time.

## III. Exoneration by West Virginia Bureau for Medical Services (BMS) Dismantles Pretextual Misconduct Claims and False Ombudsman Testimony.

The Trustee's defense relies heavily on a false narrative of operational and regulatory non-compliance by prior management, echoed in inaccurate health care ombudsman testimony. This narrative is entirely dismantled by a **formal letter from Keith King, a Licensed Psychologist (#939) who served as the Program Manager for all substance use disorder treatment programs under the West Virginia Bureau for Medical Services (BMS) from 2014 to May 2026** (*See Exhibit E1*).

Mr. King explicitly states that the negative information propagated about Travis was fundamentally incorrect. Crucially, the BMS official confirms that **Travis possessed an extensive understanding of substance use disorder treatment**

**systems, actively maintained close compliance communications with the state, and was fully permitted and authorized to handle patient referrals unvetted.** This formal state verification completely vindicates Travis's prior administration, exposing the ongoing criticisms by the Trustee and the ombudsman's testimony as manufactured, ungrounded pretext designed to justify her unlawful removal.

## IV. Disparate, Discriminatory Standards: The Trustee Enforced Procedural Violations to Oust Travis While Intentionally Hiring Staff with Validated Abuse Histories.

The discriminatory nature of the Trustee's administration is explicitly proven by the disparate standards applied to facility personnel. The Trustee terminated Travis under a manufactured pretext of "unprofessional conduct." Yet, in doing so, **the Trustee flagrantly violated the Debtor's own internal investigation policies and corporate bylaws, completely denying Travis the ability to properly defend herself against these phantom allegations.**

While the Trustee weaponized unverified, procedural complaints to remove a compliant, veteran executive, he simultaneously **hired and retained staff members with verified, documented histories of patient abuse and neglect.** This shocking disparity confirms Travis's assertions of bad-faith retaliation, discrimination and systemic operational mismanagement:

1. **Robert Boles:** Reinstated despite a documented history of gross insubordination, destroying files upon his departure, and providing false testimony under oath regarding board minutes (which is documented on this Court's docket). Furthermore, Boles's prior administrative incompetence as a compliance officer resulted in a catastrophic **$500,000 insurance clawback**

against the Debtor. The Trustee placed Travis's proof-of-claim records in the hands of this known adversary, creating an immediate risk of spoliation of evidence. Boles also violated corporate governance by leaking confidential internal board member emails to Weslyn Davis.

2. **Sarah Dean:** Reinstated despite facing an active professional ethics complaint for serving as Travis's personal counselor before working at the facility. Dean defrauded this Court by falsifying her resume to claim she was a licensed psychologist performing testing and falsely claiming she worked at Serenity Hills in 2022 when the facility was entirely closed. Dean further weaponized confidential 2023 executive budget files before the ethics board, proving that the Trustee's administration permitted the illicit leaking of corporate data (*See Exhibits T, U, and V*). Dean was also Clinical Director during the audit period that triggered the $500,000 insurance claw back.

3. **Erica Biggers:** Reinstated and elevated to daytime patient supervisor despite being fired by prior management for chronic absenteeism and severe mistreatment of patients, which was verified by supervisor testimony during workforce hearings.

4. **Amy Mort, LPN:** Reinstated by the Trustee despite a formal, concluded investigation on **August 14, 2024**, which found her **guilty of violating the rights of three distinct residents** (*See Exhibit F1*). Mort severely compromised the facility's stability and resident mental health by falsely telling vulnerable patients that the facility septic system was leaking into the drinking water, engineering a toxic environment. Mort was further caught violating basic patient boundaries by disclosing confidential resident records to other patients.

5. **Weslyn Davis, MHT:** Reinstated and who was fomally in charge of intake and resident belongings despite an extensive record of abuse grievances (*See Exhibit F1*). On November 24, 2024, a formal grievance was filed by a resident whom Davis targeted and verbally abused with profanity, which was verified in writing by the facility therapist who witnessed the behavior. On January 24, 2025, separate residents filed grievances detailing that Davis openly bragged she "did not care about getting a fucking grievance because it would not stick," while Compliance Officer Robert Boles colluded with her, stating, "You're probably right," and laughing. While operating under the Trustee's administration, Davis inappropriately took home the master

intake room keys, coinciding with resident reports of missing personal belongings.

## V. Active Suppression of Patient Abuse and Neglect Causes Severe Public and Estate Harm.

The Trustee has willfully ignored, suppressed, and failed to investigate formal reports of patient abuse brought forward by Travis, choosing instead to shield abusive staff. This severe administrative default has resulted in extreme liability exposure and ongoing physical harm to the facility's residents:

- **Suppression of Patient Grievances:** Deana Simmins, the mother of Resident 1, is prepared to testify that her daughter's formal complaints of mistreatment were completely ignored by the ombudsman and suppressed under the Trustee's current administration.

- **Severe Medical Neglect:** Resident 2, Suzanna Hoffman, suffered **permanent physical damage** because the current administration actively ignored her critical medical condition (*See Exhibit D1*). Ms. Hoffman has authorized the disclosure of her identity to confirm that she felt entirely safe under Travis's leadership, but suffered catastrophic neglect once the Trustee relinquished facility oversight to Sheila Weese.

The Trustee initiated adverse actions against Travis **just two days** after she formally notified him that she intended to go directly to the bankruptcy court to report this unaddressed patient abuse and corporate mismanagement.

## VI. Total Operational and Referral Network Collapse and Unauthorized Fundraising.

Far from "righting the ship," the Trustee's day-to-day oversight has driven the estate into severe financial distress, culminating in the **$18,000 net operational loss for August 2026**. Because of the discriminatory and hostile actions taken by the new administration, **vital third-party referral networks have completely**

**severed ties with Serenity Hills:**

- **Kenneth Cornell (Cornell Investigations LLC),** who works directly with criminal defense attorneys to place individuals into treatment, has formally stated his network will no longer send patients to the center because they lack confidence in the current administration (*See Exhibit A1*).
- **Mark Childers, Regional Coordinator over peers in regional jails,** has similarly withdrawn his network's placement support due to the visible decline in operational standards under the Trustee (*See Exhibit B1*).
- **Gloria Bush, New Life Ministry Director,** has ceased coordinating patient care with the facility due to the discriminatory operational practices introduced by current clinical staff (*See Exhibit C1*).

Furthermore, the Trustee's administration has engaged in unauthorized, extra-judicial financial activities by **raising money publicly without a valid state charitable registration** (*See Exhibits G1 and G2*). This illegal solicitation compounds the estate's exposure to severe statutory fines and consumer fraud investigations by the West Virginia Attorney General, while demonstrating that the Trustee has run out of funds to order basic facility supplies.

## VII. The Trustee Committed Physical Waste of Estate Assets and Engaged in Retaliatory Litigation.

The Trustee has completely abandoned basic grounds maintenance across the facility's **127 acres**, leaving 80 historically maintained acres entirely choked with overgrowth and weeds. This neglect constitutes actionable physical waste that actively destroys the value of the estate's primary real property asset. The condition was so severe that a local farmer had to be brought in to bail the weeds into hay, which Travis witnessed firsthand.

Furthermore, the Trustee, in coordination with the U.S. Trustee, mobilized Travis's separate Chapter 7 trustee to mount pretextual attacks against her creditor standing. The Trustee points to a post-filing "raise" to imply financial misconduct; in reality, Travis injected her own personal vehicle refinancing proceeds directly into the business to fund employee payroll. When the accountant paid the corresponding vehicle payments out of corporate funds post-filing, Travis adjusted her compensation upward to absorb the payments personally and remain compliant. Travis consistently sacrificed her own compensation for the sake of the business, with the docket showing that in multiple operational years she took home **less income than the facility's cleaning staff.**

## VIII. The Trustee Engaged in Unlawful Property Conversion and Strategic Access Hindrance.

The Trustee engaged in the wrongful conversion and unlawful seizure of Travis's distinct personal property—including three industrial freezers, a refrigerator, a boardroom table, and stored personal items located in the basement. The Trustee barred retrieval and attempted to charge rent or demand ransom for Travis's own property. The bad-faith nature of this tactic is conclusively proven by the fact that the Trustee eventually authorized payment to purchase these very items after the Court accepted Travis's family court property distribution agreement.

Finally, the Trustee obstructed Travis's legal rights by denying her access to the corporate records required to compile her timely proof of claim. The box delivered

to Travis contained only partial receipts and completely omitted the financial records from **2022**—the exact year Travis personally injected substantial personal funds to pay for utility bills, grounds maintenance, employee payroll, and the specific legal defense that prevented OHFLAC from permanently closing the facility.

## IX. The Trustee Enforced Discriminatory Discharge and Disparate Treatment Based on Age.

The Trustee subjected Travis—a **66-year-old female executive**—to intentional disparate treatment and discriminatory discharge (*See Exhibit X*). The Trustee enforced strict, unwritten, and manufactured procedural rules against Travis while completely excusing severe regulatory and financial infractions committed by significantly younger staff members.

Specifically, **the Trustee terminated Travis under the bad-faith pretext of "Unprofessional conduct," leaving her completely isolated and unable to properly defend her record because the Debtor's established internal investigation policies were entirely bypassed.** Conversely, the Trustee intentionally **hired and retained younger staff members who possessed documented, formal records of extreme patient abuse and safety violations.** Serenity Hills' historical operating frameworks have never permitted building-wide gag orders or disparate treatment during administrative inquiries. The record reveals that Travis was explicitly targeted and denied due process based entirely on

her age and underlying retaliatory animus.

## CONCLUSION AND PRAYER FOR RELIEF

The cumulative record reveals an administration that has abandoned its statutory reporting mandates, compromised public safety through environmental neglect, operated at an absolute **Extremely severe $18,000 net loss for August 2026,** abdicated legal signature authority over bank funds, suppressed reports of patient abuse, cut off primary referral networks, and caused severe economic devaluation of the estate.

Firing the founder that knew all the compliance issues that needed to stay compliant was not in the best interest of the organization.

WHEREFORE, Sharon Marie Travis respectfully requests that this Honorable Court reject the Trustee's Objection, grant her Motion to Remove, and enter an order:

1. Scheduling an expedited evidentiary hearing on this matter pursuant to Federal Rule of Bankruptcy Procedure 9014;
2. Finding "cause" under 11 U.S.C. § 324(a) and immediately removing Robert L. Johns as Chapter 11 Trustee;
3. Restoring the Board of Directors, including the President, to corporate governance;
4. Ordering the outgoing Trustee to provide an immediate, complete accounting of all estate assets and financial transactions managed during his tenure; and
5. Granting such other and further relief as this Court deems just and proper.

Dated: September 30, 2026
Respectfully submitted,

Sharon Marie Travis, *Pro Se*
930 Main Street Apt 303
Wheeling, WV 26003
304-281-0474

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Sept 2025 | Revenue $204,808.23<br><br>Gain $6,982.00<br><br>Filed on time Doc. No. 142 | 40 | Ombudsman Third report<br><br>Good Report<br><br>Doc. No. 139 | Septembe r 2026 | | | |
| Oct 2025 | Revenue $223,767.55<br><br>Gain $45,009.69<br><br>Filed on time Doc. No. 162 | 38 | October 28' 2025 Case manager upsets resident by saying she is quitting and causing trouble breaks into the building the next day and takes patients information and destroy property. Internal Investigation and workforce find her at fault. She calls in OHFLAC and does what she promises to do. start trouble. | | | | |
| Nov 2025 | Revenue $193.730<br><br>Gain $9,812.00<br><br>Few days late Doc. No. 188 | 37 | Fourth Report States that the state was there, that there is no case manager because she was fired, Graduation | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | days are delayed because of the CEO after approvals | | | | |
| Dec 2025<br><br>Date after Bankruptcy | Revenue 167,978.53<br><br>Loss 11,081.44<br>Filed on time.<br>Docket 222<br>This very December with health plan because staff go on vacation and we do not get our full payment and we have 3 payrolls<br>Financials under CEO | 34 | Fifthe report | | | | |
| Jan 2026 | Revenue $242,000.00<br>Gain $35,681,00<br>Filed on time<br>Doc. No. 222 | 34 | | | | | |
| Feb 2026 | Revenue $190,000<br><br>Loss -$18.00<br><br>Filed 7 days late<br>Doc. No. 244<br>Low sencus because nurses started delaying | 33 | | | | | |

# CERTIFICATE OF SERVICE

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**In re: Heart 2 Heart Volunteers, Inc.,**
***Debtor.***
**Case No. 5:25-bk-00087**
**Chapter 11**

**I, Ms. Travis, hereby certify under penalty of perjury that on this 29th day of September, 2026, I served a true and correct copy of the foregoing *Notice of Motion,* United States Mail, first-class postage prepaid, addressed to the following parties of record:**

**Chapter 11 Trustee:**
**Robert Johns**
**Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311**

**Counsel for the Chapter 11 Trustee:**
**BRIAN R. BLICKENSTAFF [WVSB No. 9449] Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311**

**Counsel for the Debtor:**
**KIRK B. BURKLEY, ESQ. Bernstein-Burkley, P.C. 707 Grant Street Suite 2200 Gulf Tower Pittsburgh**

**Office of the United States Trustee:**
**GARY O. KINDER, ESQ. Assistant U.S. Trustee 300 Virginia Street East, Room 2025 Charleston, WV 25307**
**Dated: August 13, 2026 - Respectfully Submitted- Sharon Marie Travis**