**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
(Wheeling Division)
**IN RE:**

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF WV
OCT 09 2026
Time: 12:30 am/pm

HEART 2 HEART VOLUNTEERS INC.,
d/b/a SERENITY HILLS LIFE CENTER,
Debtor.

**Bankruptcy Case No. 5:25-bk-00087**
**Chapter 11**
**Judge David L. Bissett**

# CREDITOR SHARON MARIE TRAVIS'S REPLY TO CHAPTER 11 TRUSTEE'S RESPONSE AND PARTIAL OBJECTION TO MOTION FOR EXTENSION OF TIME AND DOCUMENT PRODUCTION

Now comes Sharon Marie Travis ("Marie"), Creditor, founder, and former Board President and CEO of the Debtor, proceeding pro se, and respectfully submits this Reply to the Chapter 11 Trustee's Response and Partial Objection [Docket No. 413]. In support thereof, Travis respectfully shows this Court as follows:

## I. PRELIMINARY STATEMENT

1. The Trustee states on the record that he does not object to Travis's request for an extension of time under Federal Rule of Bankruptcy Procedure 9006(b)(1) to file her Proof of Claim out of time [Docket No. 413, ¶ 18].

2. The Trustee, however, vigorously objects to providing Travis with the clear, legible, and non-segregated corporate ledgers necessary to compute the exact figures for that Proof of Claim, and seeks to bar communication with the Debtor's long-serving in-house accountant.

3. The Trustee's position is legally untenable: the Trustee demands that Travis satisfy an exacting burden of proof under penalty of perjury while simultaneously withholding the legible corporate books, records, and accounting ledgers needed to do so.

## II. FACTUAL BACKGROUND & BASIS OF CLAIM

4. Travis served as the founder, Chief Executive Officer, and President of the Debtor. During her tenure, Travis routinely deferred her earned wages (formally voted and approved by the Board of Directors at $105,000 per year) and directly injected personal capital, retirement funds, and personal vehicle refinancing proceeds into the Debtor's payroll accounts to sustain its daily operations as an addiction treatment facility.

5. On March 20, 2026, Travis was placed on administrative leave and was subsequently removed from corporate management.

6. Travis was abruptly severed from access to company offices, computers, cloud software, and accounting files without an opportunity to secure complete accounting printouts of her deferred compensation, loan advances, or corporate reimbursement ledgers.

7. The Debtor's in-house accountant, who worked directly with Travis and also served on the Board, maintained specific records and ledgers itemizing every loan repaid, funds transferred by Travis into Debtor accounts, checks issued to the Debtor, and wages deferred. These records exist exclusively within the Debtor's

possession and internal software.

## III. LEGAL ARGUMENT & CITATION OF AUTHORITY

### A. The Trustee Has an Affirmative Fiduciary Duty Under 11 U.S.C. §§ 1106(a)(1) and 704(a)(7) to Furnish Information to Creditors.

8. Under 11 U.S.C. § 1106(a)(1), a Chapter 11 Trustee is statutorily bound to perform the duties of a trustee specified in 11 U.S.C. § 704(a)(7), which mandates that the trustee shall "unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."

9. Travis is an indisputable "party in interest" as a major creditor of this Chapter 11 estate. See In re Riverside-Linden Inv. Co., 925 F.2d 320, 322 (9th Cir. 1991) (recognizing the fiduciary duty owed by trustees to creditors to supply information upon reasonable request).

10.The Trustee's contention in Paragraph 14—that Travis should simply reconstruct corporate ledgers from her personal bank accounts—violates basic accounting and bankruptcy principles. Travis's personal bank statements only show funds debited. They do not show how the Debtor internally booked, classified, amortized, or repaid those debts, nor do personal accounts track the Debtor's internal ledger of Travis's deferred earned salary.

## B. Fundamental Fairness and Due Process Require Complete and Legible Disclosures.

11.An Official Form 410 Proof of Claim must be signed by a creditor under penalty of perjury. Under Federal Rule of Bankruptcy Procedure 3001(c)(1), when a claim is based on a writing; the creditor must attach the writing to the proof of claim.

12.The Trustee acknowledges sending copies via FedEx on July 9, 2026 (Paragraph 13). However, the production delivered to Travis was deficient: numerous vital financial records were omitted, and many copies were illegible, degraded, and unreadable.

13.Requiring a creditor to submit a sworn federal claim under penalty of perjury based on degraded, fragmented records while the Trustee conceals the pristine digital originals violate basic due process. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 389 (1993).

## C. The Inequitable Double Standard: The Estate Demands Exacting Line-Item Verification While Withholding Basic Ledgers.

14.The Trustee's objection establishes an inequitable double standard. Earlier in this proceeding, when Travis sought the turnover of her personal belongings from the Debtor's premises, the Trustee and this Court refused to allow her to retrieve her property unless she presented an exhaustive receipt and accounting for every single item, forcing Travis to produce her historical divorce records just to

establish an accounting of ownership for basic personal effects.

15.Having established that strict, line-item ledger proof is the required threshold in this case, the Trustee cannot equitably assert that a box of partial, illegible copies is "sufficient" for a multi-thousand-dollar claim. Equity will not suffer the Trustee to demand strict proof while denying access to the ledger entries that substantiate it.

**D. The July 6, 2026 Meeting Was Constructively Blocked by Trustee's Hostile Environment.**

16.The Trustee claims in Paragraph 10 that Travis failed to attend a July 6, 2026 document inspection. The Trustee conceals the fact that he deliberately appointed a hostile third party—an individual whom Travis had previously terminated for cause from the Debtor—to manage and oversee Travis's access to the building and records.

17.This terminated individual and his spouse have waged an ongoing campaign of harassment and social media defamation against Travis. Prior to this, when Travis retrieved personal property under court order, the Trustee permitted this exact individual to shadow and intimidate Travis throughout the premises.

18.Travis is 66 years of age, under active medical doctor's care, and suffers from medically documented Post-Traumatic Stress Disorder (PTSD)—facts that are well known within these bankruptcy proceedings.

19.Travis's counsel explicitly requested that Trustee's counsel guarantee this

hostile individual would not be present during her document review to protect her health. Trustee's counsel refused to provide that basic assurance.

20.Conditioning a 66-year-old creditor's statutory inspection rights upon enduring intentional intimidation and severe emotional distress by a terminated adversary—knowing it would directly aggravate her medical conditions and trigger her PTSD—constitutes bad faith and a constructive denial of access. Pushing floating liabilities against a retired senior facing documented medical limitations constitutes an unconscionable abuse of process under 11 U.S.C. § 105(a).

**E. Barring Communication with the Long-Standing Accountant Is Prejudicial and Unjustified.**

21.The Trustee's contention that allowing Travis to speak with the in-house accountant would "disrupt operations" or expose "private patient records" (Paragraph 23) is a complete fabrication and a red herring designed to mislead the Court.

22.As the founder and former CEO, Travis knows firsthand that the Debtor's confidential patient medical charts are completely segregated, stored, and filed in a secure room separate from corporate financial files. Patient medical records are not kept anywhere near the purchasing records, corporate ledgers, or banking summaries requested by Travis.

23. Travis is not seeking medical or confidential patient charts protected by HIPAA or 11 U.S.C. § 333. Travis is seeking basic, routine balance sheets, general ledgers, and loan amortization schedules maintained by an accountant who sat on the Board with Travis for years.

24. There is no bankruptcy privilege or federal rule allowing a Chapter 11 Trustee to isolate a former corporate officer from discussing historical, corporate accounting ledgers with an in-house accountant.

25. The Trustee's counter-proposal (Paragraph 24)—that an outside forensic CPA or commercial copy service be retained entirely at Travis's expense—is an impermissible financial barrier designed to starve a pro se creditor of proof. A Trustee cannot condition a creditor's § 704(a)(7) statutory right to financial information on the creditor paying for a duplicative outside forensic audit.

**F. Case No. 25-20051 and Co-Signed Corporate Liabilities Do Not Extinguish Travis's Unbroken Standing.**

26. In Paragraph 19, the Trustee suggests that Travis's individual bankruptcy (Case No. 25-20051) impairs her standing. The Trustee has further postured that if Travis co-signed commercial debts, she will be forced to pay them and stripped of her creditor status. This is a legal impossibility under federal statutory law and binding Supreme Court precedent.

27.Under 11 U.S.C. § 509(b)(2) and In re Celotex Corp., 472 F.3d 1318 (11th Cir. 2006), when a co-signer or guarantor is tied to a debt where the principal corporation received 100% of the consideration and financial benefit, the corporation remains primarily liable. Because Heart 2 Heart Volunteers, Inc. received all the money from these commercial facilities and Travis received zero personal benefit, any liability pushed against Travis instantly triggers an absolute, mandatory right to be reimbursed dollar-for-dollar by the corporate estate via subrogation. Under 11 U.S.C. § 509, Travis legally "steps into the shoes" of the lender.

28.Furthermore, the United States Supreme Court held in Truck Insurance Exchange v. Kaiser Gypsum Co. (2024) that the "party in interest" standard under 11 U.S.C. § 1109(b) is broad and "capacious," protecting anyone facing a concrete financial or practical impact from court proceedings.

29.Posing procedural barriers or using an ancillary Chapter 7 reopening as a pretextual attempt to strip Travis of her standing, silence her whistleblowing complaints, and derail her active appeal before the District Court constitutes a direct deprivation of constitutional due process. Regardless of whether an asset or claim is subject to administration in Travis's personal bankruptcy estate, the claim itself against the Debtor must still be liquidated, calculated, and timely filed using legible corporate records.

## IV. CONCLUSION & PRAYER FOR RELIEF

WHEREFORE, Creditor Sharon Marie Travis respectfully requests that this Court enter an Order:

1. GRANTING Travis an extension of time under Federal Rule of Bankruptcy Procedure 9006(b)(1) to file her Proof of Claim out of time, setting the deadline to sixty (60) days after the Trustee complies with document production;

2. ORDERING the Trustee, pursuant to 11 U.S.C. § 704(a)(7), to produce clean, legible, complete digital copies (in PDF or native format) of:

(a) All accounting ledgers, check registers, and general journals reflecting loans, transfers, or contributions made by Sharon Marie Travis to the Debtor;

(b) All ledgers tracking loan repayments or salary reimbursements paid to Sharon Marie Travis;

(c) All internal records reflecting unpaid, accrued, or deferred wages for Sharon Marie Travis;

3. DIRECTING that Travis be permitted reasonable access to communicate with the Debtor's in-house accountant strictly regarding financial ledgers and loan balances, under such protective guidelines excluding patient health data as the Court deems fit; and
4.
5. Granting such other and further relief as this Court deems just and proper.
6.

Dated this 9th day of October, 2026.
Respectfully submitted,

Sharon Marie Travis, Creditor Pro Se
930 Main Street Wheeling, WV. 26003
Telephone: 304-281-0474

Sharon "Marie" Travis
10-9-2026

FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re: Heart 2 Heart Volunteers, Inc.,
*Debtor.*
Chapter 11

I, Ms. Travis, hereby certify under penalty of perjury that on this 9th day of October, 2026, I served a true and correct copy of the foregoing *Notice of Motion,* via the Court's Electronic Case Filing (ECF/CM) system and/or by depositing the same in the United States Mail, addressed to the following parties of record:

Chapter 11 Trustee:

Robert Johns
Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311

Counsel for the Chapter 11 Trustee:
BRIAN R. BLICKENSTAFF [WVSB No. 9449] Johns & Associates, PLLC 101 Brook Hill Drive Charleston, WV 25311

Counsel for the Debtor:
KIRK B. BURKLEY, ESQ. Bernstein-Burkley, P.C. 707 Grant Street Suite 2200 Gulf Tower Pittsburgh

The Patient/Administrative Ombudsman:
Deborah Fish-Patient Care Ombudsman
211 West Fort Street
Suite 705
Detroit, MI 48226

Office of the United States Trustee:
GARY O. KINDER, ESQ. Assistant U.S. Trustee 300 Virginia Street East, Room 2025 Charleston, WV 25307

Sharon "Marie" Travis
10-9-2026