**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**IN RE: HEART TO HEART VOLUNTEERS INC.,**

Debtor,

**SHARON TRAVIS,**

Appellant,

v.

**BK. NO. 5:25-BK-87**
**CIV. ACT. NO. 5:26-CV-114**
Judge Bailey

**DEBORAH FISH - OMBUDSMAN,**

Appellee,

v.

**UNITED STATES TRUSTEE,**

Appellee/Intervenor.

**ORDER**

This matter comes before this Court on appellant Sharon Travis's Appeal of the Bankruptcy Judge's Order Denying Motion to Remove the Ombudsman Entered on May 22, 2026. [Doc. 1]; *see also* [App'x. at 321–323].[1] On August 25, 2026, appellant's

[1] "App'x." refers to the Appendix submitted with the United States Trustee's Brief at [Doc. 23-1].

operative opening brief was filed. [Doc. 19].[2] On September 23, 2026, appellee/intervenor United States Trustee (the "U.S. Trustee") filed his Response Brief. [Doc. 23]. With leave of this Court, appellant filed a substitute Reply Brief on October 15, 2026. [Doc. 36]. This appeal is now ripe for adjudication. For the reasons that follow, the appeal is denied.

**BACKGROUND**

This appeal arises from the Chapter 11 bankruptcy proceedings of Heart 2 Heart Volunteers, Inc. ("H2H"). H2H is "an addiction recovery center specializing in treatment for at-risk women suffering from substance abuse disorder." [App'x. at 73]. The appellant, Sharon "Marie" Travis ("appellant" or "Ms. Travis") is the former CEO of the debtor. Ms. Travis is a creditor of H2H, and therefore an interested party to the bankruptcy proceedings below. Ms. Travis brings the instant appeal challenging the Bankruptcy Court's Order denying her Motion to Remove the Patient Care Ombudsman (hereinafter, "PCO"). *See* [Doc. 1]; [App'x. at 211–320 (Motion to Remove)]; [App'x. at 321–323 (Order on Motion to Remove)].

**ISSUES ON APPEAL**

Ultimately, the issue on this appeal boils down to whether the Bankruptcy Court abused its discretion in denying Ms. Travis's Motion to Remove the PCO. Although plaintiff describes seven (7) "issues" in her Opening Brief, what appellant frames as discrete "issues" are really her contentions in support of her argument that the Bankruptcy Court erred in denying her Motion. *See* [Doc. 19 at 4–8].

---

[2]Appellant initially filed her opening brief on August 21, 2026 [Doc. 16], but with leave of this Court [Doc. 18], she filed a substitute opening brief [Doc. 19], which will be treated as appellant's operative filing.

Accordingly, this Court will address appellant's arguments with this framework in mind.

**STANDARD OF REVIEW**

This Court has jurisdiction to hear appeals of final judgments, orders and decrees of the Bankruptcy Court. 28 U.S.C. § 158(a). "When reviewing a decision of the Bankruptcy Court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." ***Paramount Home Entm't Inc. v. Circuit City Stores, Inc.***, 445 B.R. 521, 526–27 (E.D. Va. 2010) (Spencer, C.J.) (citation omitted).

Bankruptcy court orders are final and immediately appealable "if they finally dispose of discrete disputes within the larger case." ***Bullard v. Blue Hills Bank***, 575 U.S. 496, 501 (2015); *see also* ***Ritzen Grp., Inc. v. Jackson Masonry, LLC***, 589 U.S. 35, 43–44 (2020). The Fourth Circuit has also held that an order refusing to remove a trustee based on alleged fiduciary-duty breaches is a final appealable order because it "finally resolve[s]" a "discrete controversy." *See* ***Turshen v. Chapman***, 823 F.2d 836, 839 (4th Cir. 1987). By extension, therefore, the denial of a motion to remove a PCO would also be a final, appealable order. *See* ***id.*** Additionally, even where the finality of a bankruptcy court order is uncertain, the district court has the discretion to entertain appeals of interlocutory orders. 28 U.S.C. § 158(a)(3).

A trial court "abuses its discretion when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous

factual or legal premises." ***Wall v. Rasnick***, 42 F.4th 214, 220 (4th Cir. 2022) (citation modified).

The bankruptcy court's conclusions of law (including interpretation and application of the bankruptcy code) are reviewed *de novo*, while its factual findings are reviewed for clear error. *See* ***In re Whitley***, 848 F.3d 205, 207 (4th Cir. 2017) (citing ***In re Taneja***, 743 F.3d 423, 429 (4th Cir. 2014)); ***David v. King***, 109 F.4th 653, 661, n.3 (4th Cir. 2024).

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." ***Anderson v. City of Bessemer City,*** 470 U.S. 564, 573 (1985) (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." ***Id.*** at 574 (citations omitted); *see also* Fed. R. Civ. P. 52(a)(6).

## DISCUSSION

### I. The Bankruptcy Court Did Not Abuse its Discretion in Denying Appellant's Motion to Remove the PCO Because the Record Only Demonstrates Ms. Travis's Disagreement with the PCO's Findings, not Bias, Misconduct, or Overreach.

#### A. The PCO's Role.

The appointment of a PCO is provided for in the Bankruptcy Code:

> If the debtor in a case under chapter 7, 9, or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the quality of patient care and to represent the interests of the patients of the health care business

> unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

11 U.S.C. § 333; *see also* Fed. R. Bankr. P. 2007.2.

The Bankruptcy Code does not address when a PCO may be terminated, but the Bankruptcy Rules provide for termination when the bankruptcy court finds a PCO "unnecessary to protect patients." Fed. R. Bankr. P. 2007.2(d). According to the Rule Committee Notes on this same Rule, the PCO is required to be a "disinterested person." The Bankruptcy Code defines a "disinterested person" as a person who:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

**B. The Bankruptcy Court's Findings.**

The Bankruptcy Judge initially found that the appointment of PCO was necessary in this case to protect the interests of H2H's patients after a contested hearing and again found that the continued appointment was necessary following appellant's Motion to Remove Ms. Fish as the PCO. [App'x. at 321–323]. As Judge Bissett observed, the "bulk of the [Motion to Remove] consists of generalized employee grievances and allegations arising from broader disputes concerning administration of the estate, rather than

allegations demonstrating failure of the ombudsman to perform the statutory duties imposed under 11 U.S.C. § 333." [App'x at 322].

This Court agrees with the Bankruptcy Court's analysis, and finds that it applies with equal force to appellant's Opening Brief. Nowhere in appellant's Opening Brief does she provide an adequate reason for this Court to second-guess the Bankruptcy Court's decision that a PCO was necessary and that Ms. Fish was not legally qualified for that role. Although Ms. Fish may have reported findings reflecting unfavorably on appellant, that is not legal cause for disqualification.

Ultimately, this Court finds that the Bankruptcy Court issued a detailed Order after consideration of appellant's lengthy Motion to Remove and the documentation submitted therewith, and made the determination that not only was a PCO necessary, but also that Ms. Fish was fit to continue serving in that role. Appellant presents no compelling evidence or argument that suggests that the Bankruptcy Court did not thoughtfully consider her Motion to Remove before making a decision. The Bankruptcy Court clearly reviewed appellant's Motion and found that it contained no substantive evidence or argument, but rather "generalized employee grievances." Upon this Court's own review of the Motion to Remove, this Court agrees with that characterization. As to some of the specific arguments appellant makes as to how the Bankruptcy Court erred, those will be addressed below.

### C. Ms. Fish's Alleged Selectivity as to Her Reports is Not Proof of Material Adversity or Exceeding her Statutory Role, nor was the Bankruptcy Court's Record Incomplete.

One of appellant's major issues with the PCO appears to be that she consulted with patients and employees and reported on what she was told to the Bankruptcy Court.

*See, e.g.,* [Doc. 19 at 26 ("The ombudsman colluded with certain staff against the CEO, holding private meetings with staff members against the staff member, isolating the party.")]. But as the U.S. Trustee points out, interviewing patients and physicians (and by extension, H2H's employees) is part of the PCO's care-monitoring duties. [Doc. 23 at 25]; *see also* 11 U.S.C. § 333(b)(1). Ms. Travis also repeatedly suggests that the PCO failed to report on alleged patient abuse and other issues and was therefore unfairly selective in her reporting. *See, e.g.*, [Doc. 19 at 27–28 ("Then once the CRO comes in and then the Trustee [Ms. Fish] then writes false reports leaving out abuse allegations and continues to write false reports about the untrue unvetted information about the CEO part in the intake.")].[3]

In her Reply Brief, appellant contends the PCO exceeded her statutory role as a neutral patient care monitor by improperly inserting herself into the bankruptcy process when she objected to H2H's second request to extend the exclusivity of its plan of reorganization. *See* [Doc. 36 at 10–11]. Appellant argues that by doing so, the PCO "manufactured artificial leverage," pressured H2H into accepting a contract for a Chief Restructuring Officer, and began the chain of events that ultimately led to Ms. Travis's removal as the CEO of H2H. [Id.]. In support of this position, appellant argues that the U.S. Trustee "cannot point to a single word in 11 U.S.C. § 333 that grants an ombudsman the right to micromanage executive staffing or plan confirmation timelines." [Id. at 11]. In a similar vein, appellant also accuses the PCO of overstepping her role by weaponizing state

[3]Ms. Travis also argues that "mandatory reporting laws" required Ms. Fish to include what Ms. Travis wanted in the reports, *see* [Doc. 19 at 41–42], but she fails to identify what laws those were or how they applied to a patient care ombudsman appointed by a bankruptcy court.

regulatory agencies and conspiring with H2H employees against her. *See, e.g.,* [Doc. 33 at 15].

This Court disagrees with appellant's characterization of the PCO's actions and authority. What appellant forgets is that the PCO's statutory duty is to "monitor the quality of patient care and to represent the interests of the patients of the health care business." 11 U.S.C. § 333(a)(1). This Court sees no reason why that broad responsibility would not include taking action in the Bankruptcy Court to ensure that a plan of reorganization is formulated and implemented expeditiously to the extent that the same has an effect on patients.

Moreover, even if appellant's allegations were true regarding thePCO's alleged collusion with OHFLAC and some of the employees at H2H, it is unclear to this Court how that would be a violation of her duties as the PCO. Agencies such as OHFLAC exist in order to ensure quality care and the protection of patients—if the PCO believed that there were a patient care issue at H2H, it follows that her statutory duty would obligate her to report any issues to the appropriate oversight authorities or to cooperate with them. In fact, it would make very little sense to appoint a PCO and expect her to identify patient care issues, yet render her powerless to do anything about the issues she identifies. Further, the evidence and argument presented by appellant do not demonstrate that the PCO did anything but monitor and report to the Bankruptcy Court what she, in the exercise of her professional judgment, believed was relevant to the issue of patient care. In other words, appellant expects the PCO to identify problems, but to do nothing about them.

In sum, as Judge Bissett observed,"[t]o the extent Ms. Travis disagrees with the substance or conclusions of the ombudsman's reports, such disagreement alone does not

constitute sufficient cause for removal." [App'x. at 322]. In other words, simply because the PCO made reports or findings that were unfavorable to the appellant, or were allegedly incomplete, there is not *per se* evidence of bias, misconduct, or material adversity such that removal of the PCO was necessary, nor is there proof that Ms. Fish was not a "disinterested person." *See* 11 U.S.C. § 101(14). Finally, and perhaps most importantly, although appellant speaks at length about the alleged deficiencies on the PCO's part, she does little to meaningfully dispute the problems that the PCO identified throughout her reports, such as employee turnover.

**D. Ms. Fish Did Not Fail to Submit a Sixth Report, and Any Perceived Delays or Prejudice Caused by the Timing of the Report were not Raised in the Proceedings Below.**

Appellant contends the PCO failed in her statutory duties by failing to file her sixth report; as a consequence, appellant contends the Bankruptcy Court ruled on her Motion to Remove on a "materially incomplete record." *See* [Doc. 19 at 30]. However, in his Response Brief, the U.S. Trustee explains that Ms. Fish did, in fact, make a sixth report when she gave an oral report at the January 2026 emergency status conference. *See* [App'x. at 364–379]. The Trustee further points out that the Bankruptcy Code expressly allows a PCO's reports to be presented either "at a hearing or in writing." 11 U.S.C. § 333(b)(2).

Appellant also appears to object as to the timing of the PCO's reporting, which she refers to as "mathematical deceit." *See* [Doc. 36 at 23–26].

Here, the Transcript from the January Hearing does not indicate that appellant objected to the PCO providing an oral report. In any event, this Court does not believe that

slight delays in filing reports or any lack of prior notice before their issuance, under these circumstances, evidences an abuse of discretion by the Bankruptcy Judge with regard to his refusal to remove the PCO.

**E. The Bankruptcy Court Had No Need to Address Appellant's Additional Request to Replace Ms. Fish Because it Properly Found that Ms. Fish Could Remain as the PCO.**

Appellant also raises a discrete procedural argument. Specifically, appellant contends that the Bankruptcy Court erred by only considering appellant's request for removal of Ms. Fish as the PCO and by not considering appellant's additional request to replace Ms. Fish. [Doc. 19 at 35–38]. In appellant's words: "By completely bypassing the substantive legal arguments and factual record regarding the necessity of a replacement, the court left a critical portion of the motion unaddressed and unresolved, rendering the adjudication incomplete, one-sided, and prejudicial to the Appellant." [Id. at 37]. Appellant further elaborates that the Bankruptcy Court "conflat[ed] the role with the individual" and "committed a procedural error by framing the issue narrowly around the general statutory requirement for an ombudsman and 60-day reports, effectively creating a 'straw man' argument that assumed any challenge to the current individual was a binary attempt to eliminate all patient oversight." [Id. at 36–37].

Here, the Bankruptcy Court held that there were insufficient grounds to remove Ms. Fish as the PCO. [App'x. at 321–323]. If there were no need to remove the PCO in the first place, then there would be, by logical extension, no need to consider a replacement.

Furthermore, appellant's "straw man" argument—"that the PCO could not be replaced because a PCO is needed"—misinterprets the Bankruptcy Court's holding. [Doc. 19 at 37]. Specifically, the Bankruptcy Court did not ignore appellant's request for replacement or "conflat[e] the role with the individual" because it did not merely hold that *a* PCO, *generally*, was necessary in these proceedings; rather, the Bankruptcy Court held that there was no justification to remove the *specific* PCO already serving in that role. *See* [App'x. at 322 ("To the extent Ms. Travis disagrees with the substance or conclusions of *the* ombudsman's reports, such disagreement alone does not constitute sufficient cause for removal. . . .Based on its review, the Court does not find appropriate grounds to remove *the* patient-care ombudsman.") (emphasis added)]. Appellant's argument as to this issue is without merit.

**II. This Appeal Does Not Challenge the Appointment of the Chapter 11 Trustee; Therefore, this Court Need not Consider Argument on this Issue.**

This Court agrees with the Trustee that appellant has not appealed the Order appointing the Chapter 11 Trustee; therefore, to the extent appellant touches on this issue in her Opening Brief, this Court is unable to review this issue. *See* [Doc. 23 at 33–34]; [Doc. 1]. Accordingly, the issue is not properly before this Court, and this Court need not consider any argument on the same.

**ADMONISHMENT**

This Court also feels compelled to address appellant's briefing, which was obviously drafted through the use of Artificial Intelligence. Page 56 of appellant's Opening Brief contains a prompt from the AI: "If you're ready to continue mapping out your brief, let me know." [Doc. 19 at 56].

While this District has not yet established a Rule enjoining the use of Artificial Intelligence, appellant's briefing in this matter is a textbook example of why such rules exist in other courts. Appellant's briefing appears somewhat legitimate in substance, but is repetitive, disjointed, and replete with incomplete sentences.

Appellant is therefore **ADMONISHED** by this Court to ensure that, in the future, she thoroughly proofreads her filings to ensure that they comply with this Court's Rules and are comprehensible. This Court hardly expects perfection in grammar, punctuation, or organization, especially from *pro se* litigants; however, it does demand a certain degree of professionalism and comprehensibility in any filings. The instant briefing falls below that standard. While Artificial Intelligence may be a helpful drafting or research tool, it is NOT a replacement for human oversight. If appellant insists on using Artificial Intelligence to assist in drafting her briefs, she must properly review and edit them before submission. This Court **WILL NOT ACCEPT** any further AI-generated submissions from the appellant that are not properly reviewed and edited before they are submitted.

**CONCLUSION**

At bottom, this Court is sympathetic to Ms. Travis's position as it is plainly evident that she is passionate about H2H and the patients it serves. This Court also understands how the appointment of the PCO, the Chief Restructuring Officer, and ultimately the Chapter 11 Trustee undoubtedly created friction between Ms. Travis and these individuals. But this Court also believes that the Bankruptcy Court reasonably considered the "substantially deteriorated" relationship between Ms. Travis and H2H's management when it weighed her arguments. [App'x. at 322]; *see also* ***In re Ampal-American Israel Corp.***,

534 B.R. 569, 588 (Bankr. S.D. N.Y. 2015) (holding that the court's discretion in denying motion to remove trustee was "informed by the history of the case and the nature of the opposition" where a "long history of enmity" between the debtor's former management and its bondholders had "spilled into this Court"), *aff'd* 554 B.R. 604 (S.D. N.Y. 2016). As the U.S. Trustee points out, Ms. Travis only filed her Motion to Remove the PCO after the Chapter 11 Trustee terminated Ms. Travis's employment with H2H. *Compare* [App'x. at 198 (termination letter dated May 1, 2026)] *with* [Doc. 211 (Motion to Remove filed on May 20, 2026)]. To the extent the Bankruptcy Court may have credited the representations made by Ms. Fish or other individuals involved in the below proceedings over those of Ms. Travis in deciding the Motion to Remove, this Court can find no error in the Bankruptcy Court's decision-making. *See* ***Anderson v. City of Bessemer City***, N.C., 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.").

The appeal is **DENIED**. The Clerk is **DIRECTED** to **STRIKE** this matter from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record and to mail a copy to the *pro se* appellant.

**DATED:** October 20, 2026.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**